# EXHIBIT B

Policy Number: RDP0038983

**RLI**®

# NOTICE TO OUR BROKERS AND AGENTS
# OF OUR CLAIM NOTIFICATION PROCEDURE

As part of our continuing effort to provide you with the best service available, ALL CLAIMS, OCCURRENCES, INCIDENTS and LAWSUITS under this policy are to be reported immediately to:

**RLI Insurance Company**

**Email (preferred):  New.Claim@rlicorp.com**

**Fax:  (866) 692-6796**

**Phone:  (800) 444-0406**

**Street Address:  9025 N. Lindbergh Drive, Peoria, IL  61615**

**Mailing Address:  P.O. Box 3961, Peoria, IL 61612-3961**

When reporting the incident, be prepared to supply a report of claim or the following information:

1.   Policy Number
2.   Contact Person information (name, address, phone, etc.)
3.   Nature of incident
4.   Date of incident

When reporting multiple incidents, please send each loss notice separately.

RIL 2131 (08/12)

Policy Number:   RDP0038983



**RLI Insurance Company**
Peoria, Illinois 61615

# STATE OF FLORIDA
# DISCLOSURE NOTICE

## KEEP THIS WITH YOUR INSURANCE PAPERS

If you should have a question or dispute concerning your coverage, your premium or a claim, you should contact your agent or **RLI Insurance Company**. You may call RLI Insurance Company to obtain information or to make a complaint at the following number:

# 1-309-692-1000

This Notice is for information only and does not become a part of or a condition of your policy.

UW 1009 (06/93)

# Professional Liability Policy
# Design Professionals
# Declarations - Florida

**RLI**®

RLI Insurance Company
9025 North Lindbergh Drive
Peoria, Illinois 61615
Phone: (309) 692-1000

A stock insurance company,
herein called the Insurer.

**NOTICE:** THIS IS A "CLAIMS MADE AND REPORTED" POLICY. THIS POLICY REQUIRES THAT A CLAIM BE MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND REPORTED TO THE INSURER, IN WRITING, DURING THE POLICY PERIOD OR AUTOMATIC EXTENDED REPORTING PERIOD.

THIS POLICY CONTAINS PROVISIONS WHICH LIMIT THE AMOUNT OF CLAIM EXPENSES THE INSURER IS RESPONSIBLE TO PAY IN CONNECTION WITH CLAIMS. CLAIM EXPENSES SHALL BE SUBJECT TO ANY DEDUCTIBLE AMOUNT. THE PAYMENT OF CLAIM EXPENSES WILL REDUCE THE LIMITS OF LIABILITY STATED IN ITEM 3. OF THE DECLARATIONS. PLEASE READ YOUR POLICY CAREFULLY.

Policy No. RDP0038983

Item 1. **Named Insured**:

OutsideIn Architecture, LLC
1345 Virginia Lee Cir.
Brooksville, FL 34602

Item 2. **Policy Period**:   From 12:01 A.M. on    03/18/2020
To 12:01 A.M.          03/18/2022
Local time at the address shown in Item 1.

Item 3.  Limits of Liability:   a.   $1,000,000          each **Claim**
b.   $1,000,000          each **Policy Year** Aggregate

Item 4.  Deductible:          a.   $10,000            each **Claim**
b.   $0                 each **Policy Year** Aggregate

Item 5.  Policy Premium:                              $█████

Florida HCF & FIGA Surcharge:         $n/a

Total Premium  $█████

Item 6.  **Retroactive Date**:  03/08/2009

Item 7.  Forms Effective at Inception:

| Form Number | Form Title |
| --- | --- |
| RDP 101 (09/18) | Professional Liability Policy Design Professionals |
| ILF 0001C FL (04/16) | Florida Signature Page - Commercial Lines |
| 0000 | New Hampshire Insurance Company Application |
| RDP 409 (03/19) | Florida Amendatory Endorsement |
| RDP 600 (09/18) | Dollar One Defense Coverage Endorsement |
| RDP 625 (01/09) | Excluded Entities or Individuals |

RDP 100FL (01/15)

Page 1 of 2

RDP 655 (02/10)                    Waiver of Application Endorsement

Signature:_____
                              Florida Licensed Agent

# PROFESSIONAL LIABILITY POLICY DESIGN PROFESSIONALS

**This is a Claims Made and Reported Policy. This Policy requires that a Claim be first made against the Insured during the Policy Period and reported to the Insurer, in writing, during the Policy Period or Automatic Extended Reporting Period, pursuant to the terms and conditions of the Policy.**

**This Policy contains provisions which limit the amount of Claim Expenses the Insurer is responsible to pay in connection with Claims. Claim Expenses shall be subject to any Deductible amount. The payment of Claim Expenses will reduce the Limits of Liability stated in Item 3. of the Declarations.**

**In consideration of the payment of the premium stated and in reliance upon the statements made to the Insurer in the Application forming a part hereof and its attachments and the material incorporated therein, RLI Insurance Company, herein called the "Insurer," and the Named Insured agree as follows:**

## INSURING AGREEMENT

1.  The Insurer shall pay on behalf of the **Insured**, **Claim Expenses**, pursuant to Section 6. of this Policy, and **Damages** incurred by the **Insured** as a result of a **Claim** for:

    a.  a **Wrongful Act** to which this insurance applies, including a **Claim** for **Personal Injury**; or

    b.  a **Pollution Incident** to which this insurance applies and for which the **Insured** is legally liable.

    This insurance applies to a covered **Claim**, only if:

    (i)   the **Claim** is first made against the **Insured** during the **Policy Period** and first reported to the Insurer, in writing, as soon as practicable during the **Policy Period** or during the Automatic Extended Reporting Period pursuant to Section 9. a. of this Policy;

    (ii)  the **Wrongful Act** or the act giving rise to the **Pollution Incident** was committed on or subsequent to the **Retroactive Date** stated in Item 6. of the Declarations; and

    (iii) none of the **Insured's** directors, officers, principals, partners or insurance managers knew or could have reasonably expected that the **Wrongful Act** or the act giving rise to the **Pollution Incident** might give rise to a **Claim**, either prior to the inception date of this Policy or the inception date of the earliest policy issued by the Insurer that has been continuously renewed with the Insurer up to this Policy.

## SUPPLEMENTARY PAYMENTS

2.  All payments made under this Section 2. of this Policy are not subject to the Deductible and are in addition to the Limits of Liability. The maximum the Insurer will pay pursuant to Supplementary Payments, 2. a. Reimbursement of Expenses and Supplementary Payments, 2. b. **Disciplinary Proceedings** combined is $12,500 per **Policy Year** for all **Insureds**.

    a.  Reimbursement of Expenses

        Upon the Insurer's request, the **Insured** shall attend mediation meetings, arbitration proceedings, hearings, depositions and trials relative to the defense of a **Claim(s)** and the Insurer will reimburse the **Insured** for loss of earnings, including reasonable travel expenses, for time taken off work. The maximum the Insurer will pay pursuant to this provision is $500 per **Insured Person** per day. The Insurer shall issue reimbursement, as set forth above, at the written request of the **Insured**.

b. **Disciplinary Proceedings**

In the event a **Disciplinary Proceeding** is commenced against the **Insured** during the **Policy Period** and first reported to the Insurer in writing during the **Policy Period**, the Insurer will pay for reasonable attorney's fees and expenses incurred, with the prior written approval of the Insurer, in responding to such **Disciplinary Proceeding**. The maximum the Insurer will pay pursuant to this provision is $5,000 per **Disciplinary Proceeding** for all **Insureds**. The Insurer will not pay **Damages**, fines, taxes, or penalties pursuant to this provision.

c. Loss Prevention Assistance

If the **Insured** reports a **Circumstance** during the **Policy Period**, in accordance with Section 7. of this Policy, until such time a **Claim(s)** is made, any costs or expenses the Insurer incurs as a result of investigating or monitoring such **Circumstance** will be paid for by the Insurer. The decision to incur any costs or expenses to monitor or investigate a **Circumstance** shall be at the sole discretion of the Insurer.

d. A.D.A., F.F.H.A and O.S.H.A. Expense Reimbursement

If as a result of a **Wrongful Act** or a **Pollution Incident**, a regulatory or administrative action under the Americans with Disabilities Act (A.D.A.), the Federal Fair Housing Act (F.F.H.A) or the Occupational Safety and Health Act (O.S.H.A) is commenced directly against the **Insured** and results from the performance of the **Insured's Professional Services** - performed subsequent to the **Retroactive Date(s)** stated in Item 6. of the Declarations - and is reported to the Insurer during the **Policy Year**, the Insurer will reimburse the **Insured** for its reasonable legal fees and expenses incurred, with the prior written approval of the Insurer, in responding to such actions. The maximum the Insurer will pay pursuant to this Supplementary Payment shall be $10,000 per action or related actions, subject to a maximum of $30,000 per **Policy Year**. The Insurer will not pay **Damages**, fines, taxes, or penalties pursuant to this provision.

e. **Crisis Management Expenses**

(i) The Insurer will reimburse the **Insured** for **Crisis Management Expenses** that are a direct result of a **Crisis Event**, provided such **Crisis Event** is reported in accordance with Section 7. f. of this Policy.

(ii) The maximum the Insurer will pay pursuant to Supplementary Payments, 2. e. **Crisis Management Expenses** shall be $15,000 per **Crisis Event** or related events, subject to a maximum of $30,000 per **Policy Year** for all **Insureds**.

(iii) The Insurer shall issue reimbursement, as set forth above, at the written request of the **Insured**.

## DEFINITIONS

3. When used in this Policy:

"**Bodily Injury**" means injury to the body, sickness, disease, or death. **Bodily Injury** also means mental injury, mental anguish, emotional distress, pain and suffering, or shock resulting from injury to the body, sickness, disease or death of any person.

"**Circumstance**" means an event or occurrence from which the **Insured** reasonably expects that a **Claim(s)** for an alleged **Wrongful Act** or **Pollution Incident** will be made.

"**Claim(s)**" means:

a. a written demand for monetary, non-monetary or injunctive relief against any **Insured**;

b. a civil proceeding against any **Insured** commenced by the service of a complaint or similar pleading;

c. a formal administrative or regulatory proceeding or investigation against any **Insured** commenced by the filing of a notice of charges, formal investigative order or similar document;

d. a written request received by an **Insured** to toll or waive a statute of limitations; or

e.   a demand for arbitration or **Mediation** received by any **Insured** combined with an allegation of a **Wrongful Act** or a **Pollution Incident** by the **Insured**.

"**Claim Expenses**" means:

a.   reasonable and necessary fees, costs and expenses incurred in connection with the defense of a **Claim** for a **Wrongful Act** or a **Pollution Incident** if incurred by the Insurer, or by the **Insured** with the prior written consent of the Insurer; and

b.   all other reasonable and necessary costs and expenses resulting from the investigation, adjustment, defense and appeal of a **Claim**, suit or proceeding arising in connection therewith, if incurred by the Insurer or by the **Insured** with the prior written consent of the Insurer; and

c.   premiums for appeal bonds for covered judgments or bonds to release property used to secure a legal obligation, if required for a **Claim** for a **Wrongful Act** or a **Pollution Incident** against any **Insured** but only for bond amounts within the remaining Policy limit, provided, however, that the Insurer shall have no obligation to appeal or to obtain such bonds.

**Claim Expenses** do not include any salary, overhead or other charges of or by the **Insured** for any time spent in cooperating in the defense and investigation of any **Claim** noticed under this insurance. **Claim Expenses** do not include costs or expenses incurred by the Insurer for Loss Prevention Assistance. **Claim Expenses** do not include any fees and expenses incurred prior to the date the **Named Insured** first provided notice of a **Claim** to the Insurer.

"**Crisis Event**" means any:

a.   **Wrongful Act**;

b.   **Pollution Incident**;

c.   death, unanticipated departure or debilitating illness of a **Principal Insured**;

d.   dissolution of the **Named Insured**, except if stemming from a liquidation, reorganization proceeding, bankruptcy or a planned merger or acquisition; or

e.   incident of workplace violence;

that the **Named Insured** reasonably believes could have a material adverse effect upon the **Named Insured's** reputation.

"**Crisis Management Expenses**" means reasonable and necessary expenses incurred by the **Named Insured**, with the Insurer's prior written consent at its sole discretion, for a public relations firm or law firm to communicate with the general public in order to mitigate the reputational damage of the **Named Insured** directly resulting from a **Crisis Event**.

"**Damages**" means monetary judgments or settlements the **Insureds** are legally obligated to pay as a result of a covered **Claim**, including but not limited to compensatory damages, pre-judgment and post-judgment interest. **Damages** does not mean punitive, exemplary or multiple damages unless insurable by law under which this Policy is construed.

**Damages** shall not include taxes, civil or criminal fines or penalties imposed by law, any amount for which the **Insureds** are absolved from payment, or matters which are uninsurable under the law pursuant to which this Policy shall be construed. Additionally, **Damages** shall not include injunctive or equitable relief, or the return or reduction of fees, or charges for services rendered or expenses incurred by the **Insured** for redesign changes, additions or remedies necessitated by a **Claim(s)**, unless done with the prior written approval of the Insurer. The time and expense incurred by the **Insured** in assisting in resolving a **Claim(s)** are not **Damages**.

**Damages** will include fines, taxes, and penalties assessed against a third party for which the **Insured** is legally liable.

"**Disciplinary Proceeding**" means any proceeding by a regulatory or disciplinary official, board or agency to investigate charges of professional misconduct in the performance of **Professional Services**.

"**First Named Insured**" means the first individual or entity listed in Item 1. of the Declarations page.

"**Insured**" means:

a.  any **Insured Person**;

b.  the **Named Insured**;

c.  any **Named Insured** with regard to its participation in a joint venture, but solely for the **Named Insured's** liability for the **Named Insured's** performance of **Professional Services** under the respective joint venture;

d.  any entity that was the **Legal Predecessor** of the **Named Insured**; and

e.  the legal representative of any deceased individual described above, but only to the extent of that individual's rights and duties under this Policy.

"**Insured Person**" means any person who was, now is, or shall become:

a.  a duly elected or appointed director, officer, principal, partner, member or employee of the **Named Insured**, but only while acting on behalf of the **Named Insured**;

b.  a duly elected manager, member of the board of managers or equivalent executive of the **Named Insured** if it is a limited liability company, but only while acting on behalf of the **Named Insured**;

c.  temporary, or leased personnel of the **Named Insured**, but only while acting under the direct supervision and on behalf of the **Named Insured**;

d.  any retired or former director, officer, principal, partner, member or employee (including former temporary or leased personnel) of the **Named Insured**, but only while acting on behalf of the **Named Insured**, and solely with respect to **Wrongful Acts** or acts giving rise to a **Pollution Incident** committed while serving in their capacity as a current director, officer, principal, partner, member, employee, temporary, or leased personnel of the **Named Insured**.

"**Legal Predecessor**" means any prior entity whose partners, principals, or assets have been acquired by the **Named Insured** provided such entity is identified in the Application as:

a.  a **Legal Predecessor**; and

b.  for which the **Named Insured** has agreed in writing to purchase liability insurance.

"**Mediation**" means the non-binding process by which a qualified, professional mediator mutually agreed upon by parties to a dispute, with the Insurer's consent and agreement, intercedes with the intention to reconcile the parties to a resolution of a **Claim**.

"**Motor Vehicle**" means a land motor vehicle, automobile, van or bus, motorcycle, self-propelled vehicle, trailer or semi-trailer, whether or not designed for travel on the public roads, including any attached machinery or equipment. **Motor Vehicle** also includes watercraft and manned aircraft.

"**Named Insured**" means the individual(s), partnership(s), trust(s), corporation(s) or other entity(ies) stated in Item 1. of the Declarations.

"**Nuclear Facility**" means the site at which a nuclear reactor is located or where nuclear waste or material is disposed of or stored.

"**Personal Injury**" means:

a.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy; or

b.  Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

c.  Oral or written publication, in any manner, of material that violates a person's right of privacy; or

d.  False arrest, detention or imprisonment; or

e.  Infringement of copyright or trade dress

caused by a **Wrongful Act** or a **Pollution Incident**.

"**Policy Period**" means the period from the effective date of this Policy to the Policy expiration date as stated in Item 2. of the Declarations or its earlier termination date, if any. **Policy Period** does not include any Automatic Extended Reporting Period. If the length of the **Policy Period** is the same as the **Policy Year**, the terms **Policy Period** and **Policy Year** are used interchangeably herein.

"**Policy Year**" means each consecutive twelve (12) months of the **Policy Period** beginning on the effective date shown in the Declarations. However, if a **Policy Year** within a **Policy Period** is modified by an endorsement, then that modified year will be deemed a **Policy Year** for the purpose of determining the annual aggregate Limit of Liability and the annual aggregate Deductible.

"**Pollution Incident**" means the discharge, dispersal, release, escape, migration, or seepage of any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, soot, vapors, fumes, acids, alkalis, chemicals, hazardous substances, hazardous materials, or waste materials, on, in, into, or upon land and structures thereupon, the atmosphere, surface water, or groundwater, caused by the acts of an **Insured** in his or her capacity as such, or by any other person for whom the **Insured** is legally liable, and which results in **Bodily Injury** or **Property Damage**.

"**Principal Insured**" means any member of the board of managers for LLC, director, executive officer, natural person partner, owner of a sole proprietorship, principal, risk manager or in-house general counsel of the **Named Insured**.

"**Professional Services**" means those services the **Insured** is legally qualified to perform for others in the practice of architecture, engineering, land surveying, landscape architecture, interior design, construction management, environmental consulting, land planning, space planning, technical consulting or acting as an expert witness.

"**Property Damage**" means:

a.  physical injury to, or loss or destruction of, tangible property, including loss of use thereof;

b.  loss of use of tangible property which has not been physically injured, lost, damaged or destroyed; and

c.  clean-up costs resulting from a **Pollution Incident** incurred by a governmental entity or by a third party and which have been mandated by any governmental entity in the removal or remediation of soil, surface water, groundwater or other contamination.

"**Related Claims**" means all **Claims** for **Wrongful Acts** or **Pollution Incidents** that are logically or causally connected by common facts, situations, events, transactions, projects, decisions or advice, regardless of the number of contracts or the types of **Professional Services** rendered.

"**Retroactive Date**" means the date specified in Item 6. of the Declarations.

"**Unmanned Drone**" means a land craft, watercraft, or aircraft that weighs less than fifty-five (55) pounds and is not designed, manufactured, or modified after manufacture, to be controlled directly by a person from within or on the craft.

"**Written Agreement**" means a written document signed by and between the **Insured** and the **Insured's** client prior to the performance of the **Professional Services** giving rise to a **Claim**, which includes the **Professional Services** giving rise to such **Claim** in its scope of services, and which includes each of the following four (4) project parameters:

a. payment terms, including a schedule of when payments were to be paid to the **Insured**;

b. objectives, including the scope of services and any applicable limitations on the scope of services;

c. budget, schedule, and regulatory constraints; and

d. the basis for design, including site data requirements, utilities requirements, facility requirements, equipment requirements, technology requirements, or any possible alternatives.

**Written Agreements** do not include pre-project planning, schematic design, or feasibility studies rendered prior to the execution of the written contract.

"**Wrongful Act**" means a negligent act, error, or omission in the performance of **Professional Services** for others by an **Insured** or any person or entity for which the **Insured** is legally liable.

## EXCLUSIONS

4. This Policy does not apply to any **Claim(s)**:

a. Intentional and Dishonest Acts

based upon or arising out of or attributable to any dishonest, fraudulent, malicious, or criminal act, error or omission, or any intentional act, whether committed by an **Insured** or at an **Insured's** direction or with an **Insured's** prior knowledge.

Notwithstanding this Exclusion, the Insurer will pay **Claim Expenses** on behalf of an **Insured** for **Claims** which are alleged to arise from an **Insured's** dishonest, fraudulent, malicious, or criminal act, error or omission, or any intentional act, whether committed by an **Insured** or at an **Insured's** direction or with an **Insured's** prior knowledge, unless or until there is a final judgment in a trial court against an **Insured** as to such conduct. The Insurer will provide such a defense, however, only if such conduct arises out of the provision of **Professional Services** by or on behalf of the **Insured**. The Insurer will not defend the **Insured** in any criminal proceedings. Upon a finding that the act, error or omission of an **Insured** was dishonest, fraudulent, malicious, criminal or an intentional act, whether committed by an **Insured** or at an **Insured's** direction or with an **Insured's** prior knowledge, the Insurer's payment of **Claim Expenses** shall cease and the **Named Insured** shall promptly reimburse the Insurer for all **Claim Expenses** paid or incurred by the Insurer for an **Insured's** defense. As used herein, such a finding shall be deemed to occur upon:

(i) any criminal conviction of an **Insured** for an **Insured's** acts, errors or omissions forming a basis of the **Claim(s)** for which the Insurer is paying **Claim Expenses**; or

(ii) a final judgment in a trial court rendered against an **Insured** for whom **Claim Expenses** are being paid under this Section.

b. Discrimination

based upon or arising out of any actual or alleged discrimination, humiliation, harassment, or misconduct because of age, color, race, sex, creed, national origin, marital status, sexual preference or orientation, religion or disability. However, this Exclusion shall not apply to any **Claim(s)** based upon the Americans with Disabilities Act, as amended, or the Federal Fair Housing Act, or any state or local versions of those acts, and arising out of the **Insured's Professional Services**.

c.  Securities Violation

based upon or arising out of any actual or alleged violation of the Securities Act of 1933 as amended or the Securities Exchange Act of 1934 as amended or any state Blue Sky or securities law or similar state, federal, or other governmental law, statute and any regulation or order issued pursuant to any of the foregoing statutes, unless endorsed hereon.

d.  Products Liability

based upon or arising out of any actual or alleged sale or distribution of any product developed by the **Insured** or by others under license or trade name from the **Insured** for multiple sale or mass distribution, including, but not limited to, computer programs and software. This Exclusion does not apply to software designed or modified for an individual client of the **Insured** in connection with the **Insured's** rendering of **Professional Services** for that individual client.

e.  Employer's Liability

asserted by an employee of any **Insured**.

f.  Property Liability

based upon or arising out of or attributable to the **Insured's** ownership, rental, leasing, operation, maintenance, use or repair of any real or personal property, including **Property Damage**, to property owned, occupied, rented or leased by or to any **Insured**.

g.  Motor or Mobile Vehicles

based upon or arising out of the ownership, rental, leasing, maintenance, repair, operation, use, loading or unloading, by, on behalf of, or at the direction of any **Insured**, of a **Motor Vehicle** or **Unmanned Drone**. This Exclusion does not apply to any **Claim(s)** based upon or arising out of information or materials obtained through the use of an **Unmanned Drone** by the **Insured** in the performance of **Professional Services**.

h.  Express Warranties or Guarantees

based upon or arising out of any actual or alleged express warranties or guarantees. However, this Exclusion does not apply to a warranty or guarantee by the **Insured** that the **Insured's Professional Services** are in conformity with the standard of care applicable to that **Professional Service**.

i.  Employment Liability

based upon or arising out of the actual or alleged:

(i)   refusal to employ any person;

(ii)  termination of any person's employment; or

(iii) employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at any person or applicant for employment, including, but not limited to any **Claim** based upon the Americans with Disabilities Act, as amended or any state or local version of that act.

This Exclusion applies:

(a)  whether the **Insured** may be liable as an employer or in any other capacity; and

(b)  to any obligation to share damages with or repay someone else who must pay damages because of the injury.

j.  War

    based upon or arising out of war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion, or revolution.

k.  Ownership Interest

    by or on behalf of, or in the name or right of, any entity:

    (i)   operated, controlled or managed by any **Insured**;

    (ii)  that any **Insured**, or any **Insured's** spouse or domestic partner, individually or collectively with one or more **Insureds** has an ownership interest that exceeds forty-nine percent (49%);

    (iii) that holds the controlling financial interest in any **Insured**;

    (iv)  that manages or operates any **Insured**; or

    (v)   that is operated, controlled or managed by any person or organization that holds the controlling financial interest in any **Insured** or that manages or operates any **Insured**.

l.  Insured versus Insured

    brought or maintained against an **Insured** by, on behalf of, or in the right of any **Insured**, including any bankruptcy or insolvency trustee, receiver, examiner, liquidator or similar official for any **Insured** in any respect, whether or not the **Claim** is collusive.

m.  Faulty Workmanship

    arising out of the cost to repair or replace actual or alleged faulty workmanship the **Insured**, its subcontractors, or any other person for whom the **Insured** is legally liable, performs on any construction, erection, fabrication, installation, assembly, manufacture, or remediation, including any materials, parts, or equipment furnished in connection therewith. This Exclusion does not apply to drilling, excavation, or other sampling or testing procedures or the supplying of furnishings as part of interior design services, necessary to perform the **Insured's Professional Services**.

n.  Nuclear Facility

    alleging, based upon, arising out of, or attributable to a nuclear reaction, radiation, or contamination within or originating from a **Nuclear Facility**, under any circumstances and regardless of cause.

o.  Workers' Compensation

    under any workers' compensation, unemployment compensation or disability benefits law or similar law.

p.  Contractual Liability

    as a result of liability assumed by the **Insured** under any contract or agreement. This Exclusion does not apply to liability for **Damages** that the **Insured** would have in the absence of the contract or agreement.

q.  Prior Notice

    based upon or arising out of:

    (i)   any fact, situation, event, **Wrongful Act** or **Pollution Incident** which was the subject of any notice given under any prior policy for Design Professional Liability or Pollution Liability or other similar policy prior to the effective date of this Policy; or

(ii) any other **Wrongful Act** or **Pollution Incident**, whenever occurring, which is logically or causally connected by common facts, situations or events, regardless of the number of contracts or the types of **Professional Services** rendered, to the **Wrongful Act** or **Pollution Incident** specified in q. (i) immediately above.

## CONDITIONS

5.  **Limits of Liability and Deductible**

    a.  Limits of Liability

    The Limits of Liability stated in Item 3. of the Declarations, and as described below, are the most the Insurer will pay regardless of the number of **Insureds**, **Claim(s)**, individuals or entities making **Claim(s)**. The payment of **Damages** or **Claim Expenses** will reduce the Limits of Liability available to pay **Claims**.

    b.  Limits of Liability - Each Claim(s)

    The liability of the Insurer for the sum of all **Damages** and **Claim Expenses**, in excess of the Deductible, for each single, covered **Claim** shall not exceed the amount stated in Item 3. a. of the Declarations for each **Claim**. This limit applies as excess over any Deductible amount.

    c.  Limits of Liability - Policy Aggregate

    The liability of the Insurer for the sum of all **Damages** and **Claim Expenses**, in excess of the Deductible, for all covered **Claim(s)** first made or deemed made during the same **Policy Year** or, if applicable, the Optional Extended Reporting Period set forth in Section 9. b. of this Policy, shall not exceed the amount stated in Item 3. b. of the Declarations as Aggregate. This limit applies as excess over any Deductible amount.

    The **Policy Year** Limits of Liability as set forth above may not be aggregated or transferred, in whole or in part, so as to provide any additional Limits of Liability in respect of **Claim(s)** first made or deemed made during any other **Policy Year**. If the Limits of Liability as specified above for any **Policy Year** are exhausted, by payment of **Claim Expenses** or **Damages** or by tendering the Limit of Liability of the Policy to the **First Named Insured**, the Insurer's obligation for **Claims** first made or deemed made during that **Policy Year** shall be deemed completely fulfilled and extinguished.

    d.  Multiple/Related Claim(s)

    The inclusion herein of more than one **Insured**, or the making of **Claim(s)** by more than one person, or the inclusion of additional elements or amounts of damages, shall not operate to increase the Insurer's Limits of Liability. The Limits of Liability stated in Item 3. a. of the Declarations as applicable to each **Claim(s)** shall apply and only one Deductible amount shall apply thereto. The limit for each **Claim(s)**, shown in the Declarations, is the most the Insurer will pay for the sum of all **Claim(s)** and **Claim Expenses** treated as a single **Claim(s)**.

    **Related Claims** will be treated as a single **Claim**, regardless of when the earliest **Claim** was made against an **Insured**. This Policy applies only if the earliest **Claim** is first made against an **Insured** during a **Policy Year** within the **Policy Period** shown in the Declarations and first reported to the Insurer during the **Policy Period** or during the Automatic Extended Reporting Period pursuant to Section 9. a. of this Policy.

    e.  Deductible

    The **Named Insured** must pay the Deductible stated in Item 4. of the Declarations for **Damages** and **Claim Expenses**. The Deductible applies separately to each **Claim(s)** whether this insurance is primary or excess. Only reasonable and necessary **Claim Expenses** incurred by the **Insured** with the prior written consent of the Insurer qualify or apply in satisfaction of the Deductible. The Limits of Liability will not be reduced by the application of the Deductible.

6.  **Defense, Settlement and Cooperation**

The Insurer shall have the right and duty to defend any covered **Claim** for a **Wrongful Act** or **Pollution Incident** seeking **Damages** covered by this Policy, up to the Limits of Liability of the Policy, even if any of the allegations are groundless, false or fraudulent. The Insurer's duty to defend shall cease upon exhaustion of the applicable Limit of Liability set forth in Item 3. of the Declarations for this Policy or when the Insurer has tendered the Limits of Liability of the Policy to the **First Named Insured**.

The **Insureds** shall provide the Insurer with all information, assistance and cooperation which the Insurer reasonably requests and agrees that in the event of a **Claim** the **Insureds** will do nothing that shall prejudice the Insurer's position or its potential or actual rights of recovery. The Insurer may make any investigation it deems necessary. The Insurer shall have the right and shall be given the opportunity to effectively associate with the **Insureds** in the investigation, defense, and settlement (including the negotiation of a settlement) of any **Claim** that appears reasonably likely to be covered in whole or in part by this Policy. The Insurer will not settle any **Claim** without the written consent of the **First Named Insured** shown in Item 1. of the Declarations. The Insurer's designation or appointment of legal counsel by or on behalf of an **Insured** does not change the applicability of the remaining terms and conditions of this Policy, including any Deductible provisions of this Policy specifying that only reasonable and necessary **Claim Expenses** reduce an **Insured's** Deductible.

The **Insureds** agree not to settle or offer to settle any **Claim**, incur any **Claim Expenses** or otherwise assume any obligation or admit any liability with respect to any **Claim** without the Insurer's prior written consent, which shall not be unreasonably withheld. The Insurer shall not be liable for any settlement, **Claim Expenses**, assumed obligation or admission to which it has not provided prior written consent.

The **Named Insured** shall promptly reimburse the Insurer for all **Claim Expenses** paid or incurred by the Insurer on account of a **Claim** upon a final judgment or adjudication that the Insurer owes no duty to defend.

If any covered **Claim** made against the **Insured** is fully and finally resolved, with the Insurer's consent and agreement, through the use of **Mediation**, the Insurer will reimburse fifty percent (50%) of the each **Claim** Deductible paid by the **Named Insured**, up to a maximum reduction of $25,000. However, this **Mediation** Deductible credit is only available if, within thirty (30) days of the date of the Insurer's request, the **Insured** provides the Insurer with a copy of the **Written Agreement** that was executed by the **Insured** and the **Insured's** client prior to the **Insured's** performance of the **Professional Services** giving rise to such **Claim**.

Only one such **Mediation** Deductible credit shall apply per **Claim**.

7.  **Notice**

a.  As a condition precedent to the coverage hereunder:

(i)  in the event of a **Claim(s)**, prompt written notice containing particulars sufficient to identify the **Insured** and all reasonably obtainable information and documentation with respect to the time, place and particulars thereof, and the names and addresses of available witnesses, shall be given by or for the **Insured** to the Insurer;

(ii)  if a **Claim(s)** is made against the **Insured**, the **Insured** shall promptly forward to the Insurer every demand, notice, summons, order or other process received by the **Insured** or the **Insured's** representative. This requirement continues throughout the life of the **Claim(s)**.

b.  All notices under this Policy shall be in writing and given by prepaid express courier, certified mail, e-mail, or facsimile properly addressed to the appropriate party.

c.  If any **Insured** shall commit fraud in proffering any **Claim(s)** as regards amount or otherwise, the insurance shall become void as to such **Insured** from the date such fraudulent **Claim(s)** is proffered.

d.  Notice to any **Insureds** may be given to the **First Named Insured** at the address as shown in Item 1. of the Declarations. It is agreed the **First Named Insured** shall act on behalf of all **Insureds** with respect to the giving and receiving of notice of **Claim** or **Circumstance**, cancellation or termination, the payment of premiums and the receiving of any return premiums that may become due under this Policy, the negotiation, agreement to and acceptance of any endorsements issued to form a part of this Policy, and the exercising or declining to exercise any right to an Extended Reporting Period. Notice to the Insurer of any **Claim** under this Policy shall be given to:

RLI Insurance Company
9025 North Lindbergh Drive
Peoria, Illinois 61615-1431
Attention: Claim Department
Facsimile: (866) 692-6796
E-mail: new.claim@rlicorp.com

All other notices to the Insurer under this Policy shall be given to the same addressee but to the attention of the Underwriting Department. Notice given as described above shall be deemed to be received and effective upon actual receipt thereof by the addressee or one day following the date such notice was sent, whichever is earlier.

e.  If during the **Policy Period**, the **Insured** becomes aware of a **Circumstance** for which this Policy may apply, and if during the **Policy Period**, the **Insured** gives written notice containing details of:

(i)  the alleged **Wrongful Act** and implicated **Professional Services** or **Pollution Incident**, and

(ii)  the specific nature and extent of the injury or damage which has been sustained, and

(iii)  how the **Insured** first became aware of such **Circumstance**,

then any **Claim(s)** that may subsequently be made against the **Insured** arising out of such **Circumstance** shall be deemed to have been made on the date first written notice of the **Circumstance** was received by the Insurer. The right to give notice of a **Circumstance** as conferred upon the **Insured** in this Paragraph shall terminate at the end of the **Policy Period** and shall not exist during the Automatic Extended Reporting Period or any Optional Extended Reporting Period.

f.  If during the **Policy Period**, the **Insured** becomes aware of a **Crisis Event** for which Supplementary Payments 2. e., may apply, and if during the **Policy Period**, the **Insured** gives written notice containing details of:

(i)  the **Crisis Event**, and

(ii)  the specific nature and extent of the reputational damage which has been sustained, and

(iii)  how the **Insured** first became aware of such **Crisis Event**,

then any resulting **Crisis Management Expenses** will be paid in accordance with Supplementary Payments, 2. e., of this Policy. The right to give notice of a **Crisis Event** as conferred upon the **Insured** in this paragraph shall terminate at the end of the **Policy Period** and shall not exist during the Automatic Extended Reporting Period of any Optional Extended Reporting Period.

8.  **Cancellation or Nonrenewal**

This Policy shall terminate at the earliest of the following times:

a.  the effective date of termination specified in a prior written notice by the **First Named Insured** to the Insurer;

b.  ten (10) days after the Insurer mailed written notice of cancellation to the **First Named Insured** based upon failure to pay premium due, unless such premium is received by the Insurer prior to such tenth (10th) date;

c.  at such other time as may be agreed upon in writing by the Insurer and the **First Named Insured**; or

d.  upon expiration of the **Policy Period** as set forth in Item 2. of the Declarations of this Policy.

The Insurer shall refund the unearned premium computed at customary short rates if this Policy is terminated by the **Named Insured**. Under any other circumstances the refund shall be computed pro rata. Payment or tender of any unearned premium by the Insurer shall not be a condition precedent to the effectiveness of such termination, but such payment shall be made as soon as practicable. If the **Policy Period** is longer than eighteen (18) months, the premium charged for this Policy shall be fully earned at inception of the **Policy Period**.

The Insurer shall not be required to renew this Policy upon its expiration.

9. **Extended Reporting Period**

   a.  Automatic Extended Reporting Period

      (i)  In the event this Policy is immediately succeeded by similar claims-made insurance coverage issued by any insurer other than the Insurer for which the retroactive date is the same as or earlier than that shown in Item 6. of the Declarations, the **Insured** shall be entitled to a fifteen (15) day Automatic Extended Reporting Period for no additional premium. This extension shall apply to any **Claim** first made against the **Insured** during the **Policy Period** for **Wrongful Acts** or acts giving rise to a **Pollution Incident** committed on or subsequent to the **Retroactive Date** stated in Item 6. of the Declarations, and prior to the end of the **Policy Period** and first reported to the Insurer, in writing, during the fifteen (15) days immediately following the effective date of expiration or termination of this Policy; or

      (ii)  Provided that (i) above does not apply, the **Insured** shall be entitled to a sixty (60) day Automatic Extended Reporting Period for no additional premium. This extension shall apply to any **Claim** first made against the **Insured** during the **Policy Period** for **Wrongful Acts** or acts giving rise to a **Pollution Incident** committed on or subsequent to the **Retroactive Date** stated in Item 6. of the Declarations, and prior to the end of the **Policy Period** and first reported to the Insurer, in writing, during the sixty (60) days immediately following the effective date of expiration or termination of this Policy.

      However, no Automatic Extended Reporting Period shall apply in the event of the **Named Insured's** nonpayment of premium or Deductible amount or noncompliance with the terms and conditions of this Policy.

   b.  Optional Extended Reporting Period

      In the event of termination of this insurance for cancellation or nonrenewal by the **Insured**, for any reason, or if the Insurer shall cancel this Policy or terminate it by refusing to renew, for reasons other than the **Named Insured's** nonpayment of premium or Deductible amount or noncompliance with the terms and conditions of this Policy, the **First Named Insured** may purchase an Optional Extended Reporting Period of:

| Reporting Period | Policy Premium (Item 5. of the Declarations) |
|---|---|
| 1 year | 100% |
| 2 years | 150% |
| 3 years | 185% |
| 4 years | 210% |
| 5 years | 235% |

      or as otherwise required by the regulatory guidelines governing this type of insurance.

      The **First Named Insured** must request the purchase of the Optional Extended Reporting Period in writing to the Insurer within sixty (60) days of the termination of the Policy and pay the respective premium to the Insurer promptly when due.

If purchased, this extension shall apply to any **Claim** first made against the **Insured** during the Optional Extended Reporting Period for **Wrongful Acts** or acts giving rise to a **Pollution Incident** committed on or subsequent to the **Retroactive Date** stated in Item 6. of the Declarations and prior to the end of the **Policy Period** and first reported to the Insurer, in writing, during the purchased Optional Extended Reporting Period, immediately following the effective date of cancellation or nonrenewal.

If however, this Policy is succeeded by another professional liability claims-made insurance coverage, the **First Named Insured** shall have no right to purchase an Optional Extended Reporting Period.

The Optional Extended Reporting Period shall be non-cancelable. Accordingly, at the commencement of the Optional Extended Reporting Period, the entire premium shall be considered fully earned.

The Aggregate Limit of Liability applicable to the Optional Extended Reporting Period will be the Limit of Liability remaining under the last **Policy Year** of the terminated Policy or as otherwise required by the regulatory guidelines governing this type of insurance.

The extension of coverage granted hereunder shall be subject to all the terms and conditions of the Policy and shall only apply to **Professional Services** rendered before such cancellation or nonrenewal and which is otherwise covered by this Policy.

10. **Acquisitions, Mergers and Subsidiaries**

If during the **Policy Period** the **Named Insured** acquires securities or voting rights in another organization or creates another organization which as a result of such acquisition or creation such organization becomes a "Subsidiary" or acquires any organization by merger into or consolidation with the **Named Insured** ("Event"), then such organization and its **Insured Persons** shall become **Insureds** if:

a.  the **Named Insured** gives written notice to the Insurer of the Event, within ninety (90) days of such acquisition or creation, together with such information the Insurer may require; and

b.  the **Named Insured** pays any reasonable additional premium required by the Insurer.

Such coverage shall be afforded, subject to the terms and conditions of this Policy, from the date of the Event for such Subsidiary and its **Insured Persons** but only for **Wrongful Acts** or acts giving rise to a **Pollution Incident** committed or allegedly committed after the Event, unless the Insurer agrees by endorsement to provide coverage for **Wrongful Acts** or acts giving rise to a **Pollution Incident** committed or allegedly committed prior to such date.

For the purposes of this Condition, "Subsidiary" means any organization which the **Named Insured** owns, directly or through one or more Subsidiaries, more than fifty percent (50%) of the outstanding securities or voting rights representing the right to vote for the election of such organization's directors. Coverage afforded under this Condition with respect to **Claims** made against any Subsidiary or any **Insured** thereof shall only apply for **Wrongful Acts** or acts giving rise to a **Pollution Incident** occurring after the effective time such Subsidiary became a Subsidiary and prior to the time such Subsidiary ceased to be a Subsidiary of the **Named Insured**.

11. **Change of Control**

If during the **Policy Period** the **Named Insured** shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or organization or group of persons or organizations acting in concert (herein referred to as the "Transaction"); then this Policy shall continue in full force and effect as to **Wrongful Acts** or acts giving rise to a **Pollution Incident** occurring prior to the effective time of the Transaction, but there shall be no coverage afforded by any provision of this Policy for any **Wrongful Act** or act giving rise to a **Pollution Incident** occurring after the effective time of the Transaction and the entire premium for this Policy shall be deemed fully earned as of such time. The **First Named Insured** shall also have the right to elect an Extended Reporting Period described in Section 9. of this Policy or a greater period as may be negotiated with the Insurer.

The **Named Insured** shall give the Insurer written notice of the Transaction as soon as practicable, but not later than thirty (30) days after the effective date of the Transaction.

12. **Marital or Domestic Partner Extension**

Subject otherwise to the terms and conditions hereof, this Policy shall cover **Damages** arising from any **Claim** made against the lawful spouse or domestic partner (whether such stature is derived by reason of applicable statutory law, common law, or any other applicable law anywhere in the world) of an **Insured Person** for **Claims** arising solely out of his or her capacity as the spouse or domestic partner of an **Insured Person**, including such **Claims** that seek damages recoverable from marital community property, property jointly held by the **Insured Person** and the spouse or domestic partner; or property transferred from the **Insured Person** to the spouse or domestic partner; provided, however, this extension shall not afford coverage for **Wrongful Acts** or acts giving rise to a **Pollution Incident** of the spouse or domestic partner. All terms, conditions and other provisions of this Policy, inclusive of any provision relative to the applicable Deductible, which would be applicable to **Damages** incurred by the **Insured Person** in such **Claim**, shall also apply to **Damages** incurred by the spouse or domestic partner in such **Claim**.

13. **Severability**

Except with respect to the Limits of Liability and any rights or duties specifically assigned to the **First Named Insured** stated in Item 1. of the Declarations, such as those rights and duties in Section 19. of this Policy, this insurance applies:

a.   as if each **Named Insured** were the only **Named Insured**; and

b.   separately to each **Insured** against whom **Claim(s)** is made or suit is brought.

14. **Representations**

The **Insureds** represent and acknowledge that the statements and information contained in the Application are true, accurate and are the basis of this Policy and are incorporated into and constitute a part of this Policy; and shall be deemed material to the acceptance of this risk or the hazard assumed by the Insurer under this Policy.

15. **Subrogation**

In the event of any payment under this Policy, the Insurer and the **Insured** may have the right to recover all or part of any payment the Insurer or the **Insured** makes under this Policy. If so, those rights are transferred to the Insurer.

The **Insured** must do nothing to impair such rights. The **Insured** will do everything necessary to secure such rights and help the Insurer enforce them, including the execution of documents necessary to enable the Insurer to effectively bring suit. Any recoveries will be applied as follows:

a.   first, to the Insurer up to the amount of its payment for **Damages** and **Claim Expenses**;

b.   then, to the **Insured** as recovery of Deductible amounts paid as **Damages** and **Claim Expenses**.

The Insurer waives its rights of subrogation under this Policy against clients of the **Insured** as respects **Claim(s)** arising from **Professional Services** under the client's contract requiring waiver of subrogation but only to the extent required by written contract.

16. **Other Insurance**

This Policy shall be excess of any other valid insurance available to the **Insured**, including any project-specific professional liability insurance. This Policy shall also be excess of any Deductible or self-insured retention under such other insurance.

17. **Territory**

This Policy applies to **Claim(s)** arising from **Professional Services** rendered worldwide.

However, this Policy shall not apply to any risk which would be in violation of the law of the United States including, but not limited to, U.S. economic or trade sanction laws or export control laws administered by the U.S. Treasury, State, and Commerce Departments (e.g. the economic and trade sanctions administered by the U.S. Treasury Office of Foreign Assets Control).

18. **Valuation and Foreign Currency**

All premiums, limits, retentions/Deductibles, **Damages** or **Claim Expenses** and other amounts under this Policy are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or another element of **Damages** or **Claim Expenses** under this Policy is stated in a currency other than United States of America dollars, payment under this Policy shall be made in United States dollars at the rate of exchange published in *The Wall Street Journal* on the date the final judgment is reached, the amount of the settlement is agreed upon or the other element of **Damages** or **Claim Expenses** is due, respectively.

19. **Authorization**

The **First Named Insured** shall act on behalf of all **Insureds** with respect to the giving and receiving of notice of nonrenewal, the payment of premiums and the receiving of any return premiums that may become due under this Policy, the negotiation, agreement to and acceptance of any endorsements issued to form a part of this Policy. In addition to any right of the **Insureds**, the **First Named Insured** may also act on behalf of all **Insureds** with respect to the notice of **Claims**, **Circumstances** and the exercising or declining to exercise any right to any Extended Reporting Period.

20. **Action Against Insurer**

No action shall lie against the Insurer unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this Policy, nor until the amount of the **Insured's** obligation to pay shall have been determined either by judgment against the **Insured** after actual trial or by an agreement in writing between the **Insured**, the claimant and the Insurer.

No person or organization shall have any right under this Policy to join the Insurer as a party to any actions against the **Insured** to determine the **Insured's** liability, nor shall the Insurer be impleaded by the **Insureds** or their legal representatives. Bankruptcy or insolvency of the **Insured** or of the estate of an **Insured** shall not relieve the Insurer of any of its obligations hereunder.

21. **Assignment**

This Policy and any and all rights hereunder are not assignable without the written consent of the Insurer.

22. **Changes**

Only the **First Named Insured** is authorized to request changes to the terms of this Policy and changes to the terms of this Policy may be made solely with the Insurer's prior written consent. This Policy's terms can be changed only by endorsement issued by the Insurer and made a part of such Policy. Notice to any representative of the **Insured** or knowledge possessed by any agent or by any other person does not effect a change to any part of this Policy, or estop the Insurer from asserting any right under the terms, Exclusions, Conditions and limitations for the Policy, nor may the terms, Exclusions, Conditions and limitations hereunder be changed, except by a written endorsement to this Policy by the Insurer.

23. **Headings**

The descriptions in the headings of this Policy are solely for convenience and form no part of the Policy terms and conditions of coverage.

24. **Liberalization**

If the Insurer adopts any revisions to this Policy during the **Policy Year** that would broaden coverage without additional premium, the broadened coverage will apply to this Policy at the inception date of the next **Policy Year**, but it will not apply to **Claims** that were first made against any **Insured** prior to the effective date of such revision.

This Liberalization provision does not apply to the Insurer's issuance, use, amendment, reformation of, or change to, any endorsement that may be used in connection with the provision of insurance under the Professional Liability Policy Design Professionals.

25. **Entire Agreement**

The **Insureds** agree this Policy, including the Application and any endorsements, constitutes the entire agreement between the **Insureds** and the Insurer.

# SIGNATURE PAGE

In Witness Whereof, RLI Insurance Company has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

Corporate Secretary

President & COO

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA AMENDATORY ENDORSEMENT

The Policy is amended as follows:

1.  Section 3. **DEFINITIONS**, is amended by deleting the definition of "**Damages**" in its entirety and replacing it with the following:

    "**Damages**" means monetary judgments or settlements the **Insureds** are legally obligated to pay as a result of a covered **Claim**, including but not limited to compensatory damages, pre-judgment and post-judgment interest. **Damages** does not mean punitive, exemplary or multiple damages.

    **Damages** shall not include taxes, civil or criminal fines or penalties imposed by law, any amount for which the **Insureds** are absolved from payment. Additionally, **Damages** shall not include injunctive or equitable relief, or the return or reduction of fees, or charges for services rendered or expenses incurred by the **Insured** for redesign changes, additions or remedies necessitated by a **Claim(s)**, unless done with the prior written approval of the Insurer. The time and expense incurred by the **Insured** in assisting in resolving a **Claim(s)** are not **Damages**.

    **Damages** will include fines, taxes, and penalties assessed against a third party for which the **Insured** is legally liable.

2.  Section 3. **DEFINITIONS**, is amended by deleting the definition of "**Pollution Incident**" in its entirety and replacing it with the following:

    "**Pollution Incident**" means emission, discharge, release or escape of "pollutants" into or upon land, the atmosphere, or any watercourse or body of water, provided that such emission, discharge, release or escape results in "environmental damage". The entirety of any such emission, discharge, release or escape shall be deemed to be one "pollution incident". For the purposes of this definition "pollutants" means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned, or reclaimed."

3.  Section 4. **EXCLUSIONS**, is amended by deleting a. in its entirety and replacing it with the following:

    "a.  Intentional and Dishonest Acts

    based upon or arising out of or attributable to any dishonest, fraudulent, malicious, or criminal act, error or omission, or any intentional act, whether committed by an **Insured** or at an **Insured's** direction or with an **Insured's** prior knowledge.

    Notwithstanding this Exclusion, the Insurer will pay **Claim Expenses** on behalf of an **Insured** for **Claims** which are alleged to arise from an **Insured's** dishonest, fraudulent, malicious, or criminal act, error or omission, or any intentional act, whether committed by an **Insured** or at an **Insured's** direction or with an **Insured's** prior knowledge, unless or until there is a final judgment in a trial court against an **Insured** as to such conduct. The Insurer will provide such a defense, however, only if such conduct arises out of the provision of **Professional Services** by or on behalf of the **Insured**. The Insurer will not defend the **Insured** in any criminal proceedings. Upon a finding that the act, error or omission of an **Insured** was dishonest, fraudulent, malicious, criminal or an intentional act, whether committed by an **Insured** or at an **Insured's** direction or with an **Insured's** prior knowledge, the Insurer's payment of **Claim Expenses** shall cease and the **Named Insured** shall, as soon as practical, reimburse the Insurer for all **Claim Expenses** paid or incurred by the Insurer for an **Insured's** defense. As used herein, such a finding shall be deemed to occur upon:

    (i)  any criminal conviction of an **Insured** for an **Insured's** acts, errors or omissions forming a basis of the **Claim(s)** for which the Insurer is paying **Claim Expenses**; or

(ii)  a final judgment in a trial court rendered against an **Insured** for whom **Claim Expenses** are being paid under this Section."

4.  The forth paragraph of **Defense, Settlement and Cooperation**, Section 6. is deleted in its entirety and replaced with the following:

"The **Named Insured** shall, as soon as practical, reimburse the Insurer for all **Claim Expenses** paid or incurred by the Insurer on account of a **Claim** upon a final judgment or adjudication that the Insurer owes no duty to defend."

5.  Section 7. **Notice**, is amended by deleting a. in its entirety and replacing it with the following:

"a.  As a condition precedent to the coverage hereunder:

(i)  in the event of a **Claim(s)**, as soon as practical written notice containing particulars sufficient to identify the **Insured** and all reasonably obtainable information and documentation with respect to the time, place and particulars thereof, and the names and addresses of available witnesses, shall be given by or for the **Insured** to the Insurer;

(ii)  if a **Claim(s)** is made against the **Insured**, the **Insured** shall, as soon as practical, forward to the Insurer every demand, notice, summons, order or other process received by the **Insured** or the **Insured's** representative. This requirement continues throughout the life of the **Claim(s)**."

6.  Section 7. **Notice**, is amended by deleting c. in its entirety and replacing it with the following:

"If any **Insured** shall commit fraud in proffering any **Claim(s)** as regards amount or otherwise, the insurance may become void as to such **Insured** from the date such fraudulent **Claim(s)** is proffered."

7.  Section 8. **Cancellation or Nonrenewal**, is deleted in its entirety and replaced with the following:

"8.  **Cancellation or Nonrenewal**

This Policy shall terminate at the earliest of the following times:

a.  the effective date of termination specified in a prior written notice by the **First Named Insured** to the Insurer;

b.  ten (10) days after the Insurer mailed written notice of cancellation to the **First Named Insured** based upon failure to pay premium due, unless such premium is received by the Insurer prior to such tenth (10th) date;

c.  forty-five (45) days after the Insurer mailed written notice of cancellation to the **First Named Insured** based upon a material misstatement, a failure to comply with underwriting requirements established by the Insurer within ninety (90) days of the date of effectuation of coverage, a substantial change in the risk covered by the Policy or when the cancellation is for all insureds under such policies for a given class of insureds. The notice shall state the reason for such termination; or

d.  upon expiration of the **Policy Period** as set forth in Item 2. of the Declarations of this Policy.

The Insurer shall refund the unearned premium computed at ninety percent (90%) of pro rata if this Policy is terminated by the **Named Insured**. Under any other circumstances the refund shall be computed pro rata. Payment or tender of any unearned premium by the Insurer shall not be a condition precedent to the effectiveness of such termination, but such payment shall be made within fifteen (15) working days.

The Insurer shall not be required to renew this Policy upon its expiration. In the event of nonrenewal the Insurer shall mail a copy of the notice of nonrenewal to the **First Named Insured** at the address shown in the Policy, at least forty-five (45) days before the end of the **Policy Period**, expressing its intention not to renew the Policy and stating the reason for such nonrenewal. Notice of nonrenewal is not required if the Insurer or an affiliate has offered to renew the Policy. If notice of nonrenewal is mailed less than forty-five (45) days before expiration, coverage remains in effect until forty-five (45) days after the notice is mailed. Earned premium for any period of coverage that extends beyond the expiration date shall be pro rata based on the previous **Policy Period's** rate."

8.  The forth paragraph of **Extended Reporting Period**, Section 9., is deleted in its entirety and replaced with the following:

"The **First Named Insured** must request the purchase of the Optional Extended Reporting Period in writing to the Insurer within sixty (60) days of the termination of the Policy and pay the respective premium to the Insurer as soon as practical when due."

9.  Section 11. **Change of Control**, is deleted in its entirety and replaced with the following:

If during the **Policy Period** the **Named Insured** shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or organization or group of persons or organizations acting in concert (herein referred to as the "Transaction"); then this Policy shall continue in full force and effect as to **Wrongful Acts** or acts giving rise to a **Pollution Incident** occurring prior to the effective time of the Transaction, but there shall be no coverage afforded by any provision of this Policy for any **Wrongful Act** or act giving rise to a **Pollution Incident** occurring after the effective time of the Transaction. The **First Named Insured** shall also have the right to elect an Extended Reporting Period described in Section 9. of this Policy or a greater period as may be negotiated with the Insurer.

The Named Insured shall give the Insurer written notice of the Transaction as soon as practicable, but not later than thirty (30) days after the effective date of the Transaction.

10.  Section 12. **Marital or Domestic Partner Extension**, is deleted in its entirety.

11.  Section 17. **Territory**, is deleted in its entirety and replaced with the following:

"17.  **Territory**

This Policy applies to **Claim(s)** arising from **Professional Services** rendered worldwide.

However, this Policy shall not apply to any risk which would be in violation of the law of the United States."

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

Policy Number: RDP0038983                                              RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DOLLAR ONE DEFENSE COVERAGE ENDORSEMENT

In consideration of the additional premium of  $1,540.00                    , it is hereby understood and agreed that:

1.  The following bold print statements found in the second paragraph:

    a.  of the Declarations:

        "**CLAIM EXPENSES SHALL BE SUBJECT TO ANY DEDUCTIBLE AMOUNT.**"

    b.  of page one (1) of the Policy:

        "**Claim Expenses shall be subject to any Deductible amount.**"

    are both deleted in their entirety.

2.  **CONDITIONS**, Section 5., **Limits of Liability and Deductible**, Parts b., c., and e. are all deleted in their entirety and replaced as follows:

    "b.  Limits of Liability - Each Claim(s)

        The liability of the Insurer for the sum of all **Damages** and **Claim Expenses**, for each single, covered **Claim** shall not exceed the amount stated in Item 3. a. of the Declarations for each **Claim**. This limit applies as excess over any Deductible amount.

    c.  Limits of Liability - Policy Aggregate

        The liability of the Insurer for the sum of all **Damages** and **Claim Expenses**, for all covered **Claim(s)** first made or deemed made during the same **Policy Year** or, if applicable, the Optional Extended Reporting Period set forth in Section 9. b. of this Policy, shall not exceed the amount stated in Item 3. b. Declarations as Aggregate. This limit applies as excess over any Deductible amount.

        The **Policy Year** Limits of Liability as set forth above may not be aggregated or transferred, in whole or in part, so as to provide any additional Limits of Liability in respect of **Claim(s)** first made or deemed made during any other **Policy Year**. If the Limits of Liability as specified above for any **Policy Year** are exhausted, by payment of **Claim Expenses** or **Damages** or by tendering the Limit of Liability of the Policy to the **First Named Insured**, the Insurer's obligation for **Claims** first made or deemed made during that **Policy Year** shall be deemed completely fulfilled and extinguished.

    e.  Deductible

        The Deductible obligation stated in Item 4. of the Declarations will apply to **Damages** only and will not apply to **Claim Expenses**. The Deductible applies separately to each **Claim** whether this insurance is primary or excess.

        Furthermore, the Deductible will apply as follows:

        (i)  The Deductible for each **Claim** is the most the **Insured** must pay as a Deductible for **Damages** arising out of any single **Claim**.

        (ii) The aggregate Deductible, if any, is the most the **Insured** must pay as a Deductible for all **Claim(s)** first made and first reported during each **Policy Year**."

3.  The last sentence of the second paragraph of **CONDITIONS**, Section 6., **Defense, Settlement and Cooperation**, is deleted in its entirety and replaced with the following:

    "The Insurer's designation or appointment of legal counsel by or on behalf of an **Insured** does not change the applicability of the remaining terms and conditions of this Policy, including any Deductible provisions of this Policy."

4.  **CONDITION**, Section 15. b., is deleted in its entirety and replaced with the following:

    "b.  then, to the **Insured** as recovery of Deductible amounts paid as **Damages**."

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

Policy Number: RDP0038983                                          RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUDED ENTITIES OR INDIVIDUALS

The following entities or individuals are not **Insureds** under this Policy:

Appono Consulting, LLC

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

RDP 625 (01/09)                                                        Page 1 of 1

Policy Number: RDP0038983                                                          RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WAIVER OF RLI APPLICATION ENDORSEMENT

Section 14., **Representations**, is amended by adding the following:

It is hereby understood and agreed that when used in this Policy, including without limitation in this Section 14, "Application" includes (i) the below referenced application submitted by the **Insureds** to the carrier listed below, together with all attachments to such application, and (ii) any other material or information submitted to the Insurer by the **Insureds** with respect to underwriting this Policy.

| Type of Policy Application | Carrier | Date Signed |
|---|---|---|
| Professional Liability | New Hampshire Insurance Company | 04/13/2020 |

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

# *New Hampshire Insurance Company*

175 Water Street, 18th Floor
New York, New York 10038 212-458-5000

## APPLICATION FOR ARCHITECTS & ENGINEERS PROFESSIONAL LIABILITY POLICY
### (CLAIMS MADE COVERAGE)

**NOTICE: THE INSURANCE FOR WHICH YOU ARE APPLYING IS WRITTEN ON A CLAIMS MADE POLICY. ONLY CLAIMS WHICH ARE FIRST MADE AGAINST YOU AND REPORTED TO THE COMPANY DURING THE POLICY PERIOD ARE COVERED SUBJECT TO POLICY PROVISIONS. CLAIM MEANS ANY DEMAND FOR MONEY OR SERVICES, INCLUDING BUT NOT LIMITED TO THE SERVICE OF SUIT OR THE INSTITUTION OF ARBITRATION PROCEEDINGS AGAINST YOU.**

**THE LIMITS OF LIABILITY STATED IN THE POLICY ARE REDUCED BY CLAIM EXPENSES. CLAIM EXPENSES ARE ALSO APPLIED AGAINST YOUR DEDUCTIBLE OR SELF INSURED RETENTION, IF APPLICABLE TO THE CLAIM. IF YOU HAVE ANY QUESTIONS ABOUT COVERAGE, PLEASE DISCUSS THEM WITH YOUR INSURANCE BROKER.**

APPLICANT INSTRUCTIONS:

a. Please type or print in ink.
b. Answer all questions: **leave no blank spaces**.
c. If space provided is not sufficient to answer all questions fully, attach separate sheet and label appropriately.
d. This application must be signed and dated by the Owner if Applicant is a Sole Proprietorship, a Partner, if Applicant is a Partnership, or Authorized Officer if Applicant is a Corporation.

## SECTION ONE

### A.   APPLICANT INFORMATION

1. Name of Applicant

2. D/B/A:   Darren M. Azdell, AIA

3. Address   OutsideIn Architecture, LLC

4. Phone / e-mail   1345 Virginia Lee Cir, Brooksville, FL  34602

5. Contact Name, Title   (813) 400-2399 / Marnie@oi-arch.com

6. Business Type   Darren Azdell / Principal

| | Individual | Partnership |
|---|---|---|
| | Professional Corporation | Limited Liability Partnership |
| | LLC | Limited Liability Corporation (LLC)   (LLP) |

7. Date Established
Other

8  Requested Effective Date   03/18/2020

9  New Business or Renewal

110243 (12/12)

Page 1 of 12

**New Business**   Renewal of #

## B.   SHORT FORM ELIGIBILITY (ALL QUESTIONS IN THIS SECTION ARE MANDATORY)

| | | |
|---|---|---|
| 1. | Is principal in the applicant's firm a licensed architect, engineer or land surveyor?   Licensed Architect | Yes |
| | If yes, please list states where license(s) are held   Florida, Georgia, Puerto Rico | |
| 2. | Is a principal in the applicant's firm an interior designer or landscape architect? | No |
| | Please describe the applicant's operation:   Architecture  Firm | |
| 3. | Is the applicant's firm in private practice? | Yes |
| 4. | Did the applicant's firm have billings less than $1,000,000 in their last fiscal year? | Yes |
| 5. | Please indicate applicant's total number of claims in the most recent 5 years | 0 |
| 6. | Did total incurred claims exceed $25,000 in the last 5 years? | No |
| 7. | Please indicate total claim $ incurred. | 0 |
| 8. | After inquiry, is the applicant, any predecessors in business or any other person for whom coverage is requested aware of any act, error or omission or circumstance which may result in a claim being made against them but which has not yet been reported to a professional liability carrier? (If yes, please attach a full statement) | No |
| 9. | Does the applicant's firm have less than 25 staff members? (full & part time) | Yes |
| 10. | Does the applicant procure certificates of insurance from subconsultants for limits equal to the applicants? | Yes |
| 11. | Please indicate if any of the following risk management tools utilized by the firm | |
| | Written contracts are used 100% of the time | Yes |
| | AIA or EJCDC are used at least 70% of the time | Yes |
| | Limitation of Liability clauses are included at least 75% of the time | Yes |
| | Membership in professional associations or organizations | Yes |
| | Written in-house quality control procedures | Yes |
| | Continuing education program for professional employees | Yes |
| | Professional Association Peer Review Program | Yes |
| | Certificates of insurance required from subconsultants | Yes |
| 12. | Is it true that no member of the applicant's firm (staff or principal) has ever had their Professional Liability policy cancelled or not renewed by an insurance company (except for non payment of premium) | Yes |
| 13. | Did less than 20% of the applicant's (plus any subsidiaries, parent or other related entities) total billings from the past fiscal year result from actual construction or erection? | No |
| 14. | Do you design projects using model-based technology linked to project databases, for example, Building Information Modeling (BIM)? | No |
| 15. | Do you provide professional services on projects that are LEED certified? Not since  2011 | No |

**C.    PROFESSIONAL DISCIPLINES / PROJECTS / SERVICES**

List all professional activities and services provided and their respective approximate percentage of previous year's gross revenue entered on the Operations page **(TOTAL MUST EQUAL 100%)**:

Please describe in detail the professional activities for which coverage is desired, begin with the primary professional activity.

*(\*\* denotes that additional information may be requested, or excluded classes)*

| DISCIPLINES (MUST TOTAL 100%) | | | |
|---|---|---|---|
| Acoustical Engineering | | HVAC Engineering | |
| Architecture | 99 | Hydrology/Geology | |
| Asbestos inspection, testing or Abatement Design ** | | Interior Design | 1 |
| Chemical Engineering ** | | Laboratory Testing ** | |
| Chemical Engineering (coal, gas, oil) ** | | Land Surveying | |
| Civil Engineering (including traffic/transportation, water/wastewater) | | Landscape Architecture | |
| Communication Engineering | | Machine Equipment Design ** | |
| Construction Inspection | | Mechanical Engineering incl Plumbing Design | |
| Construction/Project Management (Agency) ** | | Mining Engineering ** | |
| Construction/Project Management (At-Risk) ** | | Naval/Marine Engineering ** | |
| Drafting / Drawing / CAD | | Planning – Space / Land / Master | |
| Electrical Engineering | | Process Engineering (gas, oil) ** | |
| Environmental Engineering ** | | Process Engineering ** | |
| Environmental Real Estate Audits | | Soil / Geotechnical Engineering ** | |
| Environmental Remediation Design/Specifications ** | | Structural Engineering | |
| Environmental Risk Assessment/Permitting ** | | Value / Quality Engineering | |
| Feasibility Studies & services not resulting in construction | | Other** | |
| Fire Protection Engineering | | Other** | |
| Forensic Activities / Expert Testimony | | Other** | |

110243 (12/12)                    Page 3 of 12

**PROJECTS (MUST TOTAL 100%)**

| | | | |
|---|---|---|---|
| Airports | | Municipal buildings / facilities | |
| Amusement Rides ** | | Nuclear facilities ** | |
| Apartments | 20 | Office buildings | 10 |
| Auditoriums/Theaters | | Parking structures | 5 |
| Bridges | | Parks / playgrounds | |
| Churches | 15 | Petrochemical / refineries ** | |
| Commercial buildings, excl condos or apts | 30 | Pools ** | |
| Condominiums ** | | Power plants / utilities | |
| Convention Centers | | Recreation | |
| Custom residential | | Restaurants / food services | 5 |
| Dams ** | | Roads / highways | |
| Environmental Impact Statements | | Schools / colleges | 15 |
| Foundation or shoring ** | | Sewer systems | |
| Forensic / Expert | | Sewage treatment plants | |
| Golf Courses | | Shopping centers / Retail | |
| Harbors, ports, piers, marinas | | Site Development | |
| Hospitals / Healthcare | | Sports stadiums | |
| Hotels / Motels | | Superfund / pollution ** | |
| Industrial waste treatment ** | | Surveying (incidental activities only) | |
| Jails / Justice | | Tract homes / subdivisions | |
| Landfills ** | | Traffic planning | |
| Libraries | | Tunnels ** | |
| Machinery & equipment ** | | Warehouses | |
| Manufacturing / Industrial buildings | | Water systems | |
| Mass transit | | Other** | |
| Material handling systems | | Other** | |
| Military facilities / bases | | Other** | |
| Mines ** | | Other** | |

| SERVICES (MUST TOTAL 100%) | | | | |
|---|---|---|---|---|
| Conceptual Design | 10 | Inspection of home/commercial property for prospective buyers or lenders ** | | |
| Construction Observation without design | 5 | Inspection services on existing structures ** | | |
| Construction / Project Management | | Manufacture, sale or distribution of any products or process ** | | |
| Consulting – not resulting in design | 5 | Perc testing | | |
| Design and observation | 80 | Plan checking | | |
| Design without observation | | Subsurface soil testing excl perc testing | | |
| Development, sale or leasing of computer software to others ** | | Surveying, planning, platting, mapping, flood plain studies | | |
| Feasibility studies / Planning / Reports | | Construction studies, boundary surveys | | |
| Forensic activities / Expert testimony | | Other** | | |
| Inspection / Certification | | Other** | | |

### D.   POLICY COVERAGE

| Per claim limit | 1 million | Aggregate limit | 1 million | Deductible | |
|---|---|---|---|---|---|
| Does the applicant currently have professional liability coverage? | | | | | Yes |
| If yes, does the applicant have full prior acts coverage? | | | | | Yes |
| If the applicant does not have full prior acts coverage, what is the prior acts date on the current policy? | | | | | |

### E.   OPERATIONS

| 1. Does the applicant or any subsidiary, parent or otherwise related entity engage in actual construction? | | | | No |
|---|---|---|---|---|
| 2. Does the applicant or subsidiary, parent or otherwise related entity engage in any manufacturing, fabrication or real estate development? If yes, please provide details: | | | | Yes |

Darren Azdell owns Appono Consulting, LLC (which is a Consultant for Development and monitors construction for lending institutions

| | Most recently completed fiscal year | First prior year | Second prior year |
|---|---|---|---|
| Domestic operations total gross billings | $ 199,297.41 | $ 1,062,000.00 | $ 310,000.00 |
| Joint venture projects applicants portion only | $ | $ | $ |
| Projects insured under separate project policies | $ | $ | $ |
| Projects which have been permanently abandoned | $ | $ | $ |
| Feasibility studies, master plans, reports | $ | $ | $ |
| Direct reimbursables | $ 58,617.60 | $ 18,622.56 | $ 6,713.32 |
| All other billings | $ | $ | $ |

| Total Gross Billings | $ | 199,297.41 | $ | | $ | |

| For design/build firms, please complete this section: | | | |
|---|---|---|---|
| Design/Build Construct Values | Most recently completed fiscal year | First prior year | Second prior year |
| All Operations: | $ | $ | $ |
| Design/Construct: | $ | $ | $ |
| Design only | $ | $ | $ |
| Construction only – no design | $ | $ | $ |

3. Please provide an attachment for the three (3) largest projects within the last five years. Attachment should include the following details: (1) name of project; (2) type of structure; (3) services performed; (4) construction values.

# SECTION TWO

### F.   APPLICANTS PRACTICE

| | | |
|---|---|---|
| 1. | During the past five years has the name of the firm been changed or has any other business been purchased or any merger or consolidation taken place? If yes, please provide details: | No |
| | | |
| 2. | Is the Applicant controlled, owned or associated with, or does the Applicant own or control any other firm, corporation or company? If yes, please provide details: | Yes |
| | Darren Azdell owns Appono Consulting, LLC - Monitoring and Consulting | |
| 3. | Does the Applicant have a membership in a Professional Organization? If yes, please list affiliations: | |
| | AIA, NCARB, LEED BD+C, CAAPPR, BOAF | |
| 4. | Number of Total Staff: | |
| | Principals, partners, officers, directors | 1 |
| | Architects, engineers, surveyors, site representatives, landscape architects, draftsmen and other technical personnel: | 3 |
| | Clerical and accounting employees | 1 |
| 5. | Is foreign work greater than 25%? If yes, please provide details: | No |
| | | |
| 6. | Have any of the Principals, Officers or Partners listed ever been subject to disciplinary action by authorities as a result of their professional activities? If yes, please provide details: | No |
| | | |

| 7. Types of contracts used: (enter percentage amounts – must total 100%) | |
|---|---|
| AIA or EJCDC | |
| Client drafted agreement | 90 |
| Firms standard form (please attach sample copy) | |
| Letter agreement (please attach sample copy) | |
| Oral agreements | |
| Purchase orders | 10 |

### G.   APPLICANTS PRACTICE (CON'T)

| 1.   Types of Clients | | | |
|---|---|---|---|
| Commercial | 18 | Local Government | |
| Contractors | 2 | Industrial | |
| Other Design Professionals | 2 | Real Estate Developers | 8 |
| Institutional | | Individual owners | 70 |
| Federal Government | | Other | |
| State Government | | Other | |
| 2.  Does the Applicant provide professional services on projects in which any Principal, Officer, Director or Shareholder or an immediate family member of such person retains an ownership interest of greater than 25%? If yes, please provide details: | | No | |
| | | | |
| 3.  Does the Applicant act in the capacity of an employee or official of any governmental body? If yes, please provide details: | | No | |
| | | | |

### H.   RISK MANAGEMENT

| | | |
|---|---|---|
| 1. | Does any one contract or client represent more than 50% of annual work? If yes, please provide details: | No |
| | | |
| 2. | In-house continuing education for professionals? | Yes |
| 3. | Professional association peer review program? | Yes |
| 4. | Are all contracts/ agreements / purchase orders reviewed by applicant's legal counsel before they are executed? If no, please explain: | No |
| AIA Standard Form of agreements unedited are not reviewed or recurring agreements | | |

**I.   CLAIMS HISTORY**

1. Please provide the total number of claims and the total aggregate amount incurred (indemnity and expense) for all <u>claims</u> <u>over the last five (5) years or the total number of years in operation if less than 5 years.</u>

| Total claims: | None | Total aggregate | None |
|---|---|---|---|

2. <u>Please provide the information below for all losses with paid indemnity and/or expenses</u>

| Date of loss: | |
|---|---|
| Date reported: | |
| Name of Claimant: | |
| Description: | |
| Current status: | |
| Incurred amt incl reserves | |
| Defendants offer to settle (if open) | |

3. After inquiry, is the Applicant, any predecessors in business, or any other person for whom coverage is requested aware of any _____ act, error, omission or circumstance which may possibly result in a claim being made against <u>them but which has not yet been reported to a professional liability carrier?</u>   No

| If yes, please provide details: |
|---|

4. Has the Applicant, any Predecessor in business or any other person form whom coverage is requested ever reported <u>a potential claim, circumstance to a professional liability carrier?</u>   No

| If yes, please provide details: |
|---|

**J.   INSURANCE HISTORY**

1. Please detail present Architects & Engineers Professional Liability Insurance coverage:

Tammy

| **Insurance Company** | |
|---|---|
| **Policy Number** | |
| **Limits** | |
| **Deductible** | |

2. Please detail Architects and Engineers Professional Liability Coverage for the FIVE YEARS prior to present coverage:

|  | Company | Policy # | Limits | Deductible | Policy period |
|---|---|---|---|---|---|
| 1st prior year | Tammy | | | | |
| 2nd prior year | | | | | |
| 3rd prior year | | | | | |
| 4th prior year | | | | | |
| 5th prior year | | | | | |

| | | |
|---|---|---|
| 3. | Has the applicant ever purchased an extended reporting period endorsement? If yes, please provide details: | No |
| | | |
| 4. | Has any application for Architects and Engineers Professional Liability Insurance made on behalf of the firm, any predecessors in business or present partners ever been declined or has the insurance ever been cancelled or renewal refused? If yes, please provide details: | |
| | | |
| 5. | Date UNINTERRUPTED insurance began: | 2009 |
| 6. | Is the Applicant currently insured under a Comprehensive General Liability and/or Umbrella Policy? If yes, please provide details: | Yes |
| | | |
| 7 | Please attach firm's brochure, resume, financial statement, and any other pertinent information. | |

110243 (12/12)                 Page 9 of 12

**IMPORTANT NOTICE**

The Applicant warrants and represents that the information that is set forth in this Application is true, accurate and complete. The Applicant acknowledges and understands that this Application and all information that is provided by this Applicant or any representative of the Applicant to supplement this Application will, if a policy of insurance is issued, be incorporated in such policy and be made part of such policy by reference.

IF THE INFORMATION SUPPLIED ON THIS APPLICATION CHANGES BETWEEN THE DATE OF THIS APPLICATION AND THE EFFECTIVE DATE OF THE POLICY, SHOULD A POLICY BE ISSUED, THE APPLICANT WILL IMMEDIATELY NOTIFY THE COMPANY OF SUCH CHANGES, AND THE COMPANY MAY WITHDRAW OR MODIFY ANY OUTSTANDING QUOTATIONS AND/OR AUTHORIZATIONS OR AGREEMENT TO BIND THIS INSURANCE.

**NOTICE TO APPLICANTS:** ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR, CONCEALS, FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT ACT, WHICH IS A CRIME AND MAY SUBJECT SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES.

**NOTICE TO ALASKA APPLICANTS:** The Applicant represents that the information that is set forth in this Application is true, accurate and complete. The Applicant acknowledges and understands that this Application and all information that is provided by this Applicant or any representative of the Applicant to supplement this Application will, if a policy of insurance is issued, be incorporated in such policy and be made part of such policy by reference.

**NOTICE TO ARKANSAS, NEW MEXICO AND WEST VIRGINIA APPLICANTS:** ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT, OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON.

**NOTICE TO COLORADO APPLICANTS**: IT IS UNLAWFUL TO KNOWINGLY PROVIDE FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE COMPANY. PENALTIES MAY INCLUDE IMPRISONMENT, FINES, DENIAL OF INSURANCE, AND CIVIL DAMAGES. ANY INSURANCE COMPANY OR AGENT OF AN INSURANCE COMPANY WHO KNOWINGLY PROVIDES FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO A POLICYHOLDER OR CLAIMANT FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE POLICYHOLDER OR CLAIMANT WITH REGARD TO A SETTLEMENT OR AWARD PAYABLE FROM INSURANCE PROCEEDS SHALL BE REPORTED TO THE COLORADO DIVISION OF INSURANCE WITHIN THE DEPARTMENT OF REGULATORY AUTHORITIES.

**NOTICE TO DISTRICT OF COLUMBIA APPLICANTS:** WARNING: IT IS A CRIME TO PROVIDE FALSE OR MISLEADING INFORMATION TO AN INSURER FOR THE PURPOSE OF DEFRAUDING THE INSURER OR ANY OTHER PERSON. PENALTIES INCLUDE IMPRISONMENT AND/OR FINES. IN ADDITION, AN INSURER MAY DENY INSURANCE BENEFITS IF FALSE INFORMATION MATERIALLY RELATED TO A CLAIM WAS PROVIDED BY THE APPLICANT.

**NOTICE TO FLORIDA APPLICANTS**: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS GUILTY OF A FELONY OF THE THIRD DEGREE.

**NOTICE TO KANSAS APPLICANTS**: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD, PRESENTS, CAUSES TO BE PRESENTED OR PREPARED WITH KNOWEDLGE OR BELIEF THAT IT WILL BE PRESENTED TO OR BY AN INSURER, PURPORTED INSURER, BROKER OR ANY AGENT THEREOF, ANY WRITTEN STATEMENT AS PART OF, OR IN SUPPORT OF, AN APPLICATION FOR THE ISSUANCE OF, OR THE RATING OF AN INSURANCE POLICY FOR PERSONAL OR COMMERCIAL INSURANCE, OR A CLAIM FOR PAYMENT OR OTHER BENEFIT PURSUANT TO AN INSURANCE POLICY FOR COMMERCIAL OR PERSONAL INSURANCE WHICH SUCH PERSON KNOWS TO CONTAIN MATERIAL FALSE INFORMATION CONCERNING ANY FACT MATERIAL THERETO; OR CONCEALS, FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO COMMITS A FRAUDULENT INSURANCE ACT.

**NOTICE TO KENTUCKY APPLICANTS:** ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME.

**NOTICE TO LOUISIANA APPLICANTS:** ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON.

**NOTICE TO MAINE APPLICANTS:** IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES MAY INCLUDE IMPRISONMENT, FINES OR A DENIAL OF INSURANCE BENEFITS.

**NOTICE TO MARYLAND APPLICANTS:** ANY PERSON WHO KNOWINGLY OR WILLFULLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR WHO KNOWINGLY OR WILLFULLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON.

**NOTICE TO MINNESOTA APPLICANTS:** A PERSON WHO FILES A CLAIM WITH INTENT TO DEFRAUD OR HELPS COMMIT A FRAUD AGAINST AN INSURER IS GUILTY OF A CRIME.

**NOTICE TO NEW JERSEY APPLICANTS**: ANY PERSON WHO INCLUDES ANY FALSE OR MISLEADING INFORMATION ON AN APPLICATION FOR AN INSURANCE POLICY IS SUBJECT TO CRIMINAL AND CIVIL PENALTIES.

**NOTICE TO NEW YORK APPLICANTS**: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME, AND SHALL ALSO BE SUBJECT TO A CIVIL PENALTY NOT TO EXCEED FIVE THOUSAND DOLLARS AND THE STATED VALUE OF THE CLAIM FOR EACH SUCH VIOLATION.

**NOTICE TO OHIO APPLICANTS**: ANY PERSON WHO, WITH INTENT TO DEFRAUD OR KNOWING THAT HE IS FACILITATING A FRAUD AGAINST AN INSURER, SUBMITS AN APPLICATION OR FILES A CLAIM CONTAINING A FALSE OR DECEPTIVE STATEMENT IS GUILTY OF INSURANCE FRAUD.

**NOTICE TO OKLAHOMA APPLICANTS:** WARNING: ANY PERSON WHO KNOWINGLY, AND WITH INTENT TO INJURE, DEFRAUD OR DECEIVE ANY INSURER, MAKES ANY CLAIM FOR THE PROCEEDS OF AN INSURANCE POLICY CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS GUILTY OF A FELONY (365:15-1-10, 36 §3613.1).

**NOTICE TO OREGON APPLICANTS**: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR, CONCEALS, FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, MAY BE GUILTY OF A FRAUDULENT ACT, WHICH MAY BE A CRIME AND MAY SUBJECT SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES.

**NOTICE TO PENNSYLVANIA APPLICANTS**: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES.

**NOTICE TO TENNESSEE, VIRGINIA AND WASHINGTON APPLICANTS**: IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES INCLUDE IMPRISONMENT, FINES AND DENIAL OF INSURANCE BENEFITS.

**NOTICE TO VERMONT APPLICANTS:** ANY PERSON WHO KNOWINGLY PRESENTS A FALSE STATEMENT IN AN APPLICATION FOR INSURANCE MAY BE GUILTY OF A CRIMINAL OFFENSE AND SUBJECT TO PENALTIES UNDER STATE LAW.

PLEASE READ THE FOLLOWING STATEMENT CAREFULLY AND SIGN BELOW WHERE INDICATED. IF THIS POLICY IS ISSUED, THIS SIGNED STATEMENT WILL BE ATTACHED TO THE POLICY.

The Applicant hereby acknowledges that he/she/it is aware that the limits of insurance contained in this policy shall be reduced, and may be completely exhausted, by the costs of defense expenses which include but are not limited to attorneys fees and, in such event, the insurer shall not be liable for the costs of defense expenses or for the amount of any judgment or settlement to the extent that such exceeds the limits of insurance of this policy.
This Applicant hereby further acknowledges that he/she/it is aware that defense expenses that are incurred shall be applied against the deductible amount, if any.

Signature

Name of Applicant

Darren Azdell, AIA

Title

Principal

Date

01.06.20

Producers Name

License Number
110243 (12/12)

Digitally signed by Darren M Azdell
Contact Info:
darren@oi-arch.com
Date: 2020.04.13 19:16:22-04'00'

Page 12 of 12