# EXHIBIT 10

# NEW HAMPSHIRE INSURANCE COMPANY

175 Water Street, 18th Floor, New York, NY 10038
(hereinafter called the Company)
212-458-5000
(The above being a capital stock company)

## ARCHITECTS & ENGINEERS PROFESSIONAL LIABILITY POLICY

Policy No.: 064992968-01                                    Renewal of: 064992968-00

---

**NOTICE: THIS IS A CLAIMS-MADE POLICY. COVERAGE OF THIS POLICY IS LIMITED GENERALLY TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AND REPORTED IN WRITING TO US WHILE THE POLICY IS IN FORCE. PLEASE REVIEW THIS POLICY CAREFULLY AND DISCUSS THE COVERAGE THEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.**

**NOTICE: THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY THE AMOUNTS INCURRED FOR LEGAL DEFENSE. AMOUNTS INCURRED FOR LEGAL DEFENSE, JUDGMENTS OR SETTLEMENTS SHALL BE APPLIED AGAINST THE DEDUCTIBLE AMOUNT.**

---

## DECLARATIONS

ITEM 1.    Named Insured:    OutsideIN Architecture, LLC
           Address:          1345 Virginia Lee Circle
                             Brooksville, FL 34602

ITEM 2.    Policy Period:    From: 3/18/2019 to: 3/18/2020
                             at 12:01 A.M. standard time at the address of the insured stated above.

ITEM 3.    Limits of Liability:   $1,000,000    Each Claim
                                  $1,000,000    Annual Aggregate

ITEM 4.    Deductible:       $5,000    Each Claim

ITEM 5.    Premium:          $15,585
                             State Surcharge  -    Not Applicable

ITEM 6.    Extended Reporting Period: 12 Months at 100% of the total annual premium
           Extended Reporting Period: 24 Months at 150% of the total annual premium
           Extended Reporting Period: 36 Months at 200% of the total annual premium
           Extended Reporting Period: 48 Months at 235% of the total annual premium
           Extended Reporting Period: 60 Months at 275% of the total annual premium

ITEM 7.    Retroactive Date:  3/18/2009

ITEM 8.    Endorsements made a part of this policy:
           See attached Schedule of Forms and Endorsements


           For claims service and any other inquiries please contact:
           New Hampshire Insurance Company
           100 Summer Street
           Boston, Massachusetts 02110
           LexingtonAEClaims@aig.com

Authorized Representative OR
Countersignature (in states where applicable)

87119 (05/12)

# Schedule of Forms

Named Insured   OutsideIN Architecture, LLC

Policy No:          064992968-01          New Hampshire Insurance Company

| Form Name | Form Edition No |
|---|---|
| Architects and Engineers Professional Liability Declarations | 87119 (05/12) |
| Schedule of Forms | Forms |
| Architects and Engineers Professional Liability Policy | 84002 (05/12) |
| Addendum to the Declarations | 78711 (07/12) |
| Florida Notice of Loss Control Services | 90231 (11/03) |
| Economic Sanctions Endorsement | 119679 |
| Policyholder Notice | 91222 (04/13) |
| Reimbursement for Regulatory Actions Under the ADA, FHA and OSHA | 97058 (03/08) |
| First Dollar Defense - Amendment to IV Limits of Liability and Deductible | 90492 (02/13) |
| Crisis Response Coverage Extension Endorsement | 99813 (11/08) |
| Technology Services Coverage Extension Endorsement | 109322 (05/12) |
| Florida Cancellation/Nonrenewal Endorsement | 76105 (05/00) |
| Florida Amendatory Endorsement | 89392 (07/05) |

# ARCHITECTS AND ENGINEERS PROFESSIONAL LIABILITY

### *NOTICE*

*THIS POLICY PROVIDES CLAIMS MADE AND REPORTED COVERAGE. THE POLICY APPLIES ONLY TO CLAIMS MADE UPON THE INSURED AND REPORTED IN WRITING TO THE COMPANY DURING THE SAME POLICY PERIOD OR EXTENDED REPORTING PERIOD, IF APPLICABLE.*

**THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGEMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED FOR CLAIM EXPENSES.   FURTHER NOTE THAT AMOUNTS INCURRED FOR CLAIM EXPENSES SHALL BE APPLIED AGAINST THE DEDUCTIBLE AMOUNT.**

*VARIOUS PROVISIONS THROUGHOUT THIS POLICY RESTRICT OR EXCLUDE COVERAGE. PLEASE READ THE ENTIRE POLICY CAREFULLY TO DETERMINE THE INSURED'S RIGHTS AND DUTIES, AND WHAT IS AND IS NOT COVERED.*

*DEFINED TERMS APPEAR IN BOLD-FACED TYPE. PLEASE REFER TO SECTION III.*

In consideration of the payment of the premium  by the **Named Insured** and in reliance upon the statements in the **Insured's** application incorporated herein by reference, the **Company** agrees with the **Insured** subject to all of the terms, exclusions and conditions of this policy, as follows:

## I.    INSURING AGREEMENTS

**A.    COVERAGES: (CLAIMS-MADE  AND REPORTED)**

The **Company** will pay on behalf of the **Insured** those sums in excess of the deductible shown in Item 4 of the Declarations that the **Insured** shall become legally obligated to pay as **Damages** because of **Claims** for a **Breach of Professional Duty** in the performance of **Professional Services** rendered to others by the **Insured** or any entity for whom the **Insured** is legally liable.

For this coverage to apply, all of the following conditions must be satisfied:

1.    The **Breach of Professional Duty** forming the basis of any **Claim** must arise out of **Professional Services** that take place subsequent to the Retroactive Date shown in Item 7 of the Declarations and prior to the end of the **Policy Period.**

2.    Prior to the Effective Date of this policy, no officer, director, principal, partner, insurance manager, risk manager, or corporate counsel of the **Insured** had knowledge of the **Breach of Professional Duty** or circumstance likely to give rise to a **Claim** under this policy. If such officer, director, principal, partner, insurance manager, risk manager or corporate counsel of the **Insured** knew, prior to the effective date of this policy, of the **Breach of Professional Duty** or a circumstance likely to give rise to a

**Claim** under this policy, then any continuation, change or resumption of such **Breach of Professional Duty** or circumstance during or after this **Policy Period** will be deemed to have been known prior to this **Policy Period**.

**3.**    **Claim** must first be made against the **Insured** during the **Policy Period**.

**4.**    The **Insured** must report the **Claim** to the **Company**, in writing, during the **Policy Period** or within the sixty (60) day period immediately following the end of the **Policy Period**.

## B.    TERRITORY

The insurance afforded by this policy applies only to **Claims** arising out of a **Breach of Professional Duty** in the performance of **Professional Services** that take place in and result in a **Claim** brought within:

1.    the United States of America, its territories or possessions or Puerto Rico; and

2.    elsewhere in the world

Payment of loss under this policy shall only be made in full compliance with all United States of America economic or trade sanction laws or regulations, including, but not limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control (OFAC).

## C.    DEFENSE PROVISIONS

1.    When any **Claim** against the **Insured** for which coverage is provided under this policy is made or brought within the United States of America, its territories or possessions, or Puerto Rico, the **Company** has the right to investigate such **Claim**, and the duty to defend  such **Claim,** with defense counsel selected with the **Company's** approval, even if such **Claim** is groundless, false or fraudulent.  The **Company's** obligation to defend or to continue to defend any **Claim** as provided in this subsection 1. shall end when the applicable limit of the **Company's** liability has been exhausted by payment of **Claim Expenses** or **Damages** or both.

2.    When any **Claim** against the **Insured** for which coverage is provided under this policy is made or brought outside the areas described in subsection 1. above, the **Company** shall not be obligated to assume charge of the investigation, defense or settlement of  such **Claim** but the **Company** shall have the right and shall be given the opportunity to associate with the **Insured** in the investigation and defense of  such **Claim**.  The **Insured** shall, under the **Company's** supervision, make or cause to be made such investigation and defense as is reasonable under the circumstances.  Subject to prior written authorization by the **Company**, the **Insured** may also effect settlement.  The **Company** shall reimburse the **Insured** for **Damages** and the reasonable and necessary costs of investigating and defending any such **Claim** such as (1) fees charged by any attorney selected by the **Insured** to defend the **Claim**, and (2) all other fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a decision regarding  the **Claim** as authorized by the **Company**.  For purposes of computing the amount of the limits of liability and deductible amount under this policy, such reasonable costs shall be construed as **Claim Expenses.** The **Company's**

obligations under this subsection 2. shall end when the applicable limit of liability has been exhausted by the payment of **Claim Expenses** or **Damages** or both.

**D.    SETTLEMENT PROVISIONS**

The **Company** will not settle or compromise any **Claim** without the consent of the **Insured**. If, however, the **Insured** refuses to consent to a settlement or compromise recommended by the **Company** and elects to contest such **Claim** or continue legal proceedings in connection with such **Claim**, then the **Company's** liability for the **Claim** shall not exceed the amount for which the **Claim** could have been so settled plus **Claim Expenses** incurred up to the date of such refusal subject to the applicable limit of liability under this policy.

**E.    CLAIM EXPENSES**

**Claim Expenses** shall be paid by the **Company**, and such payments reduce the available limit of liability.  The **Insured** must first pay any applicable deductible amounts as shown in Item 4 of the Declarations. **Claim Expenses** shall also be applied to the deductible.

## II.    EXCLUSIONS

This policy does not provide coverage and the **Company** will not pay **Claim Expenses** or **Damages** for any **Claim** based upon or arising out of:

**A.**    any dishonest, fraudulent, criminal or malicious conduct or **Breach of Professional Duty** or conduct of a knowingly wrongful nature committed intentionally or at the direction of an **Insured**; however, the **Company** shall defend a **Claim** against an **Insured** who did not commit, participate in, or have knowledge of the dishonest, malicious, or criminal acts or omissions, except the **Company** shall not defend any criminal prosecution under any circumstances;

**B.**    any **Claim** made by any **Insured** against any other **Insured;**

**C.**    the actual or alleged: (1) **Wrongful Termination**; (2) **Discrimination**; or (3) **Sexual Harassment** of any past or present employee of the **Insured** or any **Workplace Torts** alleged by any past or present employee of the **Insured;**

**D.**    any **Insured's** involvement as a partner, officer, director, stockholder, employer or employee of any business enterprise not named in the Declarations;

**E.**    any **Insured's** involvement in or **Professional Services** rendered to or on behalf of any organization or subsidiary or affiliate thereof, not named in the Declarations: (1) that wholly or partly owns, or to any extent controls, operates or manages an **Insured,** or (2) in which an **Insured** has a greater than twenty five percent (25%) ownership, or (3) that is controlled, operated or managed by an **Insured;**

**F.**    the design or manufacture of any products developed by any **Insured** for multiple sale or mass distribution, including but not limited to computer programs or software; however, this exclusion shall not apply to software created or modified specifically for a client for whom the **Insured** is rendering **Professional Services;**

**G.**    any express warranty or guarantee, unless liability would have attached to the **Insured** in the absence of an express warranty or guarantee and such liability arises out of a **Breach of Professional Duty** by the **Insured** in the performance of **Professional Services;**

H.    the cost to repair or replace any faulty: workmanship, assembly, construction, erection, fabrication, installation or remediation;

I.    the liability of others assumed by any **Insured** under any contract or agreement unless such liability arises as a result of a **Breach of Professional Duty** by the **Insured** in performance of **Professional Services** and would have existed absent such contract**;**

J.    **Bodily Injury** sustained by any employee of any **Insured** while engaged in employment by any **Insured**, or (1) any **Claim** by any person on account of such injury whose right to assert the **Claim** arises by reason of any blood, marital or other relationship with the employee, or (2) any **Claim** by any person or entity seeking contribution or indemnity because of such injury except that this exclusion does not apply to liability arising under a written contract executed prior to the injury;

K.    any obligation of any **Insured** under any worker's compensation, disability benefits or unemployment compensation law or any similar laws;

L.    nuclear reaction, radiation or contamination, under any circumstances and regardless of cause, within or originating from a **Nuclear Facility;**

M.    1.    war, including undeclared or civil war; or

    2.    warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    3.    insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

    This exclusion does not apply to a certified act of terrorism defined by Section 102. Definitions, of the Terrorism Risk Act of 2002 and any revisions or amendments thereto.

N.    services as an **Agency Construction Manager** with respect to any project for which any **Insured** holds any contract to perform any construction, erection, assembly, fabrication, installation or remediation either by itself or through any subcontractor at any tier.  This exclusion shall not apply to the provision of other **Professional Services** by the I**nsured** or any entity for which the **Insured** is legally liable.

O.    any deductible amount, self-insured retention or other retained amount for which any **Insured** has assumed or incurs any obligation for **Damages**, **Claim Expenses** or any other liability under any professional liability insurance policy or combined professional liability and pollution liability policy applying or purporting to apply to a specific project.

## III.    DEFINITIONS

A.    **Agency Construction Manager** means a person or organization that provides professional consulting services to a project owner for a fee to assist in the oversight of a project and the progress of the design and construction process.

B.    **Bodily Injury** means physical bodily injury, sickness or disease sustained by a person, including death at any time resulting from any of these.

**C.**     **Breach of Professional Duty** means negligence, defined as the failure to meet the professional standard of care legally required or reasonably expected under the circumstances in the performance or non-performance of **Professional Services** rendered to others by the **Insured** which results in **Damages** for which the **Insured** is legally liable.

**D.**     **Claim** means any demand received by an **Insured** seeking **Damages** and alleging liability or responsibility on the part of the **Insured** or persons for whose conduct the **Insured** is legally liable.

**E.**     **Claim Expenses** means:

   1.     fees charged by any  attorneys designated and approved by the **Company** for services in connection with the investigation or defense of **Claims**;

   2.     all other fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a **Claim,** if authorized by the **Company**.

   3.     **Claim Expenses** shall not include the salaries of any employee of the **Company** or of the **Insured.**

**F.**     **Company** means the company providing this insurance.

**G.**     **Damages** means any amount which an **Insured** is legally obligated to pay for any **Claim** to which this insurance applies and shall include: judgments and settlements, interest on judgements, and punitive, exemplary or multiple **Damages**, provided always that **Damages** shall not include the return or withdrawal of professional fees, sanctions, fines or penalties imposed by law. **Damages** shall not include matters that may be deemed uninsurable under the law pursuant to which this policy shall be construed. **Damages** also shall not include **Liquidated Damages** except for liability the **Insured** would have had in the absence of such **Liquidated Damages.**

**H.**     **Discrimination** means termination of an employment relationship or a demotion or a failure or refusal to hire or promote any individual because of race, color, religion, age, sex, disability, pregnancy, national origin or sexual orientation.

**I.**     **Insured** means:

   1.     the **Named Insured** designated in Item 1 of the Declarations;

   2.     any person who is or was a partner, officer, director, stockholder or employee of the **Named Insured** but only while acting within the scope of his/her duties as such;

   3.     the heirs, executors, administrators, and legal representatives of each **Insured** as defined in 1. and 2. above, in the event of death, incapacity or bankruptcy of such **Insured,** but only as respects liability arising out of **Professional Services** rendered by or on behalf of the **Named Insured** prior to such **Insured's** death, incapacity or bankruptcy;

   4.     a former partner, officer, director or employee of the **Named Insured** while rendering **Professional Services** on behalf of the **Named Insured;**

   5.     contract or leased personnel rendering **Professional Services** under the supervision of and on behalf of the **Named Insured;**

6.  joint ventures in which the **Named Insured** is named as a co-venturer, but only as respects the **Insured's** legal liability arising out of the **Insured's** participation in such joint venture;

7.  any **Predecessor in Interest**.

**J.**  **Liquidated Damages** means an amount stipulated in advance in a contract to be the amount or measure of damages to be recovered by a party to that contract if the other party breaches the agreement or fails to perform or perform adequately its obligations under the contract

**K.**  **Mediation** means non-binding intervention by a qualified professional mediator.

**L.**  **Named Insured** means the person or entity designated as such in Item 1 of the Declarations.

**M.**  **Nuclear facility** means the site at which a nuclear reactor is located or where nuclear waste or material is disposed of or stored.

**N.**  **Policy Period** means the period from the effective date of this policy to the expiration date or earlier termination date, if any, of this policy.

**O.**  **Predecessor in Interest** means any prior entity whose assets, partners, principals or shareholders have been acquired by the **Insured** and whose name has been listed in the application attached hereto, and for whose insurance the **Insured** is responsible by written agreement.

**P.**  **Professional Services** means those services that the **Insured** is legally qualified to perform for others in their capacity as an architect, engineer, land surveyor, landscape architect, **Agency Construction Manager**, scientist, technical consultant, including such services when performed on projects seeking LEED certification and/or utilizing Building Information Modeling (BIM) or as specifically defined by endorsement to this policy.  **Professional Services** shall not include actual facility operation and maintenance operations.

**Q.**  **Sexual Harassment** means unwelcome sexual advances or requests for sexual favors or other verbal or physical conduct of a sexual nature that

1.  are made a condition of employment or
2.  are used as a basis for employment decisions or
3.  create a work environment that interferes with performance.

**R.**  **Subsidiary** means any entity, in which more than 50% of the outstanding securities or voting rights representing the present right to vote for the election of directors in such entity is owned or controlled, directly or indirectly, in any combination, by the Named Insured.

**S.**  **Workplace Torts** means retaliation, defamation, infliction of emotional distress, invasion of privacy, negligent evaluation, wrongful discipline, wrongful reference, failure to grant tenure, negligent hiring, employment related misrepresentation, wrongful failure to employ or promote, wrongful deprivation of career opportunity, or wrongful demotion.

**T.**  **Wrongful Termination** means termination of an employment relationship in a manner which is against the law and wrongful or in breach of an express or implied agreement to continue employment.

## IV.   LIMITS OF LIABILITY AND DEDUCTIBLE

**A.   LIMIT OF LIABILITY-EACH CLAIM**

Subject to **B. Limit of Liability-Aggregate**, below, the liability of the **Company** for each covered **Claim** shall not exceed the amount stated in Item 3 of the Declarations for Each **Claim**. This limit is the maximum amount of **Damages** or **Claim Expenses** or both that the **Company** will pay for each covered **Claim**. The limit of liability shall apply in excess of the deductible.

**B.   LIMIT OF LIABILITY-AGGREGATE**

Subject to **A. Limit of Liability – Each Claim,** above, the liability of the **Company** shall in no event exceed the amount stated in Item 3 of the Declarations as the Policy Aggregate as a result of all covered **Claims**. This limit is the maximum amount of **Damages** or **Claim Expenses** or both that the **Company** will pay under this policy for all covered **Claims** including those reported as provided for in **SECTION V., CONDITION C., EXTENDED REPORTING PERIOD**, if applicable.

Once the applicable limits of liability have been exhausted, the **Company** will not defend or pay **Damages** or **Claim Expenses** for any **Claim**.

**C.   MULTIPLE INSUREDS**

The number of **Insureds** covered by this policy shall not operate to increase the limits of liability as specified above.

**D.   MULTIPLE CLAIMS**

Two or more covered **Claims** arising out of a single **Breach of Professional Duty** or any series of related **Breaches of Professional Duty** will be considered a single **Claim** and shall be deemed to be made at the time the first of such **Claims** is made. This policy shall only apply if the first or earliest **Claim** arising from such **Breach of Professional Duty** or series of related **Breaches of Professional Duty** is made during the **Policy Period** or Extended Reporting Period, if applicable. These provisions apply regardless of the number of **Insureds** involved in such a **Claim**, the number of **Claims** made, or the number of people or organizations that make the **Claims**.

The number of **Claims** made or the number of people or organizations that make **Claims** shall not operate to increase the Limits of Liability as specified in subsections A and B above.

**E.   DEDUCTIBLE - EACH CLAIM**

The deductible amount stated in the Declarations applies to each **Claim** and shall be paid by the **Insured**. The deductible shall be applied to the payment of **Damages** or **Claim Expenses** or both.

The **Company** may advance payment for part or all of the deductible amount and, upon notification of such payment made, the **Insured** must promptly reimburse the **Company** for the deductible amounts advanced by the **Company**.

Until a **Claim** is made, the deductible does not apply to **Claim Expenses** incurred by the **Company** or at the **Company's** specific request as respects possible **Claims** reported under SECTION V. **CONDITIONS B. REPORTING OF POTENTIAL CLAIMS.**

**F.    REIMBURSEMENT:**

The **Company** will reimburse the **Insured**, upon written request, for loss of earnings by the **Insured** as a result of being required to attend, at the **Company's** request, a **Mediation**, arbitration, deposition, or trial related to a covered **Claim,** subject to the following:

1.    No reimbursement will apply to the first three (3) days attendance of the **Insured** required for each **Claim;**

2.    Loss of earnings reimbursement will not be considered as payment of a **Claim** or **Claim Expenses** and will be in addition to the limits of liability.  Reimbursement is not subject to the deductible.

3.    Loss of earnings reimbursement shall not exceed $400 per day per loss of earnings **Claim**, subject to a maximum annual aggregate reimbursement of $7,500 for all loss of earnings **Claims**.

**G.    MEDIATION**

If the **Insured** and the **Company** jointly agree to utilize **Mediation** as a means to try to resolve a **Claim** made against the **Insured**, and if such **Claim** is resolved through the use of **Mediation**, then the **Insured's** deductible obligation shall be reduced as follows:

1.    For a **CLAIM** which is resolved through the use of **MEDIATION** within one year from the date that the **CLAIM** was first made against the **INSURED**, the **INSURED'**s deductible payment shall be reduced by 50%, subject to a maximum reduction of $20,000;

2.    For a **CLAIM** which is resolved through the use of **MEDIATION** more than one year from the date that the **CLAIM** was first made against the **INSURED**, the **INSURED'**s deductible payment shall be reduced by 25%, subject to a maximum reduction of $20,000.

**V. CONDITIONS**

**A.    INSURED'S DUTIES WHEN THERE IS A CLAIM**

As a condition precedent to the right of coverage under this policy, the **Insured** must do the following:

1.    If a **Claim** to which this policy applies is made against the **Insured**, the **Insured** must give written notice, as soon as practicable, containing the information detailed in **CONDITION B.,** below to:

> New Hampshire Insurance Company
> 100 Summer Street
> Boston, Massachusetts 02110-2103
> Attn: Claims Department
> LexingtonAEClaims@aig.com

> Written notice shall include every demand, notice, summons or other process received by the **Insured** or the **Insured's** representatives.

2.    The **Insured** must cooperate with the **Company** and, upon the **Company's** request, submit to examination and interrogation by a representative of the **Company**, under

oath if required, and shall attend hearings and depositions and shall assist the **Company** in the investigation, settlement and defense of **Claims** or suits as well as the giving of a written statement or statements to the **Company's** representatives  all without charge to the **Company.**

3.    If the **Insured** has the right to either accept or reject arbitration of any **Claim,** exercise such right only with the written consent of the **Company**.

4.    Not make any payment, admit any liability, settle any **Claims** or assume any obligations without the prior written consent of the **Company**.

5.    Do whatever is necessary to secure and affect any rights of indemnity, contribution or apportionment that the **Insured** may have.

6.    Other than what is required by law, refrain from discussing the facts and circumstances of any **Claim** with anyone other than legal counsel representing the **Insured** or representatives of the **Company**.

**B.    REPORTING OF A POTENTIAL CLAIM**

If the **Insured** first becomes aware during the **Policy Period** of an actual or alleged **Breach of Professional Duty** or circumstance arising out of **Professional Services** which is reasonably likely to result in a **Claim**, the **Insured** may give written notice to the **Company** containing the information listed below.  If such written notice is received by the **Company** prior to the end of the **Policy Period**, any **Claims** subsequently  made against the **Insured** arising out of such conduct shall be deemed for the purpose of this policy to have been made on the  last day of the **Policy Period**.  The **Insured** shall cooperate fully with the **Company**, and any investigation conducted by the **Company** or its authorized representatives, and shall be subject to the terms set forth in **SECTION V., CONDITIONS, A. INSURED'S DUTIES WHEN THERE IS A CLAIM** above as applicable to a **Claim**.

It is a condition precedent to the coverage afforded by  this policy that the written notice shall  contain the following information:

1.    The actual or alleged **Breach of Professional Duty** or circumstance which is the subject of a potential **Claim**;

2.    A description of the **Professional Services** rendered by the **Insured** which may result in the **Claim**;

3.    The date(s) of such conduct which may result in  the **Claim**; and

4.    A description of the injury or damage that has or may result in a  **Claim**.

5.    The identities and address of any potential claimant(s);

6.    The anticipated location(s) of any such potential **Claim**;

7.    The circumstances by which the **Insured** first became aware of the potential **Claim.**

If all of the above information is not so provided or is, in the reasonable judgement of the **Company**, deemed inadequate, the **Company** shall inform the **Insured** that any **Claim** made after the **Policy Period** relating to the written notice will not be deemed to have been made during the **Policy Period**.

C.   **EXTENDED REPORTING PERIOD**

If this policy is canceled or non-renewed by the **Company** or the **Named Insured** for reasons other than non-payment of premiums or non-compliance with the terms and conditions of this policy, the **Named Insured**, shall have the option to purchase an Extended Reporting Period by advising the **Company** in writing, as provided below, of its election to do so, accompanied by the payment of the additional premium specified in Item 6 of the Declarations.  The Extended Reporting Period will apply only to **Claims** first made against the **Insured** during the number of months specified in Item 6 of the Declarations following immediately upon the effective date of such cancellation or non-renewal, but only by reason of a **Breach of Professional Duty** arising out of **Professional Services** which happens subsequent to the retroactive date and prior to the effective date of such cancellation or non-renewal, and which is otherwise covered by this policy.  This Extended Reporting Period, if purchased, must be endorsed hereto.

If however, this policy is immediately succeeded by similar claims-made insurance coverage issued by any insurer for which the retroactive date is the same as or earlier than that shown in Item 7 of the Declarations, the succeeding insurance shall be deemed to be a renewal hereof and the **Named Insured** shall have no right to an Extended Reporting Period.

The quotation of a different premium or deductible amount or limit of liability or differing terms and conditions for renewal does not constitute a refusal to renew for the purpose of this provision.

As a condition precedent to the **Named Insured's** right to purchase the Extended Reporting Period, the **Named Insured** must have satisfied all conditions of this policy and must have paid all premiums deductible amounts due.

The **Named Insured's** right to purchase the Extended Reporting Period must be exercised by notice, in writing, not later than sixty (60) days after the cancellation or expiration date of this policy and must include payment of the entire premium for the Extended Reporting Period as specified in Item 6 of the Declarations.  If such notice and payment are not so given to the **Company**, the **Named Insured** shall not be able to purchase an Extended Reporting Period subsequently.

The Extended Reporting Period shall be non-cancelable. Accordingly, at the commencement of any Extended Reporting Period, the entire premium shall be considered earned.

The purchase of the Extended Reporting Period provision shall not reinstate the Policy Aggregate Limit or increase the Limits of Liability set forth in Item 3 of the Declarations.

D.   **SUBROGATION**

In the event of any payment under this policy, the **Company** shall be subrogated to all the **Insured's** rights of recovery therefor against any person or organization and the **Insured** shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.  The **Insured** shall do nothing after an incident reasonably likely to give rise to a **Claim**

to prejudice such rights. The **Company** agrees to waive this right of subrogation against the client of the **Insured** to the extent that the **Insured** had, prior to a **Claim**, a written agreement to waive such rights.

### E.   HOW OTHER INSURANCE APPLIES

Where other insurance is available to the **Insured** for **Damages** covered under the terms and conditions of this policy, the **Company's** obligation to the **Insured** shall be as follows:

1.   This policy shall apply as excess insurance over any other valid insurance, whether collectible or not, be it primary, excess or contributing.  This excess insurance shall in no way be increased or expanded as a result of the receivership, insolvency, or inability to pay of any insurer with respect to both the duty to indemnify and the duty to defend. This also applies to the **Insured** while acting as a self-insured for any coverage.

2.   Where, in accordance with paragraph 1, above, this policy is excess insurance, the **Company** will pay:

    a.   only its share of the amount of **Damages** and **Claim Expenses**, if any, that exceed the total amount of all such valid insurance, whether collectible or not including any deductible, self-insured retention or other retained amount; and

    b.   only for such **Damages** and **Claim Expenses** as  are covered by the terms and conditions of this policy.

The **Insured** shall promptly, upon request of the **Company**, provide the **Company** with copies of all policies potentially applicable, whether collectable or not, against the liability covered by this policy.

### F.   CHANGES MADE TO THIS POLICY

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or stop the **Company** from asserting any right under the terms of this policy.  The terms and conditions of this policy cannot be waived or changed except by specific written endorsement issued by the **Company** and made part of this policy.

### G.   ASSIGNMENT OF THE INSURED'S INTEREST

The interest of the **Insured** under this policy is not assignable to any other person or organization without the prior written consent of the **Company**.

### H.   CANCELLATION:

The **Named Insured** may cancel this policy by returning the policy to the **Company** or its authorized representatives.  The **Named Insured** can also cancel this policy by written notice to the **Company** stating at what future date cancellation is to be effective.  If the **Named Insured** cancels, earned premium shall be computed using the customary short rate table.

The **Company** may cancel this policy by written notice to the **Named Insured**, at the address last known to the **Company**.  The **Company** will provide written notice at least thirty (30) days before cancellation is to be effective.

However, the **Named Insured** will only be entitled to ten (10) day's notice if the **Company** cancels because the **Insured** has failed to pay a premium when due.

If the **Company** cancels, earned premium will be computed pro-rata, unless the **Company** cancels for nonpayment of premium as described above,  in which case earned premium will be computed using the customary short rate table.

The mailing of any notice of cancellation shall be sufficient proof of notice.

The effective date of cancellation terminates the **Policy Period**.  The return of unearned premium is not a condition of cancellation.  The **Company** will return all unearned premium due the Named Insured in due course.

I.   **SOLE AGENT**

The **Named Insured** shall act on behalf of all other **Insureds**, if any, for the payment or return of premium, receipt and acceptance of any endorsement issued to form a part of this policy, and giving and receiving notice of cancellation or non-renewal.

J.   **BANKRUPTCY**

The bankruptcy, receivership or insolvency of an **Insured** or the **Insured's** estate or of any insurer shall not relieve the **Company** of any of its obligations under this policy. However, such bankruptcy, receivership or insolvency shall in no way increase the **Company's** liability under this policy nor will this insurance apply to liability directly or indirectly due to bankruptcy, insolvency, receivership, or subsequent liquidation.

K.   **APPLICATION**

The statements in the application are the **Insured's** representations and are deemed material. This policy is issued based upon the truth and accuracy of such representations.  Upon the binding of coverage, the application, incorporated herein by reference, shall become part of this policy.  This policy embodies all agreements existing between the **Insured** and the **Company** or any of its representatives relating to this policy.

L.   **PREMIUM and AUDIT**

a.   All premiums for this policy will be computed in accordance with the **Company's** rules and rates.

b.   If the premium for this policy is a flat premium, it is not subject to adjustment, except that additional premium may be required for any additional exposures and/or **Insureds** or as provided for in **SECTION V., CANCELLATION.**

The premium shown as the **Premium** in Item 5. A. of the Declarations is a deposit premium only.  If the policy is subject to audit adjustment, the actual exposure base will be used to compute the earned premium.  If the earned premium is greater than

the Total Premium, the **Named Insured** will pay the difference to the **Company**, due and payable upon notice.

c.    The **Named Insured** must keep records of the information needed by the **Company** for premium computation, and send copies to the **Company** as requested.  The **Named Insured** is responsible for the payment of all premiums and will be the payee for any return premiums from the **Company**.

d.    The **Company** may examine and audit the **Insured's** books and records at any time during the **Policy Period** and within three (3) years after the end of the **Policy Period**, as far as they relate to this policy.

**M.    ACTION AGAINST THE COMPANY:**

No person or organization has a right under this policy to sue the **Company** or to join the **Company** as a party or otherwise bring the **Company** into a suit seeking **Damages** against an **Insured,** unless:

1.    all the terms and conditions of this policy have been fully complied with; and

2.    the amount of such **Damages** have been fixed or rendered certain;

a.    by final judgment against the **Insured** after trial of the issues; or

b.    the time to appeal such judgment has expired without an appeal being taken; or

c.    if appeal is taken, after the appeal has been determined; or

d.    by an agreed settlement in accordance with the terms and conditions of this policy.  An agreed settlement means a settlement and release of liability executed by the claimant or the claimant's legal representative, and the **Insured**, with the written consent of the **Company**.

**N.    FALSE OR FRAUDULENT CLAIMS:**

If the **Insured** reports any **Claim** knowing such **Claim** to be false or fraudulent, this policy shall become void and all insurance coverage hereunder shall be forfeited.

**O.    ACQUISITIONS, MERGERS AND MATERIAL CHANGES:**

In the event that the **Named Insured** (i) acquires any other entity or acquires substantially all the assets of another entity, or (ii) merges with another entity such that the **Named Insured** is the surviving entity, or (iii) creates or acquires a **Subsidiary** or (iv) in the sole judgment of the **Company** materially changes its business as described in the Application after the effective date of this policy, no coverage shall be afforded under this policy for assets acquired, or the entity merged with, or the **Subsidiary** or such changed business activities, unless and until:

1.  The **Named Insured** provides written notice of such transaction or event or change to the **Company** not more than sixty (60) days after the effective date of such transaction, or event or change, and

2.  The **Named Insured promptly** provides the **Company** with such information in connection therewith as the **Company** may deem necessary, and

3.  The **Named Insured** accepts any special terms, conditions, exclusions, or additional premium charge required by the **Company**, and

4.  The **Company** at its sole discretion specifically agrees in writing to provide such coverage.

If the **Company** agrees to provide coverage, it will not include any **Breach of Professional Duty** committed or allegedly committed, with respect to any entity, assets, **Subsidiary**, or changed business activities referred to in subparagraph 1 above, prior to the effective date of such acquisition, merger, creation, or change, or any **Breach of Professional Duty** or interrelated **Breaches of Professional Duty** committed or allegedly committed prior to the effective date of such acquisition, merger, creation, or change.

If (i) the **Named Insured** merges into or consolidates with another entity, or (ii) another entity or person or group of entities and/or persons in concert acquire securities or voting rights which result in ownership or voting control by the other entity or person(s) of more than 50% of the outstanding securities representing the present right to vote for election of directors of the **Named Insured**, coverage under this policy shall continue until termination of this policy, but only with respect to **Claims** for **Breach of Professional Duty** committed, attempted, or allegedly committed by the **Insureds** prior to such merger, consolidation or acquisition. The **Named Insured** shall give written notice of such merger, consolidation or acquisition as soon as practicable, together with such information as the **Company** may require.

For purposes of this Condition, an entity shall mean any corporation, business trust, partnership, or other form of organization, including a **Named Insured**.

**P.   ARBITRATION**

In the event of a disagreement as to the interpretation of this policy, it is mutually agreed that such dispute shall be submitted to binding arbitration before a panel of three (3) arbitrators, consisting of two (2) party-nominated (non-impartial) arbitrators and a third (impartial) arbitrator (hereinafter "umpire") as the sole and exclusive remedy.

The party desiring arbitration of a dispute shall notify in writing the other party, said notice including the name, address and occupation of the arbitrator nominated by the demanding party.  The other party shall, within 30 days following receipt of the demand, notify in writing the demanding party of the name, address and occupation of the arbitrator nominated by it. The two (2) arbitrators so selected shall, within 30 days of the appointment of the second arbitrator, select an umpire.  If the arbitrators are unable to agree upon an umpire, each arbitrator shall submit to the other arbitrator a list of three (3) proposed individuals, from which list such arbitrator shall choose one (1) individual.  The names of the two (2)

individuals so chosen shall be subject to a draw, whereby the individual drawn shall serve as umpire.

The parties shall submit their cases to the panel by written and oral evidence at a hearing. Said hearings shall be held within thirty (30) days of the selection of the umpire unless otherwise agreed by a majority of the panel. The panel shall be relieved of all judicial formality, shall not be obligated to adhere to the strict rules of law or of evidence, shall seek to enforce the intent of the parties hereto and may refer to, but are not limited to, relevant legal principles.  The decision of at least two (2) of the three (3) panel members shall be binding and final and not subject to appeal except for grounds of fraud or gross misconduct by the arbitrators. The award will be issued within 30 days of the close of the hearings.  Each party shall bear the expenses of its designated arbitrator and shall jointly share with the other the expense of the umpire and of the arbitration proceeding.

The arbitration proceeding shall take place in or in the vicinity of Boston, Massachusetts.  The procedural rules applicable to this arbitration, shall, except as provided otherwise herein, be in accordance with the Commercial Rules of the American Arbitration Association.

**IN WITNESS WHEREOF**, the **Company** has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned in the Declarations by one of its duly authorized representatives.

(see following page)

Secretary                    President

## ADDENDUM TO THE DECLARATIONS

By signing below, the President and the Secretary of the Insurer agree on behalf of the Insurer to all the terms of this Policy.

Robert Schimek
PRESIDENT

Denis M. Butkovic
SECRETARY

Granite State Insurance Company
The Insurance Company of the State of Pennsylvania
Illinois National Insurance Co.
New Hampshire Insurance Company
American Home Assurance Company
National Union Fire Insurance Company of Pittsburgh, Pa.
Commerce and Industry Insurance Company

This Policy shall not be valid unless signed at the time of issuance by an authorized representative of the Insurer, either below or on the Declarations page of the Policy.

AUTHORIZED REPRESENTATIVE

COUNTERSIGNATURE DATE

COUNTERSIGNED AT

**<u>FLORIDA NOTICE OF LOSS CONTROL SERVICES</u>**

Pursuant to Florida Administrative Code ("FAC") 690-166.040, we would like to inform you of the risk management programs that we have developed and that are available to you.

For your consideration, we offer the services of Global Loss Prevention, Inc., a Chartis company.  With more than 25 years experience and expertise in assisting with the prevention and mitigation of losses, Global Loss Prevention, Inc. can help address a range of problems related to loss control in various lines of business. Certain risk management programs are available to you, free of charge, as part of your commercial insurance coverage; contact your insurance broker for more details on these plans. Other, more substantive risk management programs can be purchased which include, but are not limited to the following services: surveys/analysis for identifying exposures related to your specific operations, safety management training and counseling for your staff, adoption of relevant testing strategies, and evaluations of current loss control practices.

Upon your written request, we could provide you with specific guidelines for risk management programs as established by FAC 690-166.040. Such guidelines would provide instructions and offer basic criteria to assist you in creating your own risk management plan. Should you request such guidelines and, subsequently, wish to further explore the purchase of a risk management plan, developed by Global Loss Prevention, Inc., which is specific to your company's needs, we would be willing to discuss with you both the availability of such a plan, and if available, its specific content and cost.

Again, we welcome all inquiries regarding the services of Global Loss Prevention, Inc.

90231 (11/03)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement, effective 3/18/2019 12:01 A.M. forms a part of

Policy No. 064992968-01 issued to OutsideIN Architecture, LLC

By: New Hampshire Insurance Company

**ECONOMIC SANCTIONS ENDORSEMENT**

*This endorsement modifies insurance provided under the following:*

Coverage shall only be provided and payment of loss under this policy shall only be made in full compliance with enforceable United Nations economic and trade sanctions and the trade and economic sanction laws or regulations of the European Union and the United States of America, including, but not limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

_____
**Authorized Representative**

## POLICYHOLDER  NOTICE

Thank  you  for purchasing insurance from  a member company of American International Group, Inc. (AIG).   The AIG member companies generally pay compensation to brokers  and independent agents,  and may have paid compensation in connection with your  policy.   You can review  and obtain information about  the nature  and range  of compensation paid by AIG member companies to brokers  and independent agents  in the United  States  by visiting  our website  at  www.aig.com/producercompensation  or by calling  1-800-706-3102.

91222  (4/13)

**ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 3/18/2019 12:01 A.M. forms a part of

Policy No. 064992968-01 issued to OutsideIN Architecture, LLC

By: New Hampshire Insurance Company

## REIMBURSEMENT FOR REGULATORY ACTIONS
## UNDER THE ADA, FHA, AND OSHA

This endorsement modifies insurance provided under the following:

ARCHITECTS AND ENGINEERS PROFESSIONAL LIABILITY POLICY

1. Paragraph **H., REIMBURSEMENT FOR REGULATORY ACTIONS UNDER THE ADA, FHA, AND OSHA** is added to Section **IV. LIMITS OF LIABILITY AND SELF INSURED RETENTION** as follows:

   **H.     REIMBURSEMENT FOR REGULATORY ACTIONS UNDER THE ADA, FHA, AND OSHA**

   The **Company** will reimburse the **Named Insured**, upon written request, for **Defense Expenses** up to $25,000 in responding to regulatory or administrative actions brought directly against the **Insured** by a government agency under the Americans with Disabilities Act (the "ADA"), the Fair Housing Act (the "FHA") or the Occupational Safety and Health Act (the "OSHA"), all as may be amended from time to time, provided that, the regulatory or administrative actions:

   1. Are first commenced during the **Policy Period**;

   2. Arise out of the performance of **Professional Services** by the **Insured**; and

   3. Are reported to the **Company** prior to any **Defense Expenses** being incurred.

   Such reimbursements made under this endorsement are not subject to the deductible and are in addition to the Limits of Liability shown on the Declarations.  The **Company** will not be responsible for any fines or penalties.

2. As used herein, **Defense Expenses** means the costs incurred in connection with the investigation and/or defense of any regulatory or administrative action including, but not limited to, legal fees and other defense expenses.

All other terms and conditions of the policy remain the same.

_____
Authorized Representative

97058 (3/08)

**ENDORSEMENT**

This endorsement, effective 3/18/2019 12:01 A.M. forms a part of

Policy No. 064992968-01 issued to OutsideIN Architecture, LLC

By: New Hampshire Insurance Company

**FIRST DOLLAR DEFENSE**

**AMENDMENT TO IV.  LIMITS OF LIABILITY AND DEDUCTIBLE**

In consideration of the premium paid, it is hereby understood and agreed that Section IV. Limits of Liability and Deductible, Item E. Deductible - Each **Claim** is deleted and replaced with the following:

E.      DEDUCTIBLE - EACH **CLAIM**

The deductible stated in the Declarations applies to each **Claim** and shall be paid by the **Insured**.  The deductible shall be applied to the payment of **Damages**.

The **Company** may advance payment of part or all of the deductible amount, and upon such payment made, the **Insured** must promptly reimburse the **Company** for deductible amounts advanced by the **Company**.

All other terms and conditions remain unchanged.

_____
Authorized Representative

90492 (2/13)

**ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 3/18/2019 12:01 A.M. forms a part of

Policy No. 064992968-01 issued to OutsideIN Architecture, LLC

By: New Hampshire Insurance Company

**CRISIS RESPONSE COVERAGE EXTENSION ENDORSEMENT**

This endorsement modifies insurance provided by the policy:

- **CRISIS RESPONSE NOTIFICATION TELEPHONE NUMBER:**  877-244-3100

**THIS ENDORSEMENT EXTENDS COVERAGE TO PROVIDE FOR "CRISIS RESPONSE COSTS" AND "CRISIS MANAGEMENT LOSS" IN THE EVENT OF A "CRISIS EVENT" AS DEFINED HEREIN.  THE LIMITS OF INSURANCE PROVIDED FOR SUCH COVERAGE ARE IN ADDITION TO THE LIMITS OF INSURANCE PROVIDED IN THE DECLARATIONS OF THIS POLICY.   IF THIS ENDORSEMENT IS ATTACHED TO A CLAIMS-MADE POLICY, THIS ENDORSEMENT NEVERTHELESS REQUIRES THAT ALL OF THE CRITERIA SET FORTH IN SECTION I.,  SUBPARAGRAPHS B.1.  THROUGH B.4., INCLUSIVE, BE MET.**

**SCHEDULE**

| Crisis Response Coverage Extension | Limits of Insurance | |
|---|---|---|
| Crisis Response Aggregate Limit | **$ 100,000** | |
| Each Crisis Response Costs Limit | **$  50,000** | Each "Crisis Event" |
| Each Crisis Management Loss Limit | **$  50,000** | Each "Crisis Event" |

Notwithstanding any provisions to the contrary in the policy to which this endorsement is attached, subject to the Limits of Insurance as shown in the above Schedule and in accordance with the terms and conditions set forth in this endorsement, the policy is extended to provide "crisis response costs"  and "crisis  management loss" resulting from a "crisis  event".

**SECTION I. – CRISIS RESPONSE COVERAGE EXTENSION**

**A.** We will  reimburse you or pay on your behalf reasonable and necessary "crisis  response costs" and/or "crisis management loss" arising out of: (1) "bodily injury" or "property damage" for which coverage is provided under this policy,  or (2) "imminent injury", but only with respect to a "crisis event" to which this insurance applies.  The amount we will  reimburse you or pay on your  behalf for such "crisis response costs"  and/or "crisis management loss" is limited as described in SECTION III  –  CRISIS RESPONSE LIMITS OF  INSURANCE.   No self-insured retention or deductible shall apply to this coverage extension endorsement.

**B.** We will reimburse you or pay on your behalf "crisis  response costs"  and/or "crisis  management loss" arising out of a "crisis  event" only if:

  **1.** The "bodily  injury" or "property damage" or "imminent injury" takes place in the "coverage territory"; and

  **2.** The "bodily  injury" or "property damage" or "imminent injury" commences  to occur during the policy period, and

**3.** Such "crisis response costs" and/or "crisis management loss" did not arise out of any fact, circumstance, pre-existing condition, situation, "bodily injury", "property damage", or "imminent injury" that you, prior to the inception date of this policy, knew, or reasonably should have known, could lead to, cause or result in such "crisis response costs" and/or "crisis management loss", and

**4.** Such "crisis response costs" and/or "crisis management loss" are incurred within thirty (30) days after the commencement date of the "crisis event". The end of the policy period will not cut short this thirty (30) day period.

## SECTION II. – EXCLUSIONS

The exclusions of the policy apply to this endorsement, including, but not limited to, any exclusion which applies to workers compensation or any similar law. However, the following additional exclusions applicable to this endorsement supersede any similar exclusions in the policy.

This coverage extension does not apply to:

**Newly acquired or merged entities**

"Crisis response costs" or "crisis management loss" resulting from "bodily injury" or "property damage" or "imminent injury" that occurred prior to the date you acquired or merged with any other entity.

**Infectious Diseases or Illnesses**

"Crisis response costs" or "crisis management loss" arising out of infectious diseases or illnesses caused by any bacterium, virus, or fungus. However, this exclusion does not include, food-borne illnesses or defective vaccines.

## SECTION III. – CRISIS RESPONSE LIMITS OF INSURANCE

**A.** The Schedule above and the rules below establish the most we will reimburse or pay on your behalf for "crisis response costs" and "crisis management loss" regardless of the number of Insureds, "crisis events", or "affected persons".

**B.** The Crisis Response Aggregate Limit is the most we will reimburse or pay on your behalf for the sum of all "crisis response costs" and "crisis management loss" under this endorsement.

**C.** Subject to Paragraph **B.** above, the Each Crisis Response Costs Limit is the most we will reimburse or pay on your behalf for all "crisis response costs" arising out of any one "crisis event".

**D.** Subject to Paragraph **B.** above, the Crisis Management Loss Limit is the most we will reimburse or pay on your behalf for all "crisis management loss" arising out of any one "crisis event".

All "crisis events" or all related or interrelated "crisis events" will be deemed to be one "crisis event".

## SECTION IV. – DEFINITIONS

The definitions of the policy apply to this endorsement. However, the following additional definitions applicable to this endorsement supersede any similar definitions in the policy.

You and your refer to the Named Insured and we,  us and our refer to the Company providing  this insurance.   Other words and phrases that appear in quotation marks have special meaning as follows:

**A.** "Affected persons"  means those individuals who suffer direct "bodily  injury" or "property damage", or directly experience "imminent injury", including such individual's immediate family members.

**B.** "Bodily  injury" means bodily injury,  sickness, or disease sustained by a person, including  death resulting from any of these at any time.

**C.** "Coverage  territory" means the United States of America, including its territories and possessions, Puerto Rico and Canada.

If coverage for "crisis  response costs" or "crisis  management loss" under this endorsement is in violation  of any United States of America's economic or trade sanction, including,  but not limited to, sanctions  administered  and enforced  by the U.S. Treasury Department's  Office of Foreign Assets Control ("OFAC") then coverage for such "crisis  response costs"  or "crisis management loss" shall be null and void.

**D.** "Crisis  event" means a man-made emergency situation, including,  but not limited to, arson, a bombing,  the taking of hostages, a mass shooting, terrorism (if covered under the policy only), intentional  contamination of food, drink,  or pharmaceuticals that results in covered  "bodily injury", "property damage" or "imminent injury" to multiple persons and significant adverse regional or national news media coverage.

**E.** "Crisis  management firm" means a public relations firm or crisis management firm, assigned or approved  by us in writing that is hired by you to perform  services of the  type covered under "crisis management loss" in connection with a "crisis  event".

**F.** "Crisis  management  loss" means reasonable and necessary fees  and expenses incurred  by a crisis  management firm" or your employees in providing  public relations and media management  services for the purpose of maintaining and restoring  public confidence in you. These expenses may include printing, advertising, or mailing of materials to manage reputational risk.  This does not include the salaries of your employees.

**G.** "Crisis response costs" means:

**1.** reasonable  and necessary "emergency  transport expenses", "emergency psychology expenses", funeral expenses, travel expenses,  and temporary  living expenses incurred  by you to provide relief and/or support to "affected persons",  and

**2.** expenses incurred by you to secure the scene of a "crisis event".

"Crisis response costs"  shall not include "defense costs"  or "crisis  management loss".

**H.** "Defense  costs" means legal fees  and expenses incurred  by you for legal advice  or services sought in anticipation of, or  upon actual receipt of, a claim  alleging  liability  and  seeking damages for "bodily  injury", "property damage" or "imminent injury".

**I.** "Emergency  transport  expenses" means reasonable  and necessary  emergency  transport expenses, occurring  within 24-hours  after a "crisis  event", to transport  an "affected person" sustaining "bodily  injury" in a "crisis  event" to a medical treatment facility.

**J.** "Emergency  psychology  expenses" means reasonable and necessary expenses for psychology or counseling  services  provided  to "affected persons"  and incurred  within the  first fourteen

(14) days of a "crisis event".  This does not include the costs or expenses of any medications or hospitalizations.  Such psychology  or counseling services must be approved by the "crisis management firm".

**K.**  "Imminent Injury" means the actual and immediate threat of "bodily  injury" or "property damage".

**L.**  "Property damage" means:

    **1.**  Physical injury  to tangible  property, including  all resulting loss of use of that property.   All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **2.**  Loss of use of tangible property that is not physically  injured.   All such loss of use shall be deemed to occur at the time of the "crisis  event" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic  data  means information,  facts or programs  stored  as or on, created  or used on,  or transmitted  to or from computer  software, including  systems  and applications  software, hard  or  floppy disks,  CD-ROMS, tapes,  drives,  cells,  data  processing devices or any other media which  are used with electronically controlled equipment.

**SECTION V. – CONDITIONS**

The general and/or  common  conditions  of the  policy  apply  to this endorsement.   However,  the following conditions  applicable  to this endorsement  supersede any similar conditions in the  policy to the contrary.

**A.**  Insured's Duties in the Event of a "Crisis Event"

    **1.**  You must  see it that we  are notified by telephone  within twenty-four (24)  hours of a "crisis event"  which  may result  in "crisis  response  costs"  or "crisis  management  loss". The call must  be made to 877-244-3100.  If necessary, we will  assist you in contacting an approved "crisis  management firm" listed in the attached Schedule of approved "crisis management  firms", unless we agree to accept a "crisis  management firm" that you have selected.

    **2.**  Thereafter you must  provide written  notice, as soon  as practicable.    To the extent possible, this written notice should include:

        **a.**  How,  when and where the "crisis  event" took place;

        **b.**  The names and addresses of any "affected parties" and witnesses; and

        **c.**  The nature and location of any injury or damage arising out of the "crisis  event".

    **3.**  If reimbursement  is sought directly by you, you must submit a claim for reimbursement of "crisis response  costs"  and "crisis  management  loss"  within ninety  (90)  days after incurring such  "crisis response  costs"  or "crisis  management  loss".   Such claim(s)  must include invoices  and/or  receipts  supporting  such  "crisis  response  costs"  or  "crisis management loss" for each and every expense in excess of fifty (50) dollars.

4.   Written notice  and claim  submission  as required  in Paragraphs 1.  and 2.  of this section, respectively, shall be mailed or delivered to:

Attn: Crisis Response Dept
175  Water Street, 21St Floor
New York, NY 10038

**B.  Anti-Stacking Provision**

If "crisis  response costs"  and/or "crisis  management loss"  provided by this coverage extension endorsement  are  also  provided  by  any  other  insurance  issued  to you  by  us  or  any  of  our affiliated companies  (whether  or  not such  costs  or  loss  are  referred  to using  these  same terms), the  maximum  limit  of  insurance  under  all  insurance  available  shall  not exceed  the  highest applicable  limit of insurance  available  under  any  one  policy  or  endorsement.    This  condition does  not  apply  to any  other  insurance  issued  by  us  or  any  of  our  affiliated  companies  specifically intended to apply as excess insurance over this coverage extension endorsement.

All other terms and conditions of the policy remain the same.

_____
**Authorized Representative**

**ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 3/18/2019 12:01 A.M. forms a part of

Policy No. 064992968-01 issued to OutsideIN Architecture, LLC

By: New Hampshire Insurance Company

## TECHNOLOGY SERVICES COVERAGE EXTENSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

ARCHITECTS AND ENGINEERS PROFESSIONAL LIABILITY POLICY

1.  Paragraph **P.**, **Professional Services** of Section **III. DEFINITIONS** is deleted in  its  entirety  and replaced by the following:

    **P.**  **Professional Services** means:

    1.  Those  services  that  the  **Insured**  performs  for  others  in  their  capacity  as  an architect,  engineer,  land  surveyor,  landscape  architect,  **Agency  Construction Manager**, scientist, technical consultant, including such services when performed on  projects  seeking  LEED  certification  and/or  utilizing  Building  Information Modeling (BIM), or

    2.  **Technology Services**,

    or as specifically defined by endorsement to this policy.

    **Professional  Services**  shall  not  include  actual  facility  operation  and  maintenance operations.

2.  The following definition is added to Section **III. DEFINITIONS**:

    **Technology  Services**  means  computer  or  electronic  information  technology  services  that  the **Insured**  performs  for  others  in  their  capacity  as  a  technology  professional  including,  but  not limited  to,  consulting,  development,  training,  outsourcing,  systems  analysis,  design,  integration, management,  web  hosting,  application  hosting,  programming,  data  processing  and  the  providing of  such  services  on  a  project-specific  basis  for  others  in  seeking  LEED  certification  and/or  utilizing Building Information Modeling (BIM).

3.  The  exclusions  of  the  policy  apply  to  this  endorsement.   However,  the  following  exclusions  are added  to  the  policy,  supersede  any  similar  exclusions  of  the  policy  to  the  contrary,  and  apply  to coverage provide by this endorsement.

    This  policy  does  not  provide  coverage  and  the  **Company**  will  not  pay  **Claim  Expenses**  or **Damages** for any **Claim** based upon or directly or indirectly arising out of or resulting from:

    **A.**  Any infringement of any copyright, trademark, trade dress, trade name, patent, service mark  or  other  intellectual  property  or  any  misappropriation  of  a  trade  secret  or  proprietary information arising out of **Technology Services**;

**B.** Any actual or alleged inaccurate, inadequate or incomplete description of the price of goods, products or services or as a result of the **Insured's** cost or guarantees, representations, contract price or estimates of probable costs or cost estimates being exceeded;

**C.** Any breach of express warranty, guarantee or service level agreement, or any delay in delivery, installation or performance or non-acceptance of products or services unless liability would have attached to the **Insured** in the absence of any breach of express warranty, guarantee or service level agreement, or any delay in delivery, installation or performance or non-acceptance of products or services and such liability arises out of a **Breach of Professional Duty** by the **Insured** in the performance of **Technology Services**;

**D.** Any unauthorized use of or unauthorized access to the **Insured's** computer network, Building Information Model (BIM), Web Hosting or failure of the **Insured's** computer network to prevent transmission of malicious code or a denial of service attack; or

**E.** The design or manufacture of any products developed by any **Insured** for multiple sale or mass distribution.

However, except for computer system security software of any type or description, this exclusion does not apply to computer software programs, databases, applications, websites, or computer systems created or modified specifically for a client for whom the **Insured** is providing **Technology Services**.

All other terms and conditions of the policy remain the same.

_____
Authorized Representative

**ENDORSEMENT**

This endorsement, effective 3/18/2019 12:01 A.M. forms a part of

Policy No. 064992968-01 issued to OutsideIN Architecture, LLC

By: New Hampshire Insurance Company

## FLORIDA CANCELLATION/NONRENEWAL ENDORSEMENT

Wherever used in this endorsement: 1) "we", "us", "our", and "Insurer" mean the insurance company which issued this policy, and 2) "you", "your", "named Insured", "First Named Insured", and "Insured" mean the Named Corporation, Named Organization, Named Sponsor, Named Insured, or Insured stated in the declarations page; and 3) "Other Insured(s)" means all other persons or entities afforded coverage under the policy.

It is hereby agreed and understood that the cancellation provision of this policy is to be deleted in its entirety and to be replaced with the following:

A.      The Insured shown in the Declarations may cancel this policy by mailing or delivering to the Insurer advance written notice of cancellation.

B.1.    Cancellation for Policies in Effect Ninety (90) Days or Less

        If this policy has been in effect ninety (90) days or less the Insurer may cancel this policy by mailing or delivering to the Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

        (a)     Ten (10) days before the effective date of cancellation if the Insurer cancels for nonpayment of premium; or

        (b)     Twenty (20) days before the effective date of cancellation if the Insurer cancels for any other reason, except the Insurer may cancel immediately if there has been:

                1.      A material misstatement or misrepresentation; or
                2.      A failure to comply with underwriting requirements established by the Insurer.

B.2.    Cancellation for Policies in Effect More Than Ninety (90) Days

        If this policy has been in effect for more than ninety (90) days the Insurer may cancel this policy only for one or more of the following reasons:

        (a)     Nonpayment of premium;

        (b)     The policy was obtained by a material misstatement;

        (c)     There has been a failure to comply with underwriting requirements established by us within ninety (90) days of the date of effectuation of coverage;

        (d)     There has been a substantial change in the risk covered by the policy;

        (e)     The cancellation is for all insureds under such policies for a given class of insureds.

        If the Insurer cancels this policy for any of these reasons, the Insurer will mail or deliver to

the First Named Insured written notice of cancellation, accompanied by the reasons for the cancellation at least:

1.      Ten (10) days before the effective date of cancellation if cancellation is for the reason stated in B2(a) above; or

2.      Forty-Five (45) days before the effective date of cancellation if cancellation is for the reasons stated in B2(b), (c), (d) or (e) above.

The following is added:

C.1.    Non-Renewal

(a)     If the Insurer decides not to renew this policy the Insurer will mail or deliver to the Insured written notice of nonrenewal, accompanied by the reason for nonrenewal, at least forty-five (45) days prior to the expiration of this policy.

(b)     Any notice of nonrenewal will be mailed or delivered to the Insured's last mailing address known to the Insurer.  If notice is mailed, proof of mailing will be sufficient proof of notice.

C.2.    Renewal

The Insurer shall give the named insured at least forty-five (45) days advance written notice of the renewal premium.

All other terms, conditions and exclusions of this policy remain unchanged.

_____

Authorized Representative

**ENDORSEMENT**

This endorsement, effective 3/18/2019 12:01 A.M. forms a part of

Policy No. 064992968-01 issued to OutsideIN Architecture, LLC

By: New Hampshire Insurance Company


**ARCHITECTS AND ENGINEERS PROFESSIONAL LIABILITY PROGRAM**

**FLORIDA AMENDATORY ENDORSEMENT**

The policy is hereby amended as follows:

Paragraph G. Damages of Section III. DEFINITIONS is deleted in its entirety and replaced by the following:

> **Damages** means any amount which an **Insured** is legally obligated to pay for any **Claim** to which this insurance applies and shall include judgments and settlements and interest on judgments. **Damages** shall not include matters that may be deemed uninsurable under the law pursuant to which this policy shall be construed. **Damages** also shall not include **Liquidated Damages** except for liability the **Insured** would have had in the absence of such **Liquidated Damages.**

Paragraph Q. ARBITRATION of Section V. CONDITIONS is deleted in its entirety and replaced by the following:

> In the event of a disagreement as to the interpretation of this policy, if both parties agree to submit the dispute to binding arbitration, then, such dispute shall be submitted to binding arbitration before a panel of three (3) arbitrators, consisting of two (2) party-nominated (non-impartial) arbitrators and a third (impartial) arbitrator (hereinafter "umpire") as the sole and exclusive remedy.

> The party desiring arbitration of a dispute shall notify in writing the other party, said notice including the name, address and occupation of the arbitrator nominated by the demanding party. The other party shall, within 30 days following receipt of the demand, notify in writing the demanding party of the name, address and occupation of the arbitrator nominated by it. The two (2) arbitrators so selected shall, within 30 days of the appointment of the second arbitrator, select an umpire. If the arbitrators are unable to agree upon an umpire, each arbitrator shall submit to the other arbitrator a list of three (3) proposed individuals, from which list such arbitrator shall choose one (1) individual. The names of the two (2) individuals so chosen shall be subject to a draw, whereby the individual drawn shall serve as umpire.

> The parties shall submit their cases to the panel by written and oral evidence at a hearing. Said hearings shall be held within thirty (30) days of the selection of the umpire unless otherwise agreed by a majority of the panel. The panel shall be relieved of all judicial formality, shall not be obligated to adhere to the strict rules of law or of evidence, shall seek to enforce the intent of the parties hereto and may refer to, but are not limited to, relevant legal principles. The decision of at least two (2) of the three (3) panel members shall be binding and final and not subject to appeal except for grounds of fraud or gross misconduct by the arbitrators. The award will be issued within 30 days of the close of the hearings. Each party shall bear the expenses of its designated arbitrator and shall jointly share with the other the expense of the umpire and of the arbitration proceeding.

The arbitration proceeding shall take place in or in the vicinity of the Named Insured's address noted in Item 1 of the Declarations Page.   The procedural rules applicable to this arbitration, shall,  except as provided otherwise herein, be in accordance with the Commercial Rules of the American Arbitration Association.

All other terms, conditions and exclusions of this policy remain unchanged.

Authorized Representative