IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RLI INSURANCE COMPANY,

     Plaintiff,

v.                              Case No.: 8:20-cv-02395-CEH-AEP

OUTSIDEIN ARCHITECTURE, LLC

     Defendant.

_____/

**OIA'S RESPONSE IN OPPOSITION TO RLI'S**
**MOTION FOR FINAL SUMMARY JUDGMENT**

     Defendant Outsidein Architecture, LLC ("OIA") responds in opposition to Plaintiff RLI Insurance Company's ("RLI") Motion for Final Summary Judgment ("RLI's MSJ") (Doc. 60), filed April 8, 2022, as follows:

**I.  Introduction**

     RLI's case rests on five flawed premises. First, that OIA's subconsultant complained to OIA before the Incident that there was no demolition permit in place. This premise is misleading because OIA was not responsible for permitting, was not the proponent for the demolition work, and was not responsible for safety. This premise is wrong because there was a permit in place when IG complained 3 months before the Incident, and at the time of the Incident. This premise is irrelevant because permits do not apply to issues concerning ways and means or safety.

     Second, that OIA received a Litigation Hold letter about the Incident prior to

applying to RLI for the Policy. This premise is contradicted by the evidence. While RLI presents evidence that the Litigation Hold *may* have been sent, RLI has no evidence that it *was received* by OIA, and there is evidence that it was *not* received.

Third, that OIA had concerns about cracks in the roof before the Incident. This premise is misleading or irrelevant because the Incident concerns the collapse of the 13th floor—not the roof. Further, OIA only had concerns about the roof integrity because OIA was considering the addition of a penthouse to the roof and needed to determine if the existing roof structure could bear that additional structure.

Fourth, that OIA evaluated the integrity of the 13th floor concrete after the Incident.  This premise is misleading, and often mischaracterized by RLI, because OIA did not investigate the cause of the Incident. Only Bird and PROSHA investigated the cause of the Incident. OIA's evaluation of the 13th floor concrete after the Incident, based on investigations by Tower's consultant Morla (hired by Tower to evaluate the stability of the existing structure because Morla was on the design team for the original construction of the building), was for a different purpose. OIA was only focused on designing repairs and renovation.

And last, that Alcides Reyes-Gilestra, the attorney for Plaintiffs in the Underlying Action, has the opinion that OIA's position is "unfathomable.  Mr. Reyes-Gilestra's opinion is inadmissible.  Even if it was admissible, the credibility of his testimony is worthless due to biased self-interest and conflict of interest. He

is either upset that OIA was involved in getting him disqualified from the Underlying Action (for representing parties with directly adverse interests), or he is upset that OIA terminated his client and friend IG/Mario Corsino, or he sees an opportunity to benefit in the Underlying Action (he is appealing his disqualification).

RLI is not entitled to summary judgment because its case relies on the foregoing flawed premises. Moreover, RLI does not claim that OIA had a duty, contractual or otherwise, regarding the ways and means, permitting, safety, or oversight of the demolition work being performed when the Incident occurred. Likewise, RLI does not claim that OIA was responsible for the design, construction, or maintenance of the existing concrete floor that collapsed, causing the Incident. These are the duties that relate to liability for the Incident, which would lead an insured to foresee a claim may be made against the insured.  Stated differently, if an insured is not responsible for a duty that could possibly lead to liability, then the insured would likely not foresee a claim may arise.

RLI certainly has not met its burden of presenting direct, undisputed evidence to avoid coverage under the Policy's strictly construed exclusionary clauses.

## II. RLI's Statement of Undisputed Material Facts is riddled with mischaracterizations of evidence and testimony, assertions contradicted in the record or missing crucial context and irrelevant speculation.

RLI's MSJ must be denied, in large part because purportedly-undisputed key facts upon which it relies are neither facts, undisputed, nor material. On summary

judgment, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Likewise, a dispute about a material fact is a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "For factual issues to be considered genuine, they must have a real basis in the record ... mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citations omitted).

The following list identifies some of the most significant issues rendering RLI's Statement of Undisputed Material Facts unreliable, by paragraph number:[1]

¶ 3. RLI takes Mr. Azdell's statement regarding the roof cantilever out of context because Mr. Azdell's statement responds to issues raised in a February 2019 conversation initiated by Project structural engineer Edgardo Hernandez Alvarado ("EHA"), including Project manager Jim Sebastian (both employed by developer Tower), regarding roof testing undertaken by Tower. *See* RLI Ex. 3Doc. 62, SOF ¶ 46.. No one has ever suggested that issues with roof had anything to do with the collapse of the 13th floor during the Incident.

---

[1] Throughout this response, OIA uses the same terms defined in its motion for summary judgment (Doc. 62) and cites the attached exhibits as "OIA Ex. X." Exhibits to RLI's motion for summary judgment are cited as "RLI Ex. X."

¶¶ 5-6. Mr. Corsino's (IG's principal) statements regarding the lack of permits are incorrect. *See* RLI Ex. 4 (Mr. Azdell advising Mr. Corsino that EHA is the professional of record for the demolition work and compliance is being done by EHA's firm), 6, Email #2. Permits secured by EHA were in effect for all demolition work. *See* OIA Exs. E, L. The specific permit for the demolition underway was issued on March 7, 2019, three months before the Incident. *See* OIA Ex. E (EHA 6/5/19 Permit Status Report) at 2.

¶ 7. The Fire Incident Report dated April 11, 2019, reports a fire that occurred on the 7th and 8th floors, not the 13th floor where the Incident occurred and is irrelevant. In the Underlying Action Complaint, ¶ 20 attributes the cause of the fire to Bird. *See* OIA Ex. S, ¶ 20.

¶ 8. The default situation under the prime agreement with Tower which OIA (Mr. Azdell) is urging IG's assistance to cure was the result of IG's failure to timely complete construction documents (i.e., construction drawings) and was the primary reason OIA terminated IG's subcontract. *See* RLI Ex. 8; OIA Exs. L, M, N, O. Tower never declared OIA in default.

¶ 9. The June 10, 2019 Payment Demand was IG's third demand for payment under its terminated subcontract. *See* OIA Exs. M, N, O.  RLI's mischaracterization of the nature of the IG Payment Demand is discussed below regarding ¶¶ 13, 14, 52.

¶10 n.1. RLI speculates, without citation, that if OIA had reported Mr.

Garcia's death to its previous professional liability insurer AIG, coverage would have been accepted. Speculation about what AIG would have done is irrelevant.

¶¶ 13-14. RLI omits significant context to AIG's processing of OIA's notification that it had received the IG Payment Demand. AIG advised OIA that IG's demand for payment for breach of contract was not a claim under the professional liability policy and requested that OIA withdraw the claim. *See* OIA's MSJ at 10-12, ¶¶ 33-39 and cited exhibits; 22-23.

¶ 17. Mr. Azdell did not indicate to Mr. Morla that OIA would independently evaluate the cause of the Incident. Their June 14, 2019 exchange concerns developer Tower's investigation independent from the investigation being undertaken by the general contractor Bird, the entity responsible for supervising and safety compliance of the demolition under way. *See* RLI Ex. 18; OIA's MSJ at 14, ¶47.

¶¶ 18-19. Neither the June 21, 2019, Litigation Notice (or Legal Hold Letter) (RLI Ex.19) nor Mr. Reyes-Gilestra's "modus operandi" establishes that OIA or its registered agent Raul Santiago were actually served. *See* OIA's MSJ at 17, ¶¶ 60-62; 20-21; Section II, discussion of ¶¶ 21-23, 24-25, 51, 52, 60 (for further discussion of the Legal Hold Letter and RLI's use of Mr. Reyes-Gilestra's deposition testimony). In fact, Mr. Reyes-Gilestra has not produced documents establishing service was made to either OIA or Mr. Santiago in person or by certified mail despite RLI's subpoena requesting such documents.

¶ 20. No invoicing identifying expenses incurred in serving the Legal Hold Letter have been produced. Mr. Reyes-Gilestra's letter to the plaintiffs in the Underlying Action (RLI Ex. 21) requesting reimbursement of costs does not identify specific costs for which it was seeking reimbursement but references a list of costs to be provided separately that was not produced.

¶ 21. Mr. Reyes-Gilestra's testimony that Raul Santiago told Mario Corsino who then told Mr. Reyes-Gilestra that Mr. Santiago received the Legal Hold Letter and forwarded it to Mr. Azdell (OIA) is inadmissible multiple hearsay calling to mind the "telephone game."

¶ 23. Mr. Reyes-Gilestra's opinion that OIA was responsible for the Incident as "chief architect" and the extent to which his opinion relies on Mr. Corsino's statements to him about OIA's role and actions on the Project is irrelevant and inadmissible hearsay. *See Macuba v. Deboer*, 193 F.3d 1316 (11th Cir. 1999) (inadmissible hearsay cannot be considered on a motion for summary judgment).

¶¶ 24-26. The complete June 28, 2019 exchange between OIA and its counsel Mr. Criado—subject line "IG"—establishes that Mr. Criado determined that the mysterious certified letter from Mr. Reyes-Gilestra's other firm was actually the IG Payment Demand and told Mr. Azdell not to pick it up:

| | |
|---|---|
| **From:** | Sergio Criado |
| **To:** | Darren Azdell |
| **Cc:** | Roberto Abesada Agüet |
| **Subject:** | IG |
| **Date:** | Friday, June 28, 2019 5:49:49 PM |
| **Attachments:** | image001.jpg |

Hi Darren. I just confirmed that it is the same letter that you already have. No need to pick it up. Have a great weekend!

**Sergio E. Criado**
**Correa Acevedo & Abesada Law Offices, PSC**
E-mail: scriado@calopsc.com
Office: (787) 273-8300 | Fax: (787) 273-8371 | Fax: (787) 273-8379

*See* RLI Ex. 22. Mr. Criado's communication with Mr. Reyes-Gilestra that same date concerns settlement and possible mediation regarding the IG Payment Demand and Mr. Reyes-Gilestra.

| | |
|---|---|
| **From:** | Areyes@arglaw.net |
| **Sent:** | Friday, June 28, 2019 5:47 PM |
| **To:** | Sergio Criado |
| **Cc:** | Carlos Matos |
| **Subject:** | Re: IG LLC & OIA LLC |

Saludos Sergio.

It's the same letter...

I'm the principal of BTA and Matos is affiliated with me in BTA and in ARG Law.

This matter is under ARG Law.

Sent from my iPhone

On Jun 28, 2019, at 5:32 PM, Sergio Criado <scriado@calopsc.com> wrote:

> Dear Messrs. Reyes-Gilestra and Matos,
> Good afternoon. As you may recall, last June 17, 2019 I sent Mr. Reyes-Gilestra a letter regarding the referenced claim. On June 25, 2019, I received your phone call in which we discussed a possible alternative to compulsory meditation. Nevertheless, I was just advised that an entity called "Busca tu Abogado, LLC"— which website's seems to suggest it belongs to or is affiliated to Mr. Reyes Gilestra (i.e. https://buscatuabogado.com/#about)— sent a certified letter directly to my client Outsidein Architecture, LLC (from hereinafter "OIA"). Please be mindful that OIA is duly represented by legal counsel, so any and all future communications related to this issue must be solely sent directly to me.
> Sincerely,
> Sergio Criado

*See* OIA Ex. FF. The June 17, 2019 letter regarding "the referenced claim" to which

Mr. Criado refers is the IG Payment Demand. RLI Ex. 13 ("Re: Intergroup, LLC's June 10th, 2019 Letter"; OIA "has retained our Law Firm to respond to *Intergroup, LLC's* June 17th, 2017 [sic] letter." (emphasis added). These exchanges have nothing to do with the Underlying Action.

¶ 27. In the July 12, 2019 email, Mr. Morla, who worked for both Tower (demolition phase) and OIA (construction phase), was sharing his opinion regarding the results of testing conducted on behalf of Tower and the effect it would have on the construction drawings OIA was preparing for the repairs and renovation yet to come. *See* RLI Ex. 23.

¶ 28. The email cited by RLI does not establish why AIG declined to renew OIA's professional liability policy. Mr. Azdell states he *suspected* it was because he had reported the IG Payment Demand. *See* RLI Ex. 21. In any event, the non-renewal is not a material fact in determining coverage issues under the RLI Policy.

¶ 30. Application question 2.I.3, one of the three questions that form the basis of RLI's rescission claim, contains a <u>blank space</u> before the word "act", which RLI has omitted in ¶ 30. *Compare* ¶ 30 *with* RLI Ex. 1, Question 2.I.3. at 8. OIA contends that the blank space, which, along with other portions of the Application, makes the Application confusing and ambiguous such that RLI cannot reasonably rely on the response. *See* OIA Answer, Affirmative Defenses and Counterclaim, Doc. 12, at 8-9. Omission of the blank space is significant as the blank was the subject of

testimony by RLI.[2] *See* OIA Ex. D, RLI Dep. at 99:1-23.

¶ 35. Whether or not Ms. Johnson understood the Application questions is not at issue here, so her testimony is irrelevant. And her testimony is unnecessary to confirm that the Policy or Application says what it says.

¶¶ 37-40. OIA did not inform Ms. Johnson about the Legal Hold Notice at the time it was sent or when applying for insurance in 2020 because OIA had not received it; the only copy it ever received was the one filed by plaintiffs' counsel in the Underlying Action on January 26, 2021. *See* RLI Ex. 19. Ms. Johnson's understanding of the questions on the Application and what *she may or may not have done* if OIA had informed her about the Incident or Legal Hold Letter are irrelevant and inadmissible speculation.

¶ 46. The Underlying Action plaintiffs did not sue "other design professionals." They sued OIA, a design professional, and the developer Tower, as well as the general contractor Bird and the demolition subcontractor Demex that actually were responsible for the demolition ways and means, compliance and safety. Tower, Bird and Demex are not arguably considered "design professionals." If any design profession would reasonably foresee a potential claim, it is the one who originally designed the Project building (which indisputably was not OIA).

---

[2] This is just one example of many where RLI misrepresents the content of documents to mislead the Court.

¶¶ 47-49. These statements of fact are all allegations in the Underlying Action Complaint which cannot be accepted as true for RLI to prevail on summary judgment. *See* Section III.

¶ 51. RLI grossly mischaracterizes the assertions made in OIA's motion to disqualify in an attempt to manufacture a key undisputed fact that is flatly contradicted by the motion itself and the documents referenced in the motion.

Further, OIA's motion to disqualify does not state that Mr. Reyes-Gilestra served the Litigation Notice on OIA, which would be an admission that OIA received it, but rather states: "On June 21, 2019 Atty. Reyes-Gilestra *sent* a communication to OIA….. RLI Ex. 31 at 2-3 (emphasis added); *see also id.* at 3 ("Legal Hold Notice which atty. Reyes-Gilestra appears to have sent OIA, . . ."); 6 ("sent a Legal Hold Notice"). OIA's acknowledgment that the Legal Hold letter was sent by Mr. Reyes-Gilestra is not an admission that it had been served on OIA. Nor does the motion to disqualify reference a threat by IG to expose ethical violations.

¶ 52. Mr. Reyes-Gilestra's self-serving arguments against his disqualification are not facts and are irrelevant. Mr. Reyes-Gilestra argues that OIA knew he represented IG on June 10, 2019 because "[f]aced with the breach of OIA' s contract with [IG], [IG] sent an out-of-court claim to OIA." RLI Ex. 32 at 3 (emphasis added). His assertion that OIA knew he represented the plaintiffs in the Underlying Action since June 19, 2019 is based on his assertion that he served the Legal Hold Letter on

OIA. *See* RLI Ex. 32 at 1 n.1. However, at his deposition, Mr. Reyes-Gilestra testified that his custom is to serve such letters by certified mail, and for addresses in Puerto Rico, also by in-person courier service. *See* RLI Ex. 20 at 28:16-29:12. Yet he could not produce any service receipts or other documents to support service on OIA or Mr. Santiago by any means. *See id.* at 29:13-20; 76:5-13.

Further, RLI omits Mr. Reyes-Gilestra's strenuous arguments in his opposition to disqualification that directly contradict its position that the IG Payment Demand and the Underlying Action are completely unrelated. "The lawsuit at issue [Underlying Action] is for damages. [IG's] and OIA's claim is purely for breach of contract and collection of money for events that predate Garcia Marrero's death by months. There is no connection between these disputes." RLI Ex. 32 at 7, ¶ 18; *see also id.*, ¶ 19 ("There is no link between the instant case [Underlying Action] and [IG's] claim against OIA . . ..");  ¶ 20 (arguing no conflict of interest exists created by IG's "purely contractual dispute against OIA" and the Underlying Action plaintiffs' action for damages); 9, ¶ 3 ("[W]e emphasize the fact that the representation of [IG's undersigned counsel related to an entirely separate and isolated dispute from the [Underlying Action] plaintiffs' case."(emphasis in original)). *See also* RLI Ex. 20 at 13:16-18 (Mr. Reyes-Gilestra testified that the IG Payment Demand letter is "basically a collection of monies and breach of contract claim that Mr. – IG served on OIA. That's basically what it is."). Mr. Reyes-Gilestra,

as the author of the IG Payment Demand, is the one person who can say definitively whether or not it was related to the Underlying Action. He has said definitely that it is not related.

In sum, OIA did not admit it had received the Legal Hold Letter and Mr. Reyes-Gilestra, the author of the IG Payment Demand, states it was a breach of contract claim and had nothing to do with the plaintiffs' claim for damages in the Underlying Action. RLI's mischaracterization of OIA's arguments in the disqualification proceedings in the Underlying Action and its description of the IG Payment Demand as a "whistleblower claim" are unsubstantiated by the motion itself, do not create a dispute, and should be rejected by the Court.

¶ 53 n.1. Mr. Reyes-Gilestra's opinions about OIA's completion of the Application are irrelevant and warrant no consideration by the Court as "fact," disputed or otherwise.

¶57. Mr. Bedard's opinion is not undisputed or fact—and not expert. OIA has filed a *Daubert* motion to exclude his original Expert Report (OIA Ex. EE) (Doc. 61) and is filing a motion to exclude his untimely Supplemental Expert Witness Report (RLI Ex. 2) along with this Response.

¶ 59. OIA stated in its interrogatory response that it received a copy of the Legal Hold Notice filed in the Underlying Action on January 26, 2021 "[s]ometime after RLI filed this action." RLI Ex. 35 at 5. OIA's interrogatory response does not

link its first receipt of the Legal Hold Letter to the motion to disqualify filed on December 3, 2021.

¶¶ 60. Mr. Reyes-Gilestra's opinion about OIA's assertion that it was not served with the Legal Hold Letter is based on his contention that OIA received it by service on Mr. Santiago because his client (Mr. Corsino) told him that Mr. Santiago said Mr. Santaigo had been served. Again, Mr. Gilestra' opinion about the credibility of OIA's assertion that it did not receive a copy of the legal hold letter is irrelevant and his basis for it is inadmissible hearsay that cannot be rendered admissible by Mr. Reyes-Gilestra's testimony. Further, Mr. Reyes-Gilestra also testified that Mr. Corsino told him that Mr. Santiago had received the Legal Hold Letter, not that Mr. Santiago forwarded it to OIA. *See* RLI Ex. 20 at 108:3-17; *see also* 68:20-69:21 (other than what Mr. Corsino told him, Mr. Ryes-Gilestra has no knowledge that OIA received the Legal Hold Letter).

¶ 61. Mr. Reyes-Gilestra testified that he recalled getting a signed receipt for *personal delivery* on Mr. Santiago, not delivery by certified mail. *See* RLI Ex. 20 at 76:5-11. He also testified that he does not have a copy of that receipt. *Id.* at 76:12-13.

¶ 62-63.[3] Whether the Legal Hold Letter constituted a demand against OIA is

---

[3] RLI Ex. 20 does not contain Vol. II of Mr. Reyes-Gilestra's deposition taken on February 21, 2022, containing the cited testimony. The testimony, including omitted leading questions and OIA's objections may be found in OIA Ex. P at 112:14-113:17; 113:18-114:6.

not at issue; when OIA first received it is. Nor is what Mr. Reyes-Gilestra can fathom relevant to any issue on summary judgment.

The "undisputed material facts" identified by RLI are in large part a collection of mischaracterizations of relevant evidence and misleading irrelevant evidence which cannot support summary judgment on any ground.

## III.   The facts and legal authority cited by RLI do not support summary judgment in its favor.

### A. <u>Legal Standard</u>

In the typical "duty to defend" case, there is no burden of proof because "the duty to defend is typically analyzed solely by reference to the allegations of the underlying complaint" in comparison to the language of the insurance policy. *See e.g. Diamond State Ins. Co. v. Boys' Home Ass'n, Inc*., 172 F. Supp. 3d 1326, 1339 (M.D. Fla. 2016). "Nonetheless … Florida law does recognize some circumstances where a court may consider evidence extrinsic to the underlying complaint when determining the duty to defend." *Id* Those circumstances are "where an insurer's claim that there is no duty to defend is based on factual issues that would not normally be alleged in the complaint." *Id.*

In those rare circumstances, like the case at bar, the insurer has the burden to present evidence "to establish that this is the 'exceptional case' in which it is 'manifestly obvious to all involved that the actual facts placed the claims outside the scope of coverage.'" *Id.* at 1341. In other words, the insurer has the burden to present

direct, undisputed evidence that the facts exclude the claim from coverage. *Id.* ("[C]ourts have denied coverage based on a prior knowledge exclusion when presented with direct, undisputed evidence of the insured's knowledge of the potential claim.").

Court's "construe exclusionary clauses more strictly than coverage clauses." *Berkley Assurance Co. v. Expert Group Int'l Inc.*, 779 Fed. Appx. 604, 608 (11th Cir. 2019) (determining that the prior knowledge provision in the insuring agreement should be construed like an exclusion).  Furthermore, "[t]he burden of proving an exclusion to coverage in Florida is on the insurer."  *Id.*

## B. **Prior Knowledge**

### 1.  The facts upon which RLI relies do not establish prior knowledge.

RLI asserts that there is no coverage under the prior knowledge provision of the Policy because prior to March 18, 2020 OIA "knew or could have reasonably expected" that a claim related to the Incident would be made against OIA. Doc. 1, Count II. The purported undisputed facts RLI asserts OIA knew at the time it applied for the Policy do not support summary judgment as a matter of law. The facts upon which RLI relies are set forth on pages 17-18 of its Motion for Summary Judgment. OIA address each and explains why each of these facts is either misleading, contradicted, irrelevant, or inadmissible, as summarized as follows:

(1)  The "cracks in cantilever corners" only pertained to the roof, and not the 13th

floor, and were only under analysis because OIA was considering whether to build a penthouse on top of the roof; no such structure was contemplated for the 13th floor. *See* Section II, discussion of ¶ 3.

(2) IG's assertion that a permit did not exist is misleading and irrelevant because (i) OIA was not responsible for demolition permits, (ii) OIA was not the proponent for the demolition work, (iii) the project was properly permitted at that time, 3 months before the Incident (and at the time of the Incident), and (iv) the existence of a permit has no bearing on causation of the Incident—a Bobcat falling through the floor when the existing concrete unexpectedly collapsed. *See* Section II, discussion of ¶5-6.

(3) Merely a reiteration of (2).

(4) RLI cites a letter from OIA to IG in which OIA explained why IG was in breach of contract for delay in design of construction drawings, which has no relation to the Incident, and OIA was concerned that IG's under-performance would cause OIA to breach is design-schedule obligations to Tower. Importantly, RLI has cited no evidence from Tower of an actual breach— because Tower never claimed OIA was in breach.  In any event, this issue is a red herring, because the discussed breach for delay in preparation of new construction drawings, has no relation to the Incident during the demolition phase. *See* Section II, discussion of ¶ 8.

(5)   Misleading and irrelevant for the same reasons stated in (2).

(7)   The floor that collapsed had neither been designed nor built by OIA. *See* Doc. 62, SOF ¶ 27.

(8)   OIA did not investigate the cause of the collapse of the floor, which was not designed by OIA—only Bird and PROSHA performed such forensic investigations. OIA, relying on subsequent investigation performed by Tower's consultant Morla, was instead evaluating issues pertaining to repairs and renovation. *See* Section II, discussion of ¶¶ 17, 27.

(9)   The Litigation Hold Letter was first received by OIA after this action was filed. *See* Section II, discussion of ¶¶ 51, 52, 59.

(10) OIA's attorney confirmed the certified letter was the IG Payment Demand and instructed OIA not to pick it up. *See* Section II, discussion of ¶¶ 24-26.

(11) Misleading and irrelevant for same reasons stated in (8).

(12) Not included in RLI's statement of facts, but irrelevant because OIA does not dispute that it was aware of the Incident on the day it occurred.

Similarly, the facts cited on pages 25-26 of RLI's MSJ as supported by only Mr. Bedard's Supplemental Expert Report (RLI Ex. 2) should be disregarded as not reliable facts the court may rely on simply because Mr. Bedard states them in his report. *See* Section II, ¶ 57. Moreover, RLI's citation of the Supplemental Expert Report to establish undisputed facts confirms that RLI's untimely disclosure of the

report is an attempt to improperly bolster arguments in RLI's MSJ. For that reason, OIA is moving to exclude Mr. Bedard's Original and Supplemental Expert Reports.

The Court should give no weight to RLI's assertion that 161 lawsuits were filed against architects for bodily injury and death. *See* RLI's MSJ at 23. The supporting exhibit (RLI Ex. 37) is not covered by the parties' stipulation that documents produced in discovery be accepted as authentic, because it was not produced in discovery. The exhibit is an incomplete printout from a search conducted with terms that need further explanation. And RLI does explain how or if any of those cases involves similar facts, underlying actions, or insurance coverage issues.

2.  <u>The authority cited by RLI does not support summary judgment.</u>

RLI cites to various cases as "instructive" examples of application of the prior knowledge exclusion.  Each of RLI's cases is readily distinguishable and, conversely, they elucidate why OIA would not have expected a claim to be made against OIA for the Incident—because the circumstances critical to the court's finding of prior knowledge in those cases do not exist here.

Unlike the circumstances in RLI's cited cases, OIA had no reason to believe that the actions of Bird, Demex, itself, or anyone else during the demolition phase of the Project could or would result in a claim against OIA related to the Incident because: (1) OIA had no contractual duties regarding the ways and means of work

being performed, permitting, safety, oversight or regulatory compliance in its contract with Tower during the demolition or construction phases of the Project; (2) to date, no one has cited any legal authority to establish that OIA had legal duties during the demolition phase under Puerto Rican laws or any other laws giving rise to duties of care to Mr. Garcia; (3) OIA was never interviewed or investigated with regard to the Incident, specifically during the Puerto Rico Occupational Health and Safety (PROSHA) investigation that occurred immediately after the Incident; (4) PROSHA cited only Demex for safety violations; and (5) no one had ever claimed that OIA was responsible in any way for the Incident. Doc. 62 at 24-25 (citing SOF, ¶¶ 4, 6, 7, 10, 13-16, 18-27, 30, 45, 48, 49), *see* § D.2., generally at 23-28.

The critical facts in the cases cited by RLI are distinguishable from, or opposite to, the above-stated critical facts in the case at bar. For example, RLI relies on *Nova Se. Univ., Inc. v. Cont'l Cas. Co.*, No. 18cv-61842, 2019 WL 7820594 (S.D. Fla. Dec. 27, 2019) as instructive. *See* RLI's MSJ at 18-19.  There, *Nova* hired an engineer to design ice tanks, who subsequently learned that the ice tanks he designed experienced problems due to an error in his structural design. 2019 WL 7820594 at *1. The engineer reported the structural design error to his professional liability carrier in January 2009, and in March began remedial design efforts to remedy his own failures. *Id.* at *2. As early as October 2009, Nova again noticed issues with the remedial design of the engineer's failures and engaged consultants to review it. *Id.*

Nova sued the engineer for professional negligence related to the original and remedial designs.   The engineer's insurer denied coverage under both prior knowledge and prior notice provisions in the policies when Nova filed a claim related to the remedial work. *Id.* at *4.

The *Nova* court found that the remedial claim at issue was logically connected to the prior claim made by the engineer. *Id.* at *5-*7. Specifically, the court found that the engineer was responsible for the design flaw in the ice tank, remedial design and concrete slab, which were designed and constructed by the same firm as part of the same project. *Id.* at *7.  In other words, the engineer had prior knowledge that a claim may be made for defects in his own faulty work.

Such logical connection is missing here. Here, OIA was not responsible for the demolition work under way at the time of the Incident.  Moreover, OIA had nothing to do with the original design of the Project building. *See* Doc. 62, SOF, ¶27. Unlike the *Nova* engineer who should have expected a claim for defects in his own design, the Incident was not related to work performed by OIA.  Had the collapsed floor been designed by OIA, then OIA should have expected a claim when it collapsed.  But it was not designed by OIA.

In *Berkley Assurance Co. v. Expert Group, Int'l*, 779 Fed. Appx. 604, 611-12 (11th Cir. 2019), the court found that the insured had prior knowledge where: (i) insured was a participant in an au pair sponsor program accused of price fixing to

suppress wages, (ii) class action plaintiff filed an amended complaint that added a claim with factual allegations that implicated the insured in essentially the same conduct as the defendants in that claim, and (iii) "the amended complaint, which added three new plaintiffs, made clear that class counsel was looking for au pairs to act as representative plaintiffs against their respective sponsors," such as insured.

Here, there had been no lawsuit filed against any defendants prior to the inception of the Policy.  Therefore, there was not a class of plaintiffs searching for new defendants to sue for the same conduct as previously-sued defendants that participated in the same program accused of the wrong.

RLI's citation of *ChemTreat, Inc. v. Certain Underwriters at Lloyd's of London*, 488 F. Supp. 3d 343 (E.D. Va. 2020) (applying New York law) in support of its arguments is particularly unavailing.  The court found that the insured had prior knowledge where it was undisputed that the insured provided maintenance services to a boiler system that exploded, and received three letters from counsel for parties involved in the explosion (including the injured employee)[4] advising the insured of the explosion and the injuries, expressing that the party had potential claims against the insured specifically, and requesting that the insured put its insurance carrier on notice. *See id.* at 349-351, 353, 357-360. The *ChemTreat* court found that "[a]

---

[4] The employee in ChemTreat was injured, not killed as indicated by RLI. *See* 488 F. Supp. 3d at 348.

reasonable insured, with knowledge of a catastrophic event that was *intimately tied to its own activities*, who received two letters explicitly notifying it that another entity had 'potential claims' against it, and another letter from an injured party seeking the preservation of evidence, would have foreseen that the Explosion might be the basis of a claim against it." *Id.* at 361 (emphasis added).

As an initial matter, *ChemTreat* applies New York, not Florida, law. Presuming New York law regarding prior knowledge provisions does not differ significantly from Florida law, the facts establishing the insured's prior knowledge support an unavoidable determination of prior knowledge. The facts in this action do not. The Incident was not *intimately tied* to OIA's own activities.  Unlike the *ChemTreat* insured who performed the maintenance on the product that failed and caused the injury, OIA did not design, construct, or maintain the existing concrete floor that collapsed, OIA did not supervise the demolition work, and OIA did not have any responsibility for safety. *See* Doc. 62, at 23-28, SOF ¶¶ 1-27.

Because the facts in this action are easily distinguished from the facts in the cases cited by RLI discussed above, they do not support summary judgment in RLI's favor. *See also Fid. Nat'l Title Ins. v. Houston Cas. Co.,* No. 6:11-cv-1438-Orl-28DAB, 2012 WL 4523666 , *7 (M.D. Fla. Sept. 30, 2012) (insured that knew the deed involved in a real estate transaction was fraudulent, the purported grantor was seeking to hold the responsible parties accountable for the cloud on the property's

title and the insured had failed to confirm the authenticity of the signature as directed knew that those actions might reasonably be expected to give rise to a claim); *Lawyers Prof. Liab. Ins. v. Dolam, Fertig & Cutis*, 524 So. 2d 677, 678 (Fla. 4th DCA 1988) (it was *undisputed* that the insured received notice from former client regarding malpractice claim before the policy inception date); *Westport Ins. Corp. v. Goldberg & Dublin*, 255 Fed. App'x 593, 594-5 (2d Cir. 2007) (applying New York law) (even a low probability of suit would fall under the prior knowledge provision where even though client stated she would not bring a malpractice action against her attorney, given the lawyer's clear breach of duty to client, no reasonable juror could find that the insured would not reasonably have foreseen that the client might change their mind).

Rather, the cases support the conclusion that OIA should not have reasonably expected that a claim would be made against it. The defective floor that collapsed was not designed, built, or maintained by OIA. OIA did not receive any letters that stated a claim, or potential claim, against OIA, or demanded that OIA put its insurance carrier on notice. And plaintiffs had not filed a lawsuit before the Policy period which contained allegations of wrongdoing that OIA was responsible for.

C. **Rescission**

An insurer seeking to rescind an insurance policy bears the burden to plead and prove the misrepresentation, its materiality, and the insurer's detrimental

reliance. *Griffin v. Am. Gen. Life & Accident Ins. Co.*, 752 So.2d 621, 623 (Fla. 2d DCA 1999). "[A]n essential prerequisite to the application of Florida Statutes section 627.409(1) is that the insured make an inaccurate statement in [the] application." *State Farm Mut. Auto. Ins. v. Cockram*, No. 2:11-cv-161, 2012 WL 4903271, *5 (M.D. Fla. Oct. 16, 2012) (citing *Miguel v. Metro. Life Ins. Co.*, 200 F. App'x 961, 965 (11th Cir.2006)). As a result, RLI bears the burden of establishing that OIA's Application responses were false, material and that it detrimentally relied on them. .

The issue is whether a reasonable person in the insured's situation could have truthfully answered "no" to the three Application questions at issue. *See Cockram*, 2012 WL 4903271, *6 (citing *Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa*, 226 F.Supp.2d 1326, 1332 (M.D.Fla.2002) ("Under Florida law, the terms of an insurance policy are to be used in their plain and ordinary sense and given their everyday meaning as understood by the 'man on the street.'" (citations omitted)), *aff'd*, 412 F.3d 1224 (11th Cir.2005)).

While RLI may not have had a duty to investigate OIA's Application answers upon which it bases its rescission claim *at the time the application was completed*, RLI cannot meet its burden to establish that OIA's responses are misstatements without conducting an investigation into OIA's actual role and duties on the Project to determine whether OIA's responses were accurate under the actual (not alleged) circumstances. *See Miguel*, 200 F. App'x at 968 (after claim made, underwriter

investigated the insured's medical history in evaluating whether the policy would have been issued); OIA's MSJ at 25-27 (discussing RLI's reliance on the Underling Action allegations). Moreover, such investigation into the insured's actual circumstances is necessary to determine materiality and detrimental reliance. How can an underwriter say it would not have issued the policy or would have issued it under different terms unless that determination is based on OIA's actual role for demolition at the Project?

RLI asserts that OIA's responses to Application questions regarding prior claims or knowledge of potential claims are misrepresentations because OIA was aware of acts or circumstances that may give rise to a claim against it because: 1) it knew about the Incident the day it occurred (citing only OIA's testimony); 2) had reported IG's Payment Demand (mischaracterized as IG's "whistleblower" claim to expose OIA's violations) to AIG; and 3) did not advise its insurance broker Tammy Johnson about Mr. Garcia's death until it was served with the Underlying Action Complaint. *See* RLI's MSJ at 27-29.

First, OIA has never denied that it learned about the Incident the day it occurred on June 10, 2019, but asserts that there was no factual basis for a reasonable expectation that anyone would assert OIA was negligent in causing Mr. Garcia's death. *See* OIA's MSJ, Doc. 62 at 23-28. Next, IG's Payment Demand related to a

contract dispute and was not a "whistleblower" claim,[5] on its face and according to the attorney, Mr. Reyes-Gilestra who authored it. *See* RLI Ex. 9; Section II, discussion of ¶¶ 9. 51, 52; Section III B; *see also* OIA's MSJ at 10-12, ¶¶ 33-39 and cited exhibits; 22-23 (discussing AIG's treatment of the IG Payment Demand); 28-30. Finally, what OIA told Ms. Johnson about the Incident and when it told her are irrelevant and what she would have done if OIA had told her is inadmissible speculation. *See* Section II, discussion of ¶¶ 37-40.

RLI cannot establish valid grounds for rescission based on unproven allegations that cannot possibly establish that OIA's Application responses were inaccurate, the fact that OIA reported the IG Payment Demand to AIG, or what Tammy Johnson may or may not have done.

**D. <u>Related Claims</u>**

RLI contends that the IG Payment Demand is a "whistleblower claim" related to the negligence Claims against OIA asserted in the Underlying Action for which OIA seeks defense and indemnity, and because the IG Payment Demand was made in June 2019, the claim was made before Policy inception and is not covered. RLI's MSJ at 29-32.

---

[5] RLI has concocted the "whistleblower claim" misnomer for the first time in its motion for summary judgment. For the sake of argument, if the IG Payment Demand was a "whistleblower claim" it would be expected that IG would have followed up somehow if the two matters were related. Yet, despite requesting documents from IG, RLI has provided no evidence that IG ever pursued such claim against OIA.

For reasons already discussed, the IG Payment Demand is not reasonably characterized as a "whistleblower claim. In sum:

- First and foremost, IG's attorney, who was also attorney for the plaintiffs in the Underlying Action, and in the best position to know whether the two matters were related, states unequivocally that the IG Payment Demand he sent to OIA relates to breach of contract action wholly unrelated to the claims in the Underlying Action;

- The IG Payment Demand sought to recover moneys allegedly owed to IG for OIA's alleged "egregious breach of contract" by terminating IG's subcontract for the Project because of its failure to timely complete construction drawings;

- It does not mention the Incident, although it is dated that same date, and seemingly would have had the unspecified "ethical violations" concerned the Mr. Garcia's death;

- At the time AIG evaluated the IG Payment Demand for coverage, AIG determined the IG Payment Demand was not a claim related to OIA's provision of professional services on the Project, but a payment demand related to a business dispute; and

- After RLI sought to convince AIG it was responsible for providing OIA's defense in the Underlying Action, AIG determined that there was no relationship between the two.

*See* Section II, discussion of ¶¶ 9. 51, 52; Doc. 62 at 22-23, 28-30.

RLI also asks the Court to apply judicial estoppel against OIA based on OIA's motion to disqualify Mr. Reyes-Gilestra from representing the plaintiffs in the Underlying Action because he also represented IG, arguing that OIA took the position that the IG Payment Demand was related the claims in the Underlying action. *See* RLI's MSJ at 30. OIA took no such position.

Judicial estoppel is an equitable doctrine invoked at the court's discretion, intended to protect the integrity of the judicial process by preventing parties from making one representation in one case, only to change its position in a subsequent, related case. *James River Ins. Co. v. Fortress Sys.*, 899 F. Supp. 2d 1331, 1334 (S.D. Fla. 2012) (citation omitted). OIA made no representation in the disqualification proceedings that the IG Payment Demand was related to the Underlying Action.

The requested disqualification was based on the conflict of interest between IG and the Underlying Action plaintiffs. The conflict arises from their antagonistic interests in the Underlying Action. Since OIA was being sued for alleged negligence, IG as OIA's subcontractor was subject to being sued for negligence as well—either by plaintiffs or OIA.

As a result, Mr. Reyes-Gilestra was subject to disqualification, and ultimately disqualified, because he was representing two clients with directly adverse interests—disqualification 101. *See* RLI Ex. 31, 34 generally. Further, the plain language of the disqualification motion contradicts RLI's assertion that OIA admitted or argued the IG Payment Demand and claims in the Underlying action were related. *See* Section II, discussion of ¶¶ 51-52 .

The concept of "relatedness" encompasses both logical and causal connections, an assessment which typically involves consideration of whether the acts in question are connected by time, place, opportunity, pattern, and perhaps most

importantly, by method or modus operandi and factors such as whether the parties are the same, whether the claims all arise from the same transactions, whether the "wrongful acts" are contemporaneous, and whether there is a common scheme or plan underlying the acts. *Vozzcom, Inc. v. Great Am. Ins. Co.*, 666 F. Supp. 2d 1332, 1337-37 (S.D. Fla. 2009), aff'd, 374 F. App'x 906 (11th Cir. 2010). Acts are not considered "related" if they arise out of separate factual circumstances and give rise to separate causes of action. *Id.* at 1337 (citations omitted).

Here, as discussed, the IG Payment Demand was for OIA's alleged breach of contract related to OIA's termination of IG. In the Underlying Action, Mr. Garcia's family members sought damages for his wrongful death. There is neither a logical nor causal relationship between the two claims. The separate breach of contract and negligence claims arise out of different factual circumstances unconnected by a modus operandi. RLI's tortured characterization of the IG Payment Demand as a "whistleblower claim" cannot create the required relatedness. *See*, *e.g.*, *Datamaxx Applied Tech., Inc. v. Chubb Custom Ins. Co.*, No. 6:20-cv-291, 2021 WL 4166740, *5 (M.D. Fla. Sept. 13, 2021) (claims in first and second litigation involved the same acts); *RSUI Indem. Co. v. Attorney's Title Ins. Fund, Inc.*, No. 2:13-cv670, 2016 WL 7042960, *4 (M.D. Fla. June 16, 2016) (every claim asserted against insured in underlying state court litigation shared same factual basis as an earlier counterclaim first made before the respective policy periods began). OIA's alleged negligence in

the Underlying Action and alleged breach of its subcontract with OIA do not share

a factual nexus sufficient to be considered related claims under the Policy and

applicable law. RLI's is not entitled to summary judgment on any of its claims on

the basis that the IG Payment Demand and Underlying Action are related claims.

### E. <u>Prior Notice</u>

Like all of RLI's claims in this case, the Prior Notice provision of the Policy

is an exclusion for which RLI bears the burden of proof. *See United Specialty Ins. v.*

*Tzadik Acquisitions, LLC*, 488 F. Supp. 3d 1196, 1201 (M.D. Fla. 2020) (the insurer

has the burden of proving an exclusion to coverage). The Policy excludes claims

arising out of any fact, situation, event or wrongful act which was the subject of

notice given under any prior design professional liability policy. OIA Ex. V, Insuring

Agreement, § 4.q.

RLI relies yet again on its mischaracterization of the IG Payment Demand as

a "whistleblower claim" as the purported wrongful act that OIA reported to its

previous liability insurer AIG as proof the exclusion apples. *Se*e RLI's MSJ at 31.

RLI's attempt to cast IG's breach of contract demand for money into a claim to file

a whistleblower action for unspecified ethical violations does not prove the

exclusion applies any more than it establishes lack of coverage under prior

knowledge provision, RLI's entitlement to rescind the Policy or that the IG Payment

Demand is related to the Underlying action under the terms of the Policy for the

reasons already discussed.

As to RLI's arguments regarding prior notice, OIA would note that RLI's description of allegations in the Underlying Action Complaint is inaccurate. RLI asserts that the plaintiffs allege OIA failed to review the as-built drawings showing a hole in the floor where Mr. Garcia fell before allowing demolition to proceed. RLI's MSJ at 33. Only paragraph 25 of the Underlying Action Complaint references as-built drawings. *See* Doc 1-1, ¶ 25 and generally.

Paragraph 25 does not mention OIA. Paragraph 25 discusses the PROSHA investigation involving the failure of Bird and Demex to verify the as-built blueprints in Mr. Morla's possession (because he was involved in the original construction of the Project building, not in his capacity and a subcontractor for OIA) when "[a] quick glance at this as-built blueprint would have made it abundantly clear that a Bobcat could not be operated in [the area where Mr. Garcia fell]." *See id.*, ¶ 25.

This is yet another example of RLI misrepresenting the content of documents to either achieve or avoid summary judgment. RLI compounds the problem by arguing that the non-existent allegation in the Underlying Action Complaint overlaps with those made in the IG Payment Demand and is somehow exemplified by the disqualification of Mr. Reyes-Gilestra. RLI's MSJ at 33. The Court cannot find that RLI has met its burden to establish that the prior notice exclusion applies based on such evidence.

*Respectfully submitted,*

**JIMERSON BIRR, P.A.**


By: /s/ Austin B. Calhoun
    Austin B. Calhoun
    Florida Bar No. 114382
    acalhoun@jimersonfirm.com
    One Independent Dr., Ste 1400
    Jacksonville, FL 32202
    Telephone: (904) 389-0050
    Facsimile: (904) 212-1269
    samanthab@jimersonfirm.com
    *Attorney for OutsideIn Architecture, LLC*


## <u>CERTIFICATE OF SERVICE</u>

I CERTIFY that the foregoing document was electronically filed with the U.S. District Court on this 29th day of April, 2022, via CM/ECF and was served this day on all counsel and all parties entitled to notice via CM/ECF.

    /s/ Austin B. Calhoun
    Attorney