## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

RLI INSURANCE COMPANY,

     Plaintiff,

vs.                                    Case No: 8:20-cv-02395-CEH-AEP

OUTSIDEIN ARCHITECTURE, LLC,

     Defendant.

_____/

## RLI'S REPLY IN SUPPORT OF ITS MOTION FOR FINAL SUMMARY JUDGMENT

RLI INSURANCE COMPANY ("RLI") pursuant to Fed. R. Civ. P. 56, files this reply in support of its motion for summary judgment (D.E. 60) against OUTSIDEIN ARCHITECTURE, LLC ("OIA"), and states:

**1.      OIA fails to appreciate the difference between this insurance coverage action versus the underlying tort action.** This Court does not need to adjudicate OIA's liability for the death of Mr. Marrero. That function belongs exclusively to the Puerto Rico trial court with jurisdiction over the wrongful death lawsuit against OIA and others. (*See* D.E. 1-1.) At issue here, is whether RLI has a duty to defend or indemnify OIA in the underlying action. One of the coverage issues is whether RLI had a right to know at the time of OIA's application for insurance whether OIA knew or could reasonably foresee a claim against it based

on the demolition worker's death. OIA learned of Mr. Marrero's death the day it occurred. OIA also learned that the concrete in the thirteenth floor was found to be defective. (*See* D.E. 60-17, Pg. 70:7-10; 60-23.) Three months before the death, OIA's consultant (IG) was threating to blow the whistle on OIA's serious ethical violations regarding the permitting process and demolition work. (*See* D.E. 60-9.) Despite these facts and other compelling evidence, OIA denies actual knowledge and/or reasonable foreseeability of a claim. OIA insists it is not liable for the death, the permitting process, demolition work, or any work on June 10, 2019. (*See* D.E. 76, Pg. 19-24.)

The no liability argument however, contradicts the specific allegations of OIA's alleged liability in the underlying complaint. (*See* D.E. 1-1, ¶ 7, 10, 16-17.) This argument is also contrary to Florida law on how Prior Knowledge provisions are interpreted, and is therefore, irrelevant.

**2.    OIA is confused about how the exception to Florida's duty to defend analysis applies when interpreting a Prior Knowledge provision.** In Florida, courts typically apply an eight corners analysis to determine an insurer's duty to defend. *Jones v. Florida Ins. Guar. Ass'n, Inc.*, 908 So. 2d 435 (Fla. 2005). There are narrow exceptions to this rule. *See e.g., Diamond State Ins. Co. v. Boys' Home Ass'n, Inc.*, 172 F. Supp. 3d 1326, 1340 (M.D. Fla. 2016) (allowing extrinsic evidence to determine if prior knowledge exclusion barred coverage); *Empire Fire & Marine*

*Ins. v. Span*, No. 19-61102, 2021 WL 2255127, at *4 (S.D. Fla. June 13, 2021) ("courts may look to extrinsic evidence when for example at issue is "whether the defendant had knowledge of a claim against it *before*, it bought coverage."); *Composite Structures, Inc. v. Cont'l Ins. Co.*, 560 Fed. Appx. 861, 866 (11th Cir. 2014) (permitting extrinsic evidence to establish date insurer was first notified of a claim).

The extrinsic evidence exception itself has an important limit. An insured may not contradict the allegations of the underlying complaint. *See Jones* 908 So. 2d 435, 443 ("when the actual facts are inconsistent with the allegations in the complaint, the allegations in the complaint control in determining the insurer's duty to defend."). Instead, extrinsic evidence is allowed to show if a reasonable person in the insured's position could reasonably foresee a potential claim based on objective evidence. This is known as Part 2 of the Prior Knowledge provision. *See Houston Specialty Ins. Co. v. Titleworks of S.W. Fla.*, No. 2:15-219, 2018 WL 11354007, at *2 (M.D. Fla. Mar. 16, 2018) ("The evidence, adduced after much contentious discovery" shows at the title agent insured could reasonably foresee a claim and/or knew of a potential claim against it based on a missed lien);[1] *Berkley Assurance Co. v. Expert Group Int'l, Inc.*, 779 Fed. App'x 604, 612 (11th Cir. 2019)

---

[1] "The facts show unequivocally that Titleworks had knowledge of the missed liens on July 28, 2014, five days before its insurance policy with Houston became effective." *Id.* at * 3. Similarly, here OIA had knowledge of Mr. Marrero's death at the Project on June 10, 2019, or eight months before RLI's claims made insurance policy incepted.

("Notwithstanding that Expert Au Pair may have had reasons to believe that its practices differed from other sponsors, it also knew that, as we've already explained, it was alleged to have committed essentially the same conduct as the other defendants to the negligent-misrepresentation claim. **Any reasonable insured in these circumstances could have foreseen that a similar claim might likely be made against it as well, even if they believed such a claim unfounded**.") (emphasis added). Extrinsic evidence is also allowed to show the insured had actual knowledge of a potential claim, which triggers Part 1 of the Prior Knowledge provision. *See Axis Ins. Co. v. Farah & Farah, P.A.*, No. 3:10-cv-393, 2011 WL 5510063 (M.D. Fla. Nov. 10, 2011) (allowing evidence of insured advising client they could have a legal malpractice claim), *aff'd* 503 Fed. App'x 947 (11th Cir. 2013); *Fid. Nat'l Title Ins. v. Houston Cas. Co.*, No. 6:11-cv-1438, 2012 WL 4523666 (M.D. Fla. Sept. 30, 2012) (analyzing internal file notes, demand to the insured, notice to title insurer, deposition testimony, and emails to find that Part 1 – actual knowledge or Part 2 – reasonable foreseeability of prior knowledge provision was met and insurer did not owe a defense). Here, the overwhelming evidence reveals that either Part 1 or Part 2 of the Prior Knowledge provision is met.

### 3.    OIA failed to refute application of the Prior Knowledge Provision.[2]

---

[2] Because the Prior Knowledge provision is part of the insuring agreement, OIA bears the burden of proving it does not apply. The same is true with the relatedness provision discussed below.

OIA's response on the Prior Knowledge defense is that the provision should not apply because OIA is not liable for permitting, safety, demolition, or any work on the date of Mr. Marrero's death. (D.E. 76, Pg. 3, 16-24.) This argument misses the mark. First, OIA cannot contradict the allegations of the underlying complaint in order to bypass the Prior Knowledge provision. *See Selective Ins. Co of Se. v. William P. White  Racing Stable, Inc.*, 718 F. App'x 864, 868 (11th Cir. 2017) (an insured's theory of liability, labels, and theoretical claims cannot contract the allegations of the underlying pleading for purposes of the duty to defend). OIA could have introduced evidence to contest Part 1 or Part 2 of the Prior Knowledge provision. For example, if OIA did not know that a demolition worker died at the Project or that the concrete in the thirteenth floor was determined to be deficient, that would weigh against Part 1 and/or Part 2. The opposite it true though.

OIA's principal testified he learned about the death on June 10, 2019. On June 12, 2019, OIA also learned the concrete in the thirteenth floor was deficient. (*See* D.E. 60-17, Pg. 70: 7-10; D.E. 60-23.) And eighteen days after the tragic accident, OIA's principal wrote to his attorney that a law firm named BTA, "just tried to serve me a certified letter," and he asked whether attorney Gilestra might be an "**accident attorney? Maybe from the construction accident**?" (*See* D.E. 60-22, Pg. 3.) Further, OIA's own consultant, IG, had been warning OIA since March 1, 2019 of problems with the demolition permit and threatened to expose these "serious

ethical violations" in the June 10, 2019 demand. (*See* D.E. 60-4; 60-5; 60-6; 60-9.)

The only "evidence" OIA offered to contest actual knowledge or reasonable foreseeability is the self-serving and uncorroborated affidavit of OIA's principal, which RLI moved to strike. (D.E. 68.) OIA did not offer any objective evidence or rebuttal expert opinion to dispute application of the Prior Knowledge provision, which is telling. Accordingly, the Court must find that RLI's evidence under Part 1 or Part 2 is undisputed.

Second, the Eleventh Circuit has expressly rejected OIA's no liability defense to a prior knowledge provision. *See Berkley Assurance Co. v. Expert Group, Int'l*, 779 Fed. App'x 604, 612 (11th Cir. 2019) ("[T]he question under the prior knowledge [provision] in this case is whether Expert Au Pair could have reasonably foreseen that a claim might likely be made, not whether such a claim would be likely to succeed…."); *see also See Coregis Ins. Co. v. McCollum*, 961 F. Supp. 1572, 1579 (M.D. Fla. 1997) ("In no way does the [prior knowledge] exclusion require that such a claim have merit or that the insured reasonably believed it to have merit."). Based on all of the evidence and the allegations of the underlying complaint, the Court should find that Part 1 or Part 2 of the Prior Knowledge provision apply and RLI does not owe coverage. *See Nova Se. Univ. v. Cont'l Cas. Co.*, No. 18-civ-61842, 2019 WL 7820594 (S.D. Fla. Dec. 27, 2019) (upholding prior knowledge condition of coverage because the evidence showed the insured knew

or should have known that the negligent  design of the ice tanks could give rise to

a claim).

**4.     OIA failed to negate the Policy's contractual rescission in Condition 14, the Application's warranty and representations, and Florida's statutory rescission.** RLI met its burden of proving both parts of Florida's rescission statute

§ 627.409(1), apply. RLI's underwriter, Vincent Costello testified:

☐   In reliance on OIA's answers, in particular, the "no" answers to Question 8 in Section 1.B Short Form Eligibility and Questions 3 and 4 in Section 2.I Claims History, RLI issued a quote for insurance on February 25, 2020.

☐   In deciding whether to quote coverage, RLI considers and relies on an applicant's prior claim history as well as the applicant's awareness of a potential claim because those factors directly affect the calculation of premiums and/or deductibles.

☐   Moreover, if an applicant discloses a prior claim, RLI's underwriter can investigate and obtain relevant facts about the claim, including whether it was reported to the prior carrier and whether coverage has been accepted or not.

☐   An applicant's truthful disclosure of prior claim history also allows RLI to determine whether it wants to underwrite a particular risk or not. For example, if an applicant discloses a prior claim involving a death, RLI would likely not take on that risk.

☐   Conversely, if RLI decides to issue coverage to an applicant with a prior claim, it can include an endorsement to exclude coverage for existing claims, lawsuits, projects, scope of work, or the work of subcontractor, or write the policy on different terms and conditions than policies issued to similar applicants with no prior claim history.

☐   Between January 6, 2020 and April 20, 2020, Ms. Johnson never requested that RLI clarify or explain what Questions 8, 3, and 4 described above mean. Ms. Johnson never informed RLI that OIA did not understand Questions 8, 3, or 4. Further, between January 6, 2020

and April 20, 2020, neither OIA nor Ms. Johnson informed RLI that the answers to Questions 8, 3, and 4 described above had changed, were incomplete, or incorrect.

(*See* D.E. 60-39.) After OIA reported the wrongful death lawsuit, RLI's investigation revealed that "OIA's "no" answers to Questions 8, 3, and 4 [in the Application] were not true, accurate, or complete." (*Id.*) Mr. Costello explained why OIA's misrepresentations were material to the risk assumed by RLI:

> [h]ad OIA truthfully, accurately, and completely answered Questions 8, 3, and 4, RLI would not have issued the Policy because the applicant was accused of serious ethical violations at the Project on June 10, 2019, and that same day a demolition worker died at the Project. Alternatively, RLI would not have issued the Policy as it did. Specifically, RLI would have charged a higher premium, included an endorsement that precludes coverage for the Project, the death, the wrongful death claimants, the IG claim, or any work provided by the subcontractors, and/or changed the retroactive date to 3/18/2020. (*Id.*, Pg. 7.)

RLI's corporate representative testified that if OIA had truthfully and correctly answered Questions 8, 3, and 4, RLI would not have issued the policy, or would have issued it with an endorsement excluding coverage for the death, the Project, the contracts, the claimant, or any work at the Project. (*See.* D.E. 60-38, Pg. 89:2-11; 92:12-25.)

OIA did not offer any expert underwriting testimony or contradictory evidence regarding the materiality of its misrepresentations. OIA only echoed its zero liability theme and blamed RLI for not "investigating" its answers. (D.E. 76, Pg. 25-26.) Both arguments are wrong. *Miguel v. Metro Life Ins. Co.*, 200 Fed. App'x 961, 969 (11th Cir. 2006) (unequivocally holding that an insurer "**has no duty to**

**make additional inquiry"** into an applicant's no answers in an application for insurance); *Darwin Nat'l Assur. Co. v. Brinson & Brinson*, No. 6:11-cv-1388, 2013 WL 2406154 (M.D. Fla. June 3, 2013) (Honeywell, J.) (granting rescission of policy based on applicant's misrepresentations of bar complaint and awareness of potential malpractice claim in application for insurance). Moreover, Condition 14 specifically rejects the knowledge and belief standard, opting instead for the simple truth or falsity test: "the statements and information contained in the Application are true, accurate, and are the basis of this Policy and are incorporated into and constitute a part of this Policy…." (*Id.*) As a matter of law, the Policy is void based on OIA's material misrepresentations.

**5.    OIA's laconic points against the Related Claims provision are flawed.** OIA highlights minor differences between IG's June 10, 2019 demand and the underlying tort action: the demand did not mention Marrero's death and IG was requesting contractually owed funds. According to OIA, these differences should be enough to find the claims are unrelated. (D.E. 76, Pg. 28-31.) For support, OIA cites *Datamaxx*, 2021 WL 4166740 (M.D. Fla. Sept. 13, 2021) (our case). In *Datamaxx*, the court held that two arbitrations involving different parties and different theories of liability were related so that the later arbitration was deemed first made before Chubb's policy incepted. Exactly as in *Datamaxx*, this Court should find RLI's relatedness provision compresses the underlying action back to

the date of either IG's demand first made on June 10, 2019 or June 21, 2019 the date of the Litigation Notice. The demand, Litigation Notice, and the underlying complaint share a logical and causal connection: the same Project, scope of work by OIA and its consultants, and allegations of OIA ethical violations in allowing demolition work without the appropriate permits in place. (D.E. 60, Pg. 32-35.) This undeniable factual overlap is sufficient and RLI does not owe coverage because the underlying action is deemed first made before the Policy incepted. *See Camico Mut. Ins. Co. v. Rogozinski*, No. 3:10-cv-762, 2012 WL 4052090 (M.D. Fla. Sept. 13, 2012) (three lawsuits were deemed related).

6.     **The Prior Notice Exclusion applies despite OIA's nonsensical harangue.** OIA did not address RLI's authority upholding similar Prior Notice Exclusions.  (D.E. 60, Pg. 36-37.) Regardless, if the Court finds the underlying claim is "based upon or arises out of "(1) any fact, situation, event, wrongful act" or "(2) any wrongful act… which is logically or causally connected by common facts, situations or events to the wrongful act… specified in q. 1," which OIA reported to its prior insurer before RLI's policy incepted, there is no coverage. (*See* D.E. 1-2, Pg. 13.) *See Vozzcom*, 666 F. Supp. 2d at 1340 (Prior Notice Exclusion requires a "tenuous connection" between a new claim and an earlier claim). OIA's prior liability insurer, AIG agreed the IG demand OIA reported to it **is a claim**. (*See* D.E. 62-24, Pg. 3.) These facts are undisputed. RLI is entitled to a final judgment.

Respectfully submitted,

/s/MICHELE A. VARGAS
**SINA BAHADORAN**
Florida Bar No. 523364
Sina.Bahadoran@Clydeco.us
**MICHELE A. VARGAS**
Florida Bar No. 686395
Michele.Vargas@Clydeco.us

CLYDE & CO US LLP
1221 Brickell Avenue, Suite 1600
Miami, Florida 33131
T: 305.446.2646

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 13, 2022, I e-filed this document using the CM/ECF system. I further certify that I am not aware of any non CM/ECF participants.

/s/MICHELE A. VARGAS
**MICHELE A. VARGAS**